UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FRANK SEVER, Jr.,
   Plaintiff

vs.

MORTON G. GLICKMAN,
DELCATH SYSTEMS, INC., and
STEPHEN E. FELDMAN,
   Defendants

Civil No: 3:02CV00722 (AVC)

## RULING ON THE PLAINTIFF'S MOTION TO DISMISS THE DEFENDANT DELCATH SYSTEM, INC.'S COUNTERCLAIM

This is an action for compensatory and punitive damages arising out of the alleged theft of an invention of a medical catheter device. It is brought pursuant to common law tenets concerning fraud, conversion, and civil conspiracy.

On April 25, 2002, the plaintiff, Frank Sever, Jr., commenced this action against Morton G. Glickman, Delcath Systems, Inc. ("Delcath"), and Stephen E. Feldman. On April 8, 2003, Delcath filed counterclaims alleging breach of contract, breach of implied covenants of good faith and fair dealing, breach of a fiduciary duty, and professional malpractice. On April 30, 2003, Sever filed the within motion to dismiss the counterclaims pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(7), contending that a cause of action is not stated and that Delcath had failed to join a necessary party under Fed. R. Civ. P. 19.

The issues presented are: 1) whether the allegations set forth in the counterclaim demonstrate that a contract existed between Delcath and Sever; 2) whether the allegations set forth

in the counterclaim establish a cause of action for breach of the implied covenants of good faith and fair dealing; 3) whether the allegations set forth in the counterclaim establish a cause of action for breach of fiduciary duty; 4) whether the allegations set forth in the counterclaim establish a cause of action for malpractice by Sever; 5) whether Feldman is a necessary party under Fed. R. Civ. P. 19, such that the court is required to dismiss the counterclaim pursuant to Fed. R. Civ. P. 12(b)(7).

For the reasons that follow, the court concludes that: 1) the allegations in the complaint do not set forth the existence of a contract; 2) because no contract is alleged, the cause of action for breach of the implied covenant of good faith and fair dealing fails; 3) the allegations in the complaint set forth a cause of action for breach of a fiduciary duty; 4) the allegations of the complaint set forth in the complaint set forth a cause of action for malpractice; and 5) Feldman is not a necessary party and therefore dismissal pursuant to Fed. R. Civ. P. 12(b)(7) is not warranted.

Accordingly, the motion to dismiss (document no. 66) is GRANTED in part, and DENIED in part.

### FACTS

The counterclaim alleges that: Sever is a patent attorney admitted to practice before the United States Patent and Trademark Office. "Over the years, Sever has asked for work

2

assignments from Stephen E. Feldman P.C. . . . a patent law firm based in New York City, on behalf of clients of Feldman, . . . including defendant Delcath." Consequently, "Sever has performed legal services on behalf of said clients and rendered legal services to said clients." The counterclaim further alleges that "[e]ach time Feldman . . . on behalf of its clients, retained Sever to perform legal services on such clients' behalf and render legal advice to said clients, an attorney-client relationship arose between Sever and each such client."

Glickman, a physician, "has worked with and/or on behalf of Delcath on the development of medical devices for treating cancer." On April 15, 1993, at Delcath's offices, "Glickman disclosed his design of a telescoping lateral movement catheter controller."

Feldman . . . has served "for years as Delcath's regular outside patent counsel." "In 1994, Feldman . . . was requested by Delcath to provide legal advice in support of the aforementioned Glickman/Delcath catheter controller." "In February, 1997, . . . Feldman, on behalf of Delcath, retained Sever's legal services to assist Delcath in connection with the preparation of a patent application" for Glickman's invention. Feldman sent Sever the file relating to the invention and "requested that Sever prepare the application on Delcath's behalf." Included within the file forwarded to Sever were the

3

results of a search performed at the Patent and Trademark Office ("PTO") previously performed by Feldman and the drawings and disclosure of Glickman's invention.

During February and March 1997, "Sever prepared a draft patent application on behalf of Delcath" (the "March 1997 application"). The March 1997 application was based on Glickman's "design of a catheter controller that employed a finger trap or clamping arrangement." Sever subsequently forwarded the March 1997 application to Feldman who forwarded it to both Glickman and Delcath.

