FILED

2004 FEB -9 P 3: 05

U.S. DISTRICT COURT
HARTFORD, CT.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

FRANK SEVER, JR.,                         :
                                          :
        **Plaintiff,**                    :       **CIVIL ACTION NO.:  3:02CV722 (AVC)**
                                          :
    v.                                    :
                                          :
MORTON G. GLICKMAN, DELCATH               :
SYSTEMS, INC., and STEPHEN E.             :
FELDMAN,                                  :
                                          :
        **Defendants.**                   :       **February 9, 2004**

**DEFENDANTS' SUBMISSIONS TO JOINT TRIAL MEMORANDUM**

Defendants, Morton G. Glickman, M.D., DELCATH Systems Inc., and Stephen E.

Feldman, Esq. (jointly "Defendants"), pursuant to the United States District Court for the District

of Connecticut's Standing Order Regarding Trial Memoranda in Civil Cases (the "Standing

Order") and this Court's Order granting extension of time to file Joint Trial Memorandum dated

August 5, 2003, hereby respectfully submit Defendants' information required by the Standing

Order.

1.      **TRIAL COUNSEL**

        Joseph L. Clasen
        Robinson & Cole LLP
        695 East Main Street
        Stamford, Connecticut 06904-2305
        (203) 462-7510

STAM1-741406-1

Thomas J. Donlon
Robinson & Cole LLP
695 East Main Street
Stamford, Connecticut 06904-2305
(203) 462-7549

## 2.  JURISDICTION

Jurisdiction is asserted over Plaintiff's claims based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.  Defendants contend that this Court has no jurisdiction to determine any issues with regard to patent No. 5,897,533 or that Plaintiff has any right to said patent.  This Court has jurisdiction over the Counterclaims based upon diversity of citizenship.

## 3.  JURY/NON-JURY

This is a jury case.

## 4.  NATURE OF THE CASE

This is a civil action seeking damages for fraud, conversion and conspiracy.  Defendants have brought counterclaims for breach of fiduciary duty and malpractice.

## 5.  STIPULATIONS

There are no stipulations of fact or law.

## 7.  DEFENDANTS' CONTENTIONS

In April 1993, Dr. Morton G. Glickman, the Associate Dean of Yale University Medical School attended a meeting at Delcath Systems Inc.  Dr. Glickman had worked with Delcath for a number of years on the development of medical devices for the treatment of cancer.  During the meeting, Dr. Glickman suggested a design to make the catheter introducer used in treatment of cancer patients more compact and less complex.  Dr. Glickman drew sketches of the initial

concept. Dr. Glickman continued to improve the idea and in September 1993 prepared a further, more detailed, sketch. His design is known as a lateral movement controller.

In 1994 Delcath authorized Stephen E. Feldman, its regular patent attorney to conduct a patent search on the lateral movement controller. Mr. Feldman, as is a common practice in the field, obtained the services of a patent searcher to assist in this work. Later during 1996, Delcath requested Mr. Feldman pursue obtaining a patent on the lateral movement controller. Mr. Feldman contacted another patent attorney, Salvatore Mitri to prepare an initial draft of the patent application. Mr. Mitri had done similar work for Mr. Feldman before. Mr. Feldman sent Mr. Mitri information concerning the patent search, disclosure and Dr. Glickman's drawings. Due to the press of other business, however, Mr. Mitri did not complete the draft application.

In early 1997, Plaintiff Frank L. Sever, Jr., a patent attorney who had also done work for Mr. Feldman previously, inquired about receiving more work. Mr. Feldman decided to transfer the work of preparing the draft application for the lateral movement controller from Mr. Mitri to Mr. Sever. Mr. Feldman retained Mr. Sever as an attorney on behalf of Delcath. Mr. Feldman contacted Mr. Mitri and had Mr. Mitri return the materials previously supplied. Mr. Mitri called Mr. Sever to discuss the work already done on the application.

In March 1997, Mr. Sever forwarded the draft patent application for the catheter lateral movement controller that he prepared for Delcath to Mr. Feldman. Mr. Feldman in turn sent the draft to Dr. Glickman for review and comment, and sent a copy of the draft to Delcath.