"In mid-March, 1997, Feldman caused an updated search to be performed at the PTO." The March 1997 search "confirmed the existence of a prior patent for a catheter flow device held by one of Delcath's supplier's (the "supplier patent")." In May, 1997, after ordering the prosecution file history for the supplier patent, Feldman sent the file history to Sever "to obtain his input and legal advice as to whether such prior patent presented a problem and, if so, how one might design around the claims in the supplier patent and thereby avoid infringement." "On or about May 22, 1997, Sever sent a letter to Feldman indicating that the controller designed by Glickman . . . avoided the claims of the supplier patent." Additionally, Sever suggested an alternate design to avoid any claims of the supplier patent. This alternate design suggested the use of an

4

"incompressible fluid" in Glickman's invention (the "incompressible fluid concept"). On May 30, 1997, Sever sent a letter to Feldman which revised his May 22, 1997 letter. In May 1997, Sever also prepared a second patent application that incorporated the incompressible fluid concept. That application was forwarded to Delcath by Feldman, at Sever's urging. Delcath subsequently informed Feldman that it was not interested in the incompressible fluid concept and Feldman so informed Sever.

Feldman told Sever that Delcath would file a patent in accordance with the March 1997 patent application prepared by Sever. Sever expressed to Feldman that he intended to file a patent based on the incompressible fluid concept in his own name and on his own behalf.

On September 2, 1997, "Feldman, on Delcath's behalf, submitted a patent application on Glickman's invention." In April 1999, "the application resulted in the issuance of U.S. Patent No. 5, 897, 533 (the '533 patent)."

On June 28, 1999, without any authorization from Feldman or Delcath, "Sever filed a patent application on his own behalf in his own name." The June 28, 1999 application "was a copy of the patent application that Sever had prepared for Delcath in May of 1997," which included the incompressible fluid concept. "Sever, without any authorization from Delcath, and in breach of the attorney-client privilege, communicated to the owner of the

5

supplier patent the fact that Delcath had sought to design around the claims of the supplier patent and falsely represented to said supplier that Sever was the true inventor of the '533 patent".

Thereafter, "Sever prosecuted an interference proceeding before the PTO's Board of Patent Appeals, in which Sever claimed sole inventorship and ownership of the invention that is the subject of Delcath's '533 Patent." "Glickman was adjudged to be the sole inventor and was given priority in the claimed invention of the '533 Patent." Glickman later assigned his patent rights in the device to Delcath.

## STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "merely . . assess[es] the legal feasibility of the complaint, [it does] not assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc., 748 F. 2d 774, 779 (2d. Cir. 1984). When ruling on a motion to dismiss, the court must presume that the well-pleaded facts alleged in the complaint are true and draw all reasonable inferences from those facts in favor of the plaintiff. See Sykes v. James, 13 F. 3d 515, 519 (2d. Cir. 1993). A court may dismiss a complaint at this stage only where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim." Dismissal is warranted only if, under any set of facts

that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. <u>Conley v. Gibson</u>, 355 U.S. 41, 45 (1957).

With regard to the legal standard applicable to a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(7), "[b]efore dismissing a complaint under Rule 12(b)(7), a district court must determine whether the missing party is necessary within the meaning of Fed. R. Civ. P. 19." <u>Johnson v. The Smithsonian Institution</u>, 189 F.3d 180, 188 (2d Cir. 1999). "According to Rule 19, an absent party is necessary to a litigation if (1) 'complete relief cannot be accorded among those already parties,' or (2) the absent party 'claims an interest relating to the subject of the action and is so situated that the disposition of the action in [that party's] absence may' either '(i) as a practical matter impair [that] person's ability to protect that interest or (ii) leave [the remaining] parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.'" <u>Johnson v. The Smithsonian Institution</u>, 189 F.3d 180, 188 (2d Cir. 1999) (quoting Fed. R. Civ. P. 19(a)) (alterations in original). If any of the "criteria set forth in Rule 19(a) is met, then [the district court] must order that the absent party be joined as a party. . . . Where, however, joinder of that party is not feasible" the court then must determine whether to dismiss

7

the action. <u>Johnson v. The Smithsonian Institution</u>, 189 F.3d 180, 188 (2d Cir. 1999)

## DISCUSSION

**I.   Dismissal pursuant to Fed. R. Civ. P. 12(b)(6)**

A.   <u>Breach of Contract</u>

Sever first contends that "because the defendant has failed to properly plead facts to establish said contract, the defendant does not state a claim for breach of contract." Specifically, Sever argues that "there are no allegations as to the terms of any contract between plaintiff Sever and defendant Delcath." Further, Sever argues that there was no contract between Sever and Delcath because "Sever was looking to defendant Stephen E. Feldman . . . for payment." Thirdly, Sever argues that "there are no allegations as to whether or not the defendant Feldman actually disclosed to plaintiff Sever . . . whether plaintiff Sever was working directly for defendant Feldman." Finally, Sever argues that there was no privity of contract between Sever and Delcath, and that Feldman was not authorized by Delcath to retain the services of Sever.