In April 1997, Mr. Feldman requested from the United States Patent Office the file wrapper for the patent held by one of Delcath's suppliers involving catheters. On May 18, 1997,

3

Mr. Feldman sent the file wrapper to Mr. Sever asking him to analyze whether the supplier's patent could be designed around, a common and proper practice recognized by patent attorneys. Patent law favors such practice to encourage creativity and more inventions. Mr. Sever claimed experience in performing such analysis. On May 22, 1997, Mr. Sever sent a letter by facsimile to Mr. Feldman identifying two ways the supplier's patent could be designed around. The first was by the lateral movement controller. Mr. Sever noted in the May 22 letter that he had previously prepared the draft application for this first method. The other approach was a modification of the controller concept that incorporated the use of an incompressible fluid and was referred to as the telescoping frame.

Mr. Sever subsequently prepared a draft application for the telescoping frame concept, which he asked Mr. Feldman to forward to Delcath. After review, in July 1997, Delcath informed Mr. Feldman they were not interested in the telescoping frame concept and Mr. Feldman so informed Mr. Sever. Mr. Feldman told Mr. Sever that the application for a patent for Dr. Glickman's lateral movement controller would be submitted to the U.S. Patent Office.

Meanwhile, Dr. Glickman had continued his review of the draft application for the lateral movement controller. In July 1997, Mr. Feldman forwarded the final application to Dr. Glickman for signature. The signed application was submitted to the United States Patent Office on September 2, 1997. Patent No. 5,897,533 was issued to Delcath as Dr. Glickman's assignee for the catheter flow and lateral movement controller in April 1999, the culmination of Dr. Glickman's invention that began with the original concepts in April 1993.

On June 28, 1999, Mr. Sever, utilizing the work product he had previously prepared for his client, Delcath, submitted a patent application in his own name for the lateral movement controller, falsely claiming he had invented it.  Mr. Sever also contacted Delcath's supplier and, in breach of his duty of confidentiality as an attorney, conveyed to them the information that Delcath had sought to design around their patent.

As a result of Mr. Sever's filing, an interference proceeding was held before the United States Board of Patent Appeals and Interferences, the federal agency charged by law with determining the priority of claimed inventions.  The Board determined that Dr. Glickman, not Mr. Sever, was the inventor of the catheter flow and lateral movement controller.

**8.     LEGAL ISSUES**

Whether the Court has subject matter jurisdiction over this matter.

Whether the statute of limitations bars Plaintiff's claims.

Whether Plaintiff can bring any claim without proving that he is the inventor of the Catheter Flow and Lateral Movement Controller.

Whether the decision of the United States Board of Patent Appeals and Interferences constitutes claim preclusion.

Whether the decision of the United States Board of Patent Appeals and Interferences constitutes issue preclusion.

Whether the issues of derivation of an invention and inventorship require corroboration.

Whether the application for the catheter lateral movement controller constituted attorney work product.

Whether an attorney is precluded from any ownership rights in work-product prepared for a client.

Whether the alleged tape recording must be excluded because it is not authentic.

Whether conversations between Mr. Feldman and Mr. Sever are privileged and, therefore, inadmissible.

Whether there is an independent cause of action for conspiracy.

Whether there is a cause of action for conversion of intellectual property.

9.    **LIST OF WITNESSES**

Stephen E. Feldman
    12 East 41st Street
    New York, New York 10017

        Will testify about the patent application for the lateral movement controller, his retention of Mr. Mitri and Mr. Sever to draft the initial application, and Mr. Sever's involvement in the analysis of the supplier's patent.

Jonathan Foltz
    Delcath Systems
    1100 Summer Street
    Stamford, Connecticut 06905

        Will testify about the development of the concept for the lateral movement controller, the application for a patent and consideration of the incompressible fluid concept.

Dr. Morton G. Glickman
    28 Temple Court
    New Haven, Connecticut 06511

        Will testify he originally came up with the design of the lateral movement controller, developed it into the invention and received a patent for his invention.