Delcath responds by asserting that "there are copious allegations in the [c]ounterclaims concerning the creation of a contract between Delcath and Sever, the particular tasks Sever was to perform for Delcath under the contract, and the ways Sever breached the contract."

"To prevail on a breach of contract claim under New York law, a plaintiff must prove (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages."[1] <u>Terwilliger v. Terwilliger</u>, 206 F.3d 240, 245-6 (2d Cir. 2000). With regard to the first element, namely the existence of a contract, the New York Court of Appeals has stated that:

> To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms. . . . This requirement assures that the judiciary can give teeth to the parties' mutually agreed terms and conditions when one party seeks to uphold them against the other. Generally, courts look to the basic elements of the offer and the acceptance to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract. The first step then is to determine whether there is a sufficiently definite offer such that its unequivocal acceptance will give rise to an enforceable contract. . . .[D]efiniteness as to material matters is of the very essence of contract law. Impenetrable vagueness and uncertainty will not do. . . . Of course, not all terms of a contract need be fixed with absolute certainty; at some point virtually every agreement can be said to have a degree of indefiniteness . . . . While there must be a manifestation of mutual assent to essential terms, parties also should be held to their promises and courts should not be 'pedantic or

---

[1] This court's subject matter jurisdiction was invoked pursuant to diversity jurisdiction, and thus, as a general matter, Connecticut law would govern the counterclaims. <u>See</u>, <u>e.g.</u>, <u>Executive Airlines v. Electrical Boat Corp.</u>, 271 F. Supp. 2d 392, 395-6 (D. Conn. 2003) (in diversity action court looks to law of the forum state to determine the substantive law that should apply to this dispute). Nevertheless, both parties rely principally on New York law in their respective briefs and therefore implicitly concede that New York law governs the counterclaim. The court therefore applies New York law in determining the merits of the within motion. Moreover, the court notes that there appears no substantive distinction between New York and Connecticut law as it relates to the within motion.

meticulous' in interpreting contract expressions.

<u>Express Industries and Terminal Corp. v. New York State Dept. of Transp.</u>, 93 N.Y.2d 584, 589-90 (1999) (internal quotation marks and citations omitted).

Applying the foregoing principles to this case, the court concludes that the allegations set forth in the counterclaim do not establish that a contract existed between Sever and Delcath. The counterclaim alleges that: "Over the years, Sever has asked for work assignments from Feldman. . . . on behalf of Feldman's clients, including defendant Delcath . . . [i]n 1994, Feldman was requested by Delcath to provide legal advice in support of the aforementioned Glickman/Delcath catheter controller . . . [and] [i]n February, 1997, Feldman, on behalf of Delcath, retained Sever's legal services to assist Delcath in connection with the preparation of a patent application for Glickman's invention . . . ."

These allegations, even when considered collectively, are insufficient to give rise to a contract between Sever and Delcath. The allegations do not describe any offer or acceptance between Delcath and Sever that were based on an identical understanding of those parties. Neither does the counterclaim describe the formation, between Sever and Delcath, of an agreement that is definite and certain as to its terms and requirements. Instead, the counterclaim sets forth facts

10

describing the existence of such an agreement between Sever and Feldman, not Delcath.

Delcath nevertheless contends that Feldman was authorized to contract for Delcath and therefore that Delcath had a contract with Sever arranged by Feldman. In support of the contention Delcath cites to an allegation in the counterclaim that "Feldman, on behalf of Delcath, retained Sever's legal services." This conclusory statement, wholly unsupported by factual allegations, is simply insufficient to withstand a motion to dismiss.[2] See DeJesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996)

---

[2] As part of their opposition to the motion to dismiss, Delcath attached various documents including an affidavit from a former Delcath officer that purportedly establishes that Feldman was authorized to contract on behalf of Delcath. Sever moved to exclude consideration of these documents because they are not part of the complaint in this matter. The court agrees with Sever.
    Generally, when ruling on a motion to dismiss pursuant to Rule 12(b)(6) a court is limited the allegations of the counterclaim. Nevertheless, pursuant to Rule 12(b)(6) a court may consider extrinsic material if submitted by the either party. If, however, the court does decide to consider such extrinsic evidence, a decision wholly within the discretion of the trial court, the motion becomes a motion for summary judgment. See Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (per curiam). The attached affidavit states that an officer of Delcath "authorized Feldman to transfer preparation of the application to an outside attorney" and that he "learned subsequently that attorney was Frank Sever." These statements do not support the proposition that Feldman was authorized to contract on behalf of Delcath, and that such authority resulted in the creation of a contract between Delcath and Sever. Consequently, the court rejects the extrinsic material and does not consider the affidavits in its consideration of the within motion. See Court v. Hall County, 725 F.2d 1170, 1172 (8th Cir. 1984) (presented "with skimpy affidavits, the district court should . . . [disregard] the extrinsic material, and decided the motion to dismiss based on the amended complaint alone"); see also 5A C. Wright & A. Miller, Federal Practice and Procedure § 1366 (2d ed. 1990) (trial courts discretion should be exercised with eye towards value of extrinsic evidence).

("complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)"). Sever's motion to dismiss the breach of contract counterclaim is therefore granted.

B.  Breach of Implied Covenants of Good Faith and Fair Dealing

Sever maintains that "for the same reasons that defendant Delcath has failed to properly plead facts to establish said contract, the defendant does not state a claim for breach of any implied covenants." Delcath does not specifically respond to this argument.

"Under New York law, parties to an express contract are bound by an implied duty of good faith . . . ." Harris v. Provident Life and Accident Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002). "The covenant of good faith and fair dealing, implied in every contract under New York law, includes an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part." Kader v. Paper Software, Inc., 111 F.3d 337, 341 (2d Cir. 1997) (internal quotation marks omitted).

In light of the foregoing, Delcath must first establish that Delcath and Sever were parties to a contract before it can state a viable claim for breach of the implied covenants of good faith and fair dealing. Cf. Independent Order of Foresters v. Donald,

12

Lufkin & Jenrette, Inc., 157 F.3d 933, 941 (2d Cir. 1998) (no claim for violation of an implied convent of good faith for pre-contract conduct because "an implied covenant relates only to the performance of obligations under an extant contract"). Having previously concluded that Delcath's counterclaim does not set forth allegations sufficient to establish the existence of a contract between Sever and Delcath, the court therefore concludes that the counterclaim does not set forth a cause of action for breach of the implied covenant of good faith and fair dealing. Sever's motion to dismiss this counterclaim is therefore granted.

C. Breach of Fiduciary Duty

Sever next argues that "for the same reasons that defendant Delcath has failed to properly plead the facts to establish said contract, the defendant does not state a claim for breach of any fiduciary duty."

Delcath responds by pointing out that "Sever wrongly assumes that the [c]ounterclaim for breach of fiduciary duty requires a contractual attorney-client relationship."

A fiduciary is bound by a standard of "utmost good faith, fairness [and] loyalty." Newburger, Loeb & Co. v. Gross, 563 F.2d 1057, 1078 (2d. Cir. 1977). Even in the absence of an express attorney-client relationship a lawyer may owe a fiduciary duty to persons with whom he deals. See Westinghouse Electric Corp. v. Kerr-McGee Corp., 580 F.2d 1311, 1319 (7th Cir.), cert.

denied, 439 U.S. 955 (1978). "A fiduciary duty arises when a lawyer deals with persons who, although not strictly his clients, he has or should have reason to believe rely on him." Croce v. Kurnit, 565 F. Supp. 884, 890 (S.D.N.Y. 1982), aff'd 737 F. 2d 229 (2d. Cir. 1994) (Defendant attorney is fiduciary of plaintiffs even though they were not his clients. Court explains that the attorney's introduction to the plaintiffs by his business partners as "the lawyer", and his explanation to the plaintiffs of the terms of several contracts that the plaintiffs signed were sufficient to establish a fiduciary duty on the part of the attorney to the plaintiffs).

Based on the foregoing, the court concludes that a contractual attorney-client relationship is not required in order to give rise to a fiduciary duty. The sole argument that Sever puts forth in opposition to the breach of the fiduciary duty counterclaim is that no contractual relationship existed between Sever and Delcath. Having concluded that a contractual attorney-client relationship is not required, Sever's proffered argument is without merit. The motion to dismiss the breach of fiduciary duty counterclaim is therefore denied.

D. Malpractice

Sever next argues that "for the same reasons that defendant Delcath has failed to properly plead the facts to establish said contract, the defendant does not state a claim for malpractice."

14

Delcath responds by arguing that "malpractice may be predicated on a relationship that is sufficiently close, without constituting actual privity."