Salvatore Mitri
    263 Bryant Avenue
    Staten Island, New York 10306

> Will testify he worked for Stephen Feldman P.C. preparing draft
> patent applications, that he received the information concerning the
> lateral movement controller including Dr. Glickman's drawings in
> 1996, that he began to prepare a draft patent application but did not
> complete it, and that the work of preparing the application was
> transferred to Mr. Sever.

Dr. Charles Berman
    211 Central Park West
    New York, New York 10014

> Will testify that he retained Stephen Feldman P.C. to file patent
> applications for him that on more than one occasion Mr. Feldman
> had Mr. Sever prepare the initial draft application, that he spoke to
> Mr. Sever directly about these applications and that Mr. Sever
> asked him to contact Mr. Feldman regarding Dr. Glickman's
> invention.

Tom Owen
    Owl Investigations
    P.O. Box 189
    Colonia, New Jersey 07067

> Will testify that the tape recording of an alleged conversation
> between Mr. Feldman and Mr. Sever is not authentic.

Peter Berger
    Lenesohn, Lerner, Berger & Langsam
    757 Third Avenue, 25th Floor
    New York, New York 10017

> Will testify about the role and duties of a patent attorney, the
> patent search process and the patent application process.

James Trowbridge
>   Quinnipiac University School of Law
>   275 Mt. Carmel Avenue
>   Hamden, Connecticut 06518

>   Will testify about the ethical duties of an attorney with regard to
>   his client, the ethical limits on an attorney's conduct in dealing
>   with other attorneys, the standard of care for attorneys and their
>   fiduciary duties, including handling of work product and
>   confidential information.

Eugene C. Rzucidlo
>   Greenberg Traurig LLP
>   885 Third Avenue
>   New York, New York

>   Will testify about interference proceedings before the U.S. Patent
>   Office and the Board of Patent Appeals and Interferences.

Ida Serrano
>   1970 Bronxdale Avenue
>   Bronx, New York 10462

>   Will testify about telephone conversations with Plaintiff's office
>   and various aspects of Mr. Feldman's office.

Richard Schurin
>   Island Park, New York

>   Will testify concerning various aspects of communications
>   between Mr. Sever and Mr. Feldman

Patricia McCabe
>   Will testify concerning communications between Plaintiff's office
>   and Mr. Feldman.

Kenneth Feldman
    96 Stirling Place
    Brooklyn, New York  11217

    Will testify about dealings between Plaintiff's office and Mr.
    Feldman.

Seymour Adler
    2300 Olinville Avenue
    Bronx, New York 10467

    Will testify about damages resulting from Mr. Sever's breach of
    his duties as an attorney.

Defendants reserve the right to call any witness listed by the Plaintiff and
    to call witnesses in rebuttal.

**10.**    **DEFENDANTS' EXHIBITS**

Drawing by Dr. Glickman, April 1993

Drawing by Dr. Glickman, April 1993

Drawing by Dr. Glickman, April 1993

Drawing by Dr. Glickman, September 7, 1993

Drawing approved by Dr. Glickman, January 20, 1994 and return envelope

Letter from Stephen Feldman to Inna Reichstein dated January 20, 1994

Letter from Salvatore Mitri to Stephen Feldman dated January 17, 1996

Drawing by Dr. Glickman, January 1997

Letter from Salvatore Mitri to Stephen Feldman dated February 10, 1997

Letter from Alexander Russel to Stephen Feldman dated February 12, 1997

Letter from Stephen Feldman to Inna Reichstein dated February 19, 1997

Facsimile from Frank Sever to Stephen Feldman of March 10, 1997

Letter from Stephen Feldman to Jonathan Foltz (Re: Application) dated March 24, 1997

Facsimile from Frank Sever to Dr. Charles Berman, dated March 25, 1997 (with notes by Dr. Berman)

Patent Application drafted by Frank Sever

Letter from Stephen Feldman to Jonathan Foltz (Re: NuMed) dated March 24, 1997

Letter from Jonathan Foltz to Stephen Feldman dated April 2, 1997

Memorandum from Jonathan Foltz to Stephen Feldman dated April 4, 1997

Frank Sever Sample Confidential Non-Disclosure Agreement

Facsimile from Frank Sever to Delcath, with Abstract and Drawing, dated April 13, 1997