The New York Court of Appeals has held, in <u>Prudential Insurance Company of America v. Dewey Ballantine, Busby, Palmer & Wood</u>, 80 N.Y.2d 377 (1992), that an attorney may be liable in negligence to a third party for claims of malpractice even where that attorney was not in privity with the third party. The key is whether the relationship between the parties was "so close as to approach that of privity." <u>Dewey Ballantine</u>, 80 N.Y.2d 377, 382 (1992). In <u>Dewey Ballantine</u> the court relied on "three critical criteria for imposing liability: (1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance."[3] <u>Dewey Ballantine</u>, 80 N.Y.2d 377, 384; <u>see also</u> <u>Gaddy v. Eisenpress</u>, 1999 U.S. Dist. LEXIS 19710 (S.D.N.Y. December 22, 1999) ("even if [attorney] was not in strict contractual privity with [p]laintiff, this [did] not preclude recovery for legal malpractice")

In light of the foregoing, the court concludes that strict contractual privity is not required in order to state a claim for

---

[3]Although <u>Deway Ballantine</u>, and the cases it relied on, dealt with negligence as it related to the rendering of legal advice, the court concludes that the principles articulated therein are equally applicable in this case that alleges negligence, <u>inter alia</u>, in the manner that the defendant maintained the confidentiality and proprietary nature of information.

15

professional legal malpractice. The sole argument that Sever puts forth in support of the motion to dismiss the professional malpractice counterclaim is that there was no contract between Sever and Delcath. Having determined that contractual privity is not required, the court concludes that Sever's argument is without merit. Therefore, the motion to dismiss the professional malpractice counterclaim is denied.

II. **Dismissal of Counterclaim pursuant to Fed. R. Civ. P. 12(b)(7)**

Sever finally argues that "because defendant Delcath has failed to join necessary parties to any contracts that defendant Delcath may have entered into, the counterclaim should also be dismissed under Rule 12(b)(7)." Specifically, the plaintiff contends that "defendant Feldman is a necessary party to the counterclaim."

Delcath responds by asserting that "Sever has not shown that Feldman is a necessary party defendant." Specifically, Delcath argues that "no legitimate argument can be made that Feldman was anything but an agent in the contract between Delcath and Sever . . . [and that] an agent for a disclosed principal has no liability on a contract."[4]

---

[4] Delcath's argument rests on the assumption that a contract existed between Sever and Delcath. The court has concluded that Delcath's counterclaim does not establish that an enforceable contract existed between Delcath and Sever. Therefore, the argument that Delcath offers in opposition to Sever's 12(b)(7) motion has no merit.

"The courts are loathe to grant motions to dismiss of this type. Thus, a 12(b)(7) motion will not be granted because of a vague possibility that persons who are not parties may have an interest in the action." Wright and Miller, Federal Practice and Procedure § 1359 (2d. Ed. 2003). In general, dismissal is warranted only when the defect cannot be cured. Id.

It is well established that a party to a contract which is the subject of the litigation is considered a "necessary" party. See, e.g., Global Discount Travel Services LLC v. Trans World Airlines, Inc., 960 F. Supp. 701, 707-708 (S.D.N.Y. 1997). ("As a direct party to the contract which is under dispute, Karabu is a necessary party to this litigation for at least the three reasons articulated under Fed. R. Civ. P. 19(a)."); Kawahara Enterprises, Inc. v. Mitsubishi Electric Corp., 1997 U.S. Dist. LEXIS 14282 (S.D.N.Y. 1997) (holding that parties to a contract were necessary parties to the breach of contract action). Therefore, whether Feldman is a necessary party under Fed. R. Civ. 19(a) depends on whether he is a party to the contract at issue in the present action.

The contract that gave rise to the present action allegedly existed between Sever and Delcath. As the court noted earlier, the counterclaim does not set forth facts sufficient to establish the existence of a contract between Sever and Delcath. Given

that Delcath has failed to establish the existence of a contract, Feldman cannot be said to be a party to that contract. Because Feldman is not a party to the contract that is the subject of the litigation, he is not a necessary counterclaim defendant.[5]

For the foregoing reason, Sever's motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(7) is denied.

## CONCLUSION

For the foregoing reasons, Sever's motion to dismiss Delcath's counterclaims (document #66) is GRANTED in part and DENIED in part. The motion to dismiss the breach of contract counterclaim is GRANTED. The motion to dismiss the breach of implied covenants of good faith and fair dealing is GRANTED. The motion to dismiss the breach of fiduciary duty counterclaim is DENIED. The motion to dismiss the professional malpractice counterclaim is DENIED. The motion to dismiss all of the counterclaims pursuant to Fed. R. Civ. P. 12(b)(7) is DENIED.

It is so ordered this, this 9th day of January, 2004, at Hartford, Connecticut.

Alfred V. Covello, U.S.D.J.

---

[5] The court acknowledges that the complaint could be construed to allege a contract between Sever and Feldman. However, the alleged contract that Delcath contends that Sever breached was a contract existing between Sever and Delcath.