Letter from Stephen Feldman to Jonathan Foltz dated April 15, 1997

File Wrapper for Patent Application, Serial No. 07/561671

Letter from Stephen Feldman to Frank Sever forwarding File Wrapper dated May 18, 1997

Facsimile from Frank Sever to Stephen Feldman dated May 22, 1997

Facsimile from Frank Sever to Stephen Feldman dated May 30, 1997

Facsimile from Frank Sever to Stephen Feldman dated July 15, 1997

Letter from Stephen Feldman to Dr. Morton Glickman, with draft Patent Application, dated July 15, 1997

Letter from Stephen Feldman to Alexander Russel dated July 16, 1997

Notes of Telephone conversation between Frank Sever and Stephen Feldman dated July 21, 1997

Facsimile from Frank Sever to David Isabella with Power of Attorney dated July 23, 1997

Letter from Stephen Feldman to Jonathan Foltz dated July 30, 1997

Facsimile from Deborah Sever to Stephen Feldman dated August 8, 1997

Telephone bill of Stephen Feldman P.C. dated August 19, 1997

Facsimile from Frank Sever to Stephen Feldman dated October 8, 1998

Letter from Stephen Feldman to Frank Sever dated November 25, 1998

Facsimile from Deborah Sever to Stephen Feldman dated March 19, 1999

Memorandum of Ida Serrano dated March 19, 1999

United States Patent No. 5,897,533 of April 27, 1999

Memorandum Opinion and Order of Judgment of the United States Patent and Trademark
    Office's Board of Patent Appeals and Interferences dated November 6, 2001

Excerpts of Transcript of December 30, 2002 Deposition of Frank Sever

Exhibits to December 30, 2002 Deposition of Frank Sever

Certificate of Changes to Transcript by Frank Sever dated February 24, 2003

Expert Report of Tom Owen of August 13, 2003

Expert Report of Peter Berger of September 12, 2003

Expert Report of James Trowbridge of October 22, 2003 as supplemented February 5,
    2004

Expert Report of Eugene C. Rzucidlo of February 2, 2004

Curriculum Vitae of Dr. Morton G. Glickman

Video of Catheter Introducer in Use with the Delcath System

Video of Lateral Movement Controller

Drawing of Telescoping Frame

11.    **DEPOSITION TESTIMONY**

Deposition of Frank Sever, December 30, 2002

p. 1, line 25 to p. 6, line 7

p. 10, line 11 to p. 10, line 18

p. 13, line 10 to p. 13, line 17

p. 14, line 17 to p. 15, line 20

p. 16, line 6 to p. 16, line 15

p. 24, line 17 to p. 25, line 4

p. 27, line 18 to p. 29, line 6

p. 43, line 14 to p. 44, line 20

p. 59, line 9 to p. 59, line 14

p. 61, line 14 to p. 61, line 23

p. 67, line 19 to p. 68, line 6

p. 69, line 8 to p. 69, line 12

p. 70, line 10 to p. 72, line 15

p. 83, line 1 to p. 84, line 5

p. 84, line 14 to p. 85, line 21

p. 103, line 5 to p. 103, line 23

p. 114, line 15 to p. 115, line 3

p. 129, line 16 to p. 130, line 6

p. 134, line 10 to p. 135, line 7

p. 156, line 14 to p. 157, line 19

p. 170, line 13 to p. 171, line 7

p. 173, line 9 to p. 173, line 15

## 12.    REQUESTS FOR JURY INSTRUCTIONS

### A.    FRAUD

This is an action for fraud and the plaintiff, Mr. Sever is seeking to recover damages for false representations which he claims that the Defendants, Dr. Glickman and Mr. Feldman, made to him. Plaintiff has made no allegation of fraud against Defendant Delcath Systems, and you may not return a verdict against Delcath Systems for fraud. The essential elements of a cause of action in fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury.

In this case the representations which Plaintiff claims to have been fraudulently made, on or about mid August 1997 or later, are as follows:

1.    That Mr. Feldman represented to Mr. Sever that Mr. Feldman would not file an application for a patent for the Catheter Flow and Lateral Movement Controller;

2.    That Mr. Feldman would be in an awkward situation if Mr. Sever filed a patent application for the Catheter Flow and Lateral Movement Controller, and

3.    That Dr. Glickman was the original, first and sole inventor of the Catheter Flow and Lateral Movement Controller.

Each of these alleged representations should be considered and judged separately in accordance with the instructions that follow.

13

To prevail on the claim of fraud the Plaintiff must prove each of the following by clear and convincing evidence:

First:  That each Defendant made one or more of the three alleged representations;

Second:  That the particular representation related to a material existing fact;

Third:  That each Defendant knew that the particular representation was untrue or made in careless disregard of whether it was true or false;

Fourth:  That each Defendant intended to induce the Plaintiff to rely and act upon the particular representation, and

Fifth:  That the Plaintiff reasonably relied upon the representation.

Sixth:  The Plaintiff must prove, by a preponderance of the evidence, that as a result of his reliance upon the particular false representation, he suffered damages that is actual pecuniary loss.

Fraud is never presumed, but must always be proved be evidence.  You should assume that persons, including both Defendants Dr. Glickman and Mr. Feldman, are fair and honest until the contrary appears from the evidence.  If a transaction that is called into question is capable of two interpretations, one honest and the other fraudulent, it should be found to be honest.

You may have heard in criminal cases that proof must be beyond a reasonable doubt, but I must emphasize to you that this is not a criminal case, and you are not deciding criminal guilt or innocence.  In civil cases such as this one, a different standard of proof applies.  The standard of proof for the first five elements which the Plaintiff must prove is clear and convincing evidence.  This requires that the evidence presented on each of these five elements be clear,

14

precise and unequivocal. This standard of proof is higher than a preponderance of evidence which applies to Plaintiff's proof of damages. A preponderance of the evidence means that the better or weightier evidence must establish that, more probably than not, the claim of damages is true. The weight to be accorded each piece of evidence is for you to decide. It is important to remember that for all of the elements, except damages, Plaintiff must prove his assertions by the higher standard of clear and convincing, not a preponderance.

With regard to the particular elements of fraud, first the representations must be of a present fact, not promises as to what Defendants Dr. Glickman and Mr. Feldman would do in the future or assurance as to what would take place in the future. Statements of that nature do not in themselves amount to such representations as would furnish a basis of an action of fraud. If when a defendant made a promise about future actions, he had no intention to keep it, which would furnish a basis for an action in fraud.

Next, representations of fact, to be the basis of an action for fraud must be untrue. If any of the three representations allegedly made by one or both Defendants was true, no fraud action can be based on them. But it is not enough for the Plaintiff to prove the representations were untrue, he must also prove that they were known to be untrue by each of the Defendants or made in disregard of whether the representations were true or not. Fraud involves an element of wrongdoing. If a person makes a statement of fact in the honest belief it is so, he may be mistaken, but he is not guilty of any moral wrong, or of any fraud.

The Plaintiff must also prove that Defendants Dr. Glickman and Mr. Feldman intended to induce him to rely on the false representation and that the Plaintiff did in fact act, or withhold

from acting, in reliance upon the particular false representation. In this regard you are instructed that Plaintiff, in his Complaint only alleged that he relied on the statements of Mr. Feldman. Also Plaintiff, in his Complaint only alleged that Mr. Feldman (but not Dr. Glickman) made representations with the intent to deceive the Plaintiff and induce such reliance. Since Plaintiff does not allege to have relied upon any statements of Dr. Glickman, nor that Dr. Glickman intended Plaintiff to rely, you can not find any fraud on the part of Dr. Glickman.

Here the Plaintiff alleges that he withheld from filing his own application for a patent for the Catheter Flow and Lateral Movement Controller in reliance upon the representation of Mr. Feldman. To prove and recover for fraud, therefore, Plaintiff must prove that, but for each defendant's representation, he would have filed for such a patent. In this regard, you are instructed that in order to file a patent application the person must be original and first inventor of the item for which he solicits a patent. Therefore, if the Plaintiff, Mr. Sever, was not the original and first inventor of the Catheter Flow and Lateral Movement Controller, he could not have filed an application for its patent, and his withholding from filing a patent application cannot be in reasonable reliance upon Mr. Feldman's representations, since he would have no legal right to file a patent application. Further since Mr. Sever is an attorney, work that he performs for a client (also called work product) is owned by the client, not himself. So for Mr. Sever to have a legal right to file the patent application you must find that he did not do work on the matter or prepare the application for a client. Any work that Mr. Sever did for a client was owned by the client, not by Mr. Sever.

In addition, the Plaintiff has claimed that Defendants Dr. Glickman and Mr. Feldman fraudulently represented to the U.S. Patent Office that Dr. Glickman was the inventor of the catheter flow and lateral movement controller. To prevail on this claim, Plaintiff must prove that Dr. Glickman was not the inventor but rather that Mr. Sever was the inventor.

The United States Patent Office granted Patent Number 5,897,533 to Delcath Systems as the assignee of Dr. Glickman as inventor. The law presumes that the U.S. Patent Office acted correctly in issuing the patent; in the absence of clear and convincing evidence to the contrary (the standard I discussed earlier in describing the elements of fraud).

In order for the Plaintiff to prove that he was the inventor of the Catheter Flow and Lateral Movement Controller, he must prove by clear and convincing evidence conception of the invention. Conception is the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is applied in practice. The testimony of the alleged inventor, Mr. Sever, cannot alone constitute clear and convincing evidence. There must be corroboration by other evidence. Corroboration is required because of the law's concern that a party claiming inventorship might be tempted to describe his actions in an unjustifiably self-serving manner in order to obtain a patent. What is necessary, therefore, is evidence of a contemporaneous disclosure, such as by drawings or model that would enable one skilled in the art to make the invention and the time of such disclosure.

In addition to conception, the Plaintiff must also prove, again by clear and convincing evidence, derivation. Derivation is the prior conception of the invention plus communication of that conception to the other claimant. Here Mr. Sever would have to prove, by clear and

17

convincing evidence that he conceived of the complete invention before Dr. Glickman did, and that he communicated that conception to Dr. Glickman. Derivation also requires corroboration and cannot be proved by the alleged inventor's testimony only. If Mr. Sever cannot prove by clear and convincing evidence, including the necessary corroboration, that he conceived of the Catheter Flow and Lateral Controller before Dr. Glickman and that he then communicated the same to Dr. Glickman, he cannot prevail on his fraud claim.

Finally, the Plaintiff must prove actual damages that result from his reliance upon the fraudulent representations. To prove damages, Mr. Sever must prove, by a preponderance of evidence that he suffered an actual pecuniary loss. Any loss is computed by ascertaining the out-of-pocket difference between the value of the bargain which a plaintiff was induced to make and the amount or value of the consideration extracted as the price of the bargain. There can be no recovery of profits which would have been realized in the absence of fraud. Here Mr. Sever alleges he was induced not to apply for a patent. To prove fraud, Mr. Sever must show that he suffered an actual pecuniary loss (that is a loss of money) by not filing the application. Recall that Mr. Sever stated that if Defendants had been truthful in saying they would not file an application, he did not intend to file it either. Thus, if Defendants had committed no fraud, Mr. Sever still would not have filed the patent application.

B.    CONVERSION

Plaintiff's second cause of action, which is alleged against all three defendants, is for conversion. The tort of conversion requires the Plaintiff to prove that the Defendants have unauthorized possession of tangible personal property which the plaintiff owns and has the right

18

to possess. There is no cause of action for conversion of intangible property. Plaintiff asserts the property converted was an invention. Since an invention is intangible property, there can be no conversion of an invention.

### C.    CONSPIRACY

Plaintiff's third cause of action is for conspiracy. This claim is brought only against defendants Dr. Glickman and Mr. Feldman. Again, you may not return a verdict against Delcath Systems on this claim.

The elements of a civil action for conspiracy are:

> First, a combination or an agreement between two persons, here Dr. Glickman and Mr. Feldman;

> Second, to do a criminal or an unlawful act or a lawful act by criminal or unlawful means;

> Third, an act done by one or the other of the conspirators pursuant to the scheme and in furtherance of the object, and

> Fourth, which act results in damage to the Plaintiff.

You are instructed that there can be no separate claim of conspiracy unless based on some other underlying cause of action. Consequently for the plaintiff to recover on a conspiracy claim you must find he has proved all of the elements of the underlying cause of action. Here the underlying cause of action is fraud. Therefore, if you find that Plaintiff has not proved every element of fraud, by the requisite standard of proof, then you must find for the Defendants on the claim of conspiracy.

In addition to proving the underlying claim of fraud, plaintiff must also prove that there was an agreement between Dr. Glickman and Mr. Feldman, and that that agreement was to do something unlawful or in an unlawful manner.  An act, which done by one person alone is no cause of action, is not rendered actionable by being done in pursuance of a conspiracy.

Finally to recover for civil conspiracy, the Plaintiff must prove that he suffered actual damages as a result of the acts of the alleged conspirators.


D.    <u>STATUTE OF LIMITATIONS</u>

Defendants assert as a defense that the statute of limitations bars all of Plaintiff's claims. A statute of limitations is a law that provides that a suit is barred if the plaintiff does not bring it within a prescribed period of time.  In this case, the time period within which the suit must be brought begins when the act complained of occurred. Here the act which begins the running of the statute of limitations would be the date on which the fraud, or conversion, or act in furtherance of the conspiracy, occurred.

The Applicable statue of limitations period is three (3) years.  Defendants have the burden of proving the statute of limitations defense.  In other words, the defendants must prove by a preponderance of the evidence that the plaintiff, Mr. Sever, did not bring the suit within the applicable three (3) year period from the date that the fraudulent act or act in furtherance of the conspiracy occurred. The three (3) year period is not measured from when Mr. Sever learned of the fraud or conspiracy, but from the date when the acts complained of occurred. Mr. Sever claims that the fraudulent statements upon which he relied occurred in mid to late August of

1997, and similarly that the agreement and acts in furtherance of any conspiracy occurred then as well. Therefore, the three (3) year period would expire no later than September 2000.

E.     BREACH OF FIDUCIARY DUTY

Defendant Delcath has brought a counterclaim that the Plaintiff violated what is called a "fiduciary" duty or obligation that the Plaintiff allegedly owed to Defendant Delcath.

A "fiduciary" obligation exists whenever one person – the client – places special trust and confidence in another person – the fiduciary – relying upon the fiduciary to exercise discretion or expertise in acting for the client; and the fiduciary knowingly accepts that trust and confidence and thereafter undertakes to act in behalf of the client by exercising the fiduciary's own discretion and expertise.

You are instructed that if Mr. Sever, who is an attorney, had an attorney-client relationship with Delcath, then he owed Delcath a fiduciary duty. An attorney-client relationship arises when one contacts an attorney in his capacity as such for the purpose of obtaining legal advice or services. Formality is not a requirement for the establishment of an attorney-client relationship. Neither an express agreement nor payment of fee is necessary for an attorney-client relationship to be formed. A client such as Delcath may also consent to the retention of another attorney by its present lawyer (in this case Mr. Feldman) and the creation thereby of an attorney-client relationship.

21

However, even in the absence of an attorney-client relationship, a lawyer, such as Mr. Sever, may owe a fiduciary duty to persons with whom he deals. A fiduciary duty also arises when a lawyer deals with persons, who, although not strictly his clients, he has or should have reason to believe rely on him.

When one person does undertake to act for another in a fiduciary relationship, the law forbids the fiduciary from acting in any manner adverse or contrary to the interests of the client, or from acting for the fiduciary's own benefit in relation to the subject matter of their relationship. The client is entitled to the best efforts of the fiduciary on the client's behalf, and the fiduciary must exercise skill, care and diligence when acting on behalf of the client.

A person acting in a fiduciary capacity is required to make truthful and complete disclosures to those to whom a fiduciary obligation is owed, and the fiduciary is forbidden to obtain an unreasonable advantage at the client's expense.

Here the Counterclaim for breach of fiduciary duty alleges that Mr. Sever obtained confidential information from Delcath regarding the invention of the Catheter Flow and Lateral Controller and used it to his own benefit to bring a claim that he was the inventor. Further the Counterclaim alleges that Mr. Sever used work product (the patent application) that belonged to the client, Delcath for his own benefit. In addition, the Counterclaim alleges that Mr. Sever communicated confidential information to one of Delcath's suppliers. If you find, by a preponderance of the evidence, that Mr. Sever owed a fiduciary duty to Delcath and that he breached that duty, you may award Delcath damages.

F.    <u>MALPRACTICE</u>

Defendant Delcath has also brought a counterclaim of legal malpractice against the

Plaintiff, Mr. Sever.  The elements of a malpractice claim are: (1) the existence of an attorney-

client relationship, or a relationship with an attorney which is very close to a formal attorney-

client relationship; (2) the attorney's wrongful act or omission; (3) causation, and (4) damages.

These elements must be proven by a preponderance of the evidence.

I have discussed the attorney-client relationship in my instruction on Delcath's

counterclaim of Breach of Fiduciary Duty.  If you find Mr. Sever had an attorney-client

relationship you should go on to consider the other elements.  However, like a fiduciary duty, a

duty sufficient to support a claim of malpractice may arise without a formal attorney-client

relationship.  A relationship sufficiently close to attorney-client (even if formed through another

attorney such as Mr. Feldman), can be the basis of duty, where the attorney is aware his work

will be relied upon by a third party and is so relied upon.

An attorney who undertakes to represent a client impliedly represents that (he) possesses

a reasonable degree of skill, that (he) is familiar with the rules regulating practice in actions of

the type which (he) undertakes to bring or defend and with such principles of law in relation to

such actions as are well settled in the practice of law, and that (he) will exercise reasonable care.

Reasonable care means that degree of skill commonly used by an ordinary member of the legal

profession.  However, an attorney is not a guarantor of the result of the case.

Here Delcath claims that Mr. Sever failed to exercise the reasonable degree of skill of an

attorney by engaging in self-dealing in direct conflict with the interests of Delcath, violating the

attorney-client privilege including communicating confidential information to Delcath's supplier, and making unauthorized use of the work-product prepared for Delcath pursuant to a request for his legal services (the application for the Catheter Flow and Lateral Movement Controller).

If you find that Mr. Sever committed these acts, not within the reasonable skills of an attorney, and as a result Delcath suffered certain damages, Delcath may recover on its counterclaim of malpractice.

13.   **ANTICIPATED EVIDENTIARY PROBLEMS**

1.     Alleged tape recording of purported conversation between Frank Sever and Stephen Feldman in 1997.

   See attached Memorandum of Law In Support of Motion In Limine to Exclude Alleged Tape Recording

14.   **TRIAL TIME**

Three (3) days.

Dated: Stamford, Connecticut
       February 9, 2004

                      DEFENDANTS MORTON G. GLICKMAN,
                      DELCATH SYSTEMS INC. AND
                      STEPHEN E. FELDMAN

              By: _____
                  Joseph L. Clasen, Esq. (ct04090)
                  Thomas J. Donlon, Esq. (ct22839)
                  e-mail: jclasen@rc.com
                  ROBINSON & COLE LLP
                  Financial Centre
                  695 East Main Street
                  Post Office Box 10305
                  Stamford, CT 06904-2305
                  Telephone: (203) 462-7500
                  Facsimile: (203) 462-7599

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via first class mail, postage prepaid to counsel of record for the Plaintiff, Frank B. Velardi, Jr., Esq., Lasala, Walsh, Wicklow & Velardi, 168 Bradley Street, New Haven, Connecticut 06511 and to Peter Paul Mitrano, Esq., 581 Boylston Street, Suite 201, Boston, Massachusetts 02116, this 9th day of February, 2004.

THOMAS J. DONLON