the jury can finally decide that issue. The judge's admission of the evidence under Rule 104(b) is conditional and 'subject to the introduction of evidence sufficient to support a finding of the fulfillment of the condition.' F.R.E. 104(b). . . .

"F.R.E. 901(a) requires 'evidence sufficient to support a finding that the matter in question is what its proponent claims,' but does not definitively establish the nature or quantum of proof that is required. Cf. F.R.E. 901(a), (b), Notes of Advisory Committee. Subsection (b) provides illustrations of what will suffice. Subsection (b)(5), dealing specifically with the question of voice identification, states that '[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording,' can be established 'by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.' [The defendant] argues that the opinion referred to must be that of a witness and not that of the trier of the fact, and the Notes of the Advisory Committee suggest that this is so, as does Judge Weinstein, 5 [Jack B. Weinstein and Margaret A. Berger,] Weinstein's Evidence, ¶¶ 901(b)(5)

*Sliker*, 751 F.2d at 498-500 (alterations partly added) (citations partly omitted) . . .

"The district court's determination that it 'was not satisfied that the voice on the tape was that of Davis,' *Ricketts II*, slip op. at 4, is inconsistent with these principles. So long as a jury is entitled to reach a contrary conclusion, it must be given the opportunity to do so . . . ."

Thus, it is clear from critical readings of *Tropeano* and *Ricketts*, that with respect to determining authenticity [or identification], although the function of

17

the Court is limited to making preliminary technical findings (e.g., such as hearsay, privilege, etc.), it is the function of the jury to make the ultimate determination, subject to the Court's preliminary findings. See also *United States v. Morrison*, 153 F.3d 34 (2nd Cir. 1998); and *United States v. Ruggiero*, 928 F.2d 1289 (2nd Cir. 1991) in regard to the authentication of tape recordings as a condition precedent to admissibility in the Second Circuit.

## The Tape is Admissible

In *United States v. Cambindo Valencia*, 609 F.2d 603, 640 (2nd Cir. 1979), the Court stated in part:

> ". . . **The standard for the admissibility of an opinion as to the identity of a speaker on tape is merely that the identifier has heard the voice of the alleged speaker at any time.** *United States v. Rizzo*, 492 F.2d 443, 448 (2d Cir.), *cert. denied*, 417 U.S. 944, 94 S. Ct. 3069, 41 L. Ed. 2d 665 (1974); *United States v. Bonanno*, 487 F.2d 654, 659 (2d Cir. 1973); Fed.R.Evid. 901(b)(5) . . . ." (Bold emphasis added.)

Previous to the telephone conversation that has been memorialize on the tape, Sever had heard Feldman's voice over the telephone on numerous occasions. Sever was a party to the telephone conversation. Sever heard and recognized the voice of Stephen E. Feldman as the other participant of the telephone conversation.

## Authentication or Identification

Rule 901(a) of the Federal Rules of Evidence, entitled: "Requirement of Authentication **or Identification**" (bold emphasis added), provides:

> **"(a) General Provision.** The requirement of authentication **or identification** as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." (Bold emphasis added).

See also *United States v. Tropeano,* 252 F.3d 653, 661 (2nd Cir. 2001) wherein the court noted:

> "[Appellant], however, argues that the [proponent of the tape] also needed to establish a chain of custody for the tapes . . . (citations omitted) Indeed, appellant's position is contrary to the plain language of Rule 901. See *United States v. Barone,* 913 F.2d 46, 49 (2d Cir. 1990) ('[T]he [proponent of the tape] is not required to call as a witness a participant in a recorded conversation in order to authenticate the recording; it may lay the foundation for the recording through the testimony of the technician who actually made it.'); *United States v. Rizzo,* 492 F.2d 443, 448 (2d Cir. 1973) (holding that voice identification by three detectives was sufficient); *United States v. Albert,* 595 F.2d 283, 290 (5th Cir. 1979) (voice identification by conversation participant proper); *see also Pluta,* 176 F.3d at 49 ('The burden of authentication does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be. Rather, the standard for authentication, and hence for admissibility, is one of **reasonable likelihood**.' (quoting *United States v. Holmquist,* 36 F.3d 154, 168 (1st Cir. 1994)). Finally, *Fuentes* also noted that 'this Circuit has never expressly adopted a rigid standard for determining the admissibility of tape recordings.' 563 F.2d at 532. The district court therefore did not abuse its discretion in admitting the tapes.
>
> "Authentication of course merely renders the tapes admissible, leaving the issue of their ultimate reliability to the jury . . . Any doubts raised by such a challenge would, however, go to the weight to be given to the tapes by the jury, not to their admissibility. See

> *United States v. Sovie*, 122 F.3d 122, 127-28 (2d Cir. 1997); *Albert*, 595 F.2d at 290." (Bold emphasis added.)

The rule means that where sufficient identification of the tape is established then authentication becomes superfluous and thus would not be required to render the tape admissible; or identification can be established through sufficient identification.

## The Instant Tape is Self-Identifying

Rule 901(b) of the Federal Rules of Evidence, provides in pertinent part:

> **"(b) Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
>
> . . .
>
> "(5) *Voice Identification.* Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.
>
> "(6) *Telephone Conversations.* Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (A) in the case of a person, circumstances, including self-identification, show the person answering to be the one called, or (B) in the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone."

The "ADVISORY COMMITTEE NOTES" to Rule 901 of the Federal Rules of Evidence provide in pertinent part:

20

"Example (5). Since aural voice identification is not a subject of expert testimony, the requisite familiarity may be acquired either before or after the particular speaking which is the subject of the identification, in this respect resembling visual identification of a person rather than identification of handwriting. Cf. Example (2), *supra*, *People v. Nichols*, 378 Ill. 487, 38 N.E.2d 766 (1942); *McGuire v. State*, 200 Md. 601, 92 A.2d 582 (1952); *State v. McGee*, 336 Mo. 1082, 83 S.W.2d 98 (1935).

"Example (6). The cases are in agreement that a mere assertion of his identity by a person talking on the telephone is not sufficient evidence of the authenticity of the conversation and that additional evidence of his identity is required. The additional evidence need not fall in any set pattern. Thus **the content of his statements or the reply technique, under Example (4), *supra*, or voice identification under Example (5), may furnish the necessary foundation. Outgoing calls made by the witness involve additional factors bearing upon authenticity. The calling of a number assigned by the telephone company reasonably supports the assumption that the listing is correct and that the number is the one reached. If the number is that of a place of business, the mass of authority allows an ensuing conversation if it relates to business reasonably transacted over the telephone, on the theory that the maintenance of the telephone connection is an invitation to do business without further identification.** *Matton v. Hoover Co.*, 350 Mo. 506, 166 S.W.2d 557 (1942); *City of Pawhuska v. Crutchfield*, 147 Okl. 4. 293 P. 1095 (1930); *Zurich General Acc. & Liability Ins. Co. v. Baum*, 159 Va. 404, 165 S.E. 518 (1932). Otherwise, some additional circumstance of identification of the speaker is required. The authorities divide on the question whether the self-identifying statement of the person answering suffices. Example (6) answers in the affirmative on the assumption that usual conduct respecting telephone calls furnish adequate assurances of regularity, bearing in mind that the entire matter is open to exploration before the trier of fact. In general, see McCormick § 193; 7 Wigmore §

21

2155; Annot., 71 A.L.R. 5, 105 id. 326." (Bold emphasis added).

Here, the relevant portion of the tape is an outgoing call relative to the Sever (e.g., the witness proffering the tape). The call is made by Sever to Feldman's place of business (e.g., The Law Offices of Stephen E. Feldman). At page 1, line 5 – 14 of the Feldman transcript version of the tape appended to the expert opinion report of defendants' expert, OWL Investigations, Inc., the following occurs:

> "(sound of dialing numbers, phone rings)
>
> F. VOICE:  Mr. Feldman's office.
>
> SEVER:  Yes, is ah Steve there?
>
> F VOICE:  Who's calling?
>
> SEVER:  Frank Sever?
>
> F VOICE:  One moment.
>
>   (pause)
>
> FELDMAN:  Hi, big Frank.
>
> SEVER:  How you doing, Steve?
>
> FELDMAN:  Okay . . . ."

Thus, Feldman identifies himself on the tape when considered in light of the circumstances that accompany the production of the tape, Sever contends that Feldman identifies himself on the tape. The circumstances that establish Feldman's self-identification on the tape are:

1) The "sound of dialing numbers" corresponds to the telephone number of the Law Office of Stephen E. Feldman as it existed at

22

the time the telephone call was made and recorded, thus indicating the telephone call was in-fact made to the office of defendant Stephen E. Feldman.

2) The female voice (presumed to be the receptionist of Stephen E. Feldman at the time the call was made and recorded) answered: "Mr. Feldman's office," also indicating that the call was in-fact made to the office of defendant Stephen E. Feldman.

3) The female voice says: "One moment;" there is a pause; a voice answers: "Hi, big Frank," indicating that plaintiff Frank Sever, Jr., was in-fact the caller.

4) The caller plaintiff Frank Sever, Jr., answers: "How you doing, Steve?" and the male voice on the other end of the line says: **"Okay...,"** acknowledging (in light of all of the forgoing facts) that the party possessing the male voice was in-fact defendant Stephen E. Feldman, **identifying himself.**

Here too, pursuant to Rule 901(b)...(5)...Identification of the voice of Stephen E. Feldman,...through mechanical [and]/or electronic transmission..., by opinion of plaintiff Frank Sever, Jr., based upon Sever's hearing the voice of Stephen E. Feldman at any time under circumstances connecting the voice of Stephen E. Feldman with the alleged speaker [Stephen E. Feldman]...(6)...it is evident that a call was made to the number assigned to the Law Office of Stephen E. Feldman at the time by the telephone company to the business, the Law Office of Stephen E. Feldman and (A) in the case of a the identification of

23

Stephen E. Feldman, the circumstances as noted above, including self-identification, show the person [Stephen E. Feldman] answering to be the one called, [Stephen E. Feldman], and (B) in the case of a business, the call was made to a place of business, [the Law Office of Stephen E. Feldman] and the conversation related to business [discussion regarding the inventorship of the instant invention] reasonably transacted over the telephone. Thus, pursuant 901(b), by way of illustration, the authentication or identification conforming with the requirements of this rule has been demonstrated above.

This result is consistent with Virginia law and the common law majority rule.[3] In *Zurich General Accident and Liability Insurance Co. v. Baum*, 159 Va. 404, 411, 413-414, 416, 165 S.E. 518, 520-522 (1932), the court noted:

> "The general rule, and the one supported by the better reasoned cases, is tersely stated by Judge Woods in Gilliland & Gaffney v. Southern Ry. Co., 85 S.C. 26, 67 S.E. 20, 24, 27 L. R. A.(N. S.) 1106, 137 Am.St. Rep. 861, thus:
>
> 'Those who install telephones in their places of business in connection with a telephone exchange, and use them for business purposes, impliedly invite the business world to use that means of communicating with them with respect to the business there carried on; and the presumption is that they authorize communications made over the telephone in ordinary business transactions.
>
> 'The testimony shows that this telephonic communication was made through the telephone maintained by W. M. Bott & Company at their place of business, hence identification of the person answering

---

[3]  As noted above, the reference made to *Zurich General Accident and Liability Insurance Co. v. Baum*, 159 Va. 404, 165 S.E. 518 (1932) in the "ADVISORY COMMITTEE NOTES" to Rule 901 of the Federal Rules of Evidence, indicate *Zurich* and the general rule cited therein form the basis of Rule 901.

was unnecessary for the admissibility of the evidence . . .'

. . .

"Judge Woods further stated in *Gilliland & Gaffney* v. *Southern Ry. Co., supra*, that the reason for the rule above stated regarding telephonic communications "* * * is the same as that for the presumption that a business letter, properly directed, and sent by mail reaches the business office of the addressee, and is opened by him or his authorized agent. The presumption that the person who answers is authorized to speak may be very slight, or strong, according to the circumstances, but the statements of such persons should be admitted in evidence as prima facie the statements of one having authority to speak.'

"There is a difference, however, between a telephonic communication and the mailing of a letter. In the latter case, a letter, properly addressed and stamped, is entrusted by the sender to an agency selected by him to make the delivery, and while it is unusual for such letters to go astray, all that the sender can know is that he entrusted the letter to the postal authorities for delivery, and whether it was delivered or not he has no means of knowing. When one person calls another on a business matter over a business telephone, he uses the instrumentality which the business man has invited him to use, and although he may not be able to identify the voice answering the 'phone, he knows that the message is delivered to some person, and the majority of the courts, knowing that a great many business communications are so made, indulge in two presumptions in order to supply the missing link. One is that the person answering is in the place of business called; the other is that such person is authorized to speak for the party called.

"The first presumption is based on the common knowledge that telephone connections are frequently made accurately; the other is based on the business man's invitation to the public to deal with him by this means and the necessity for having in his place of business a person authorized to receive such

25

> messages. Usually there are corroborating circumstances which strengthen the presumption . . .
>
> . . .
>
> "The admissibility of evidence is a legal question and one to be determined by the court; when admitted, its weight is usually for the jury to determine. The sufficiency of the evidence to support the allegation is also a question to be determined by the court. Here we have a positive affirmation that Louis Corleto dialed the phone number of W. M. Bott & Company; that an unidentified person answered the phone and a contract was entered into. On the other hand, we have a positive denial that any such telephone communication was received, plus the acts and undenied statements of the party calling which are entirely inconsistent with the result he now claims he obtained by use of the telephone."

See also *Benson v. Commonwealth*, 190 Va. 744, 751-752, 58 S.E.2d 312, 314-315 (1950), noting:

> "In *Zurich General Acci., etc., Ins. Co. v. Baum*, 159 Va. 404, 411, 165 S.E. 518, we held that testimony of a telephone conversation by a witness who communicated through the telephone maintained by a business office was admissible without any further identification of the person answering, where the conversation related to the transaction of business with the office . . .
>
> "[I]t is the general rule that in order to be admissible in evidence the identity of the person with whom the witness claims to have been speaking must be satisfactorily established. It is generally held that, where the witness had called a listed telephone number of such person and the person answering the telephone stated that he was the person whose telephone number was called, this is a sufficient identification to render the testimony admissible if the nature of the conversation was such as would ordinarily be expected with the party called. 31 C.J.S., Evidence, § section 188 . . .

26

> "A statement of his identity by the party called, standing alone, is not generally regarded as sufficient proof of such identity unless it is corroborated by other circumstances. 20 Am. Jur., Evidence, section 368; Anno. 71 A.L.R. 41.
>
> "The authorities seem to be uniform in the holding that, in order for such a conversation to be admissible by reason of the fact that the party called answered and stated that he was the party sought and entered into a conversation properly bearing on the subject matter discussed, it is first necessary that the identity of the telephone itself as the telephone of the other party must be established . . . ."

The subject conversation on the tape and transcript upon which Sever relies relates to business reasonably transacted over the telephone, thus the maintenance of the telephone connection is an invitation to do business without further identification, pursuant to Example (6) of the rule 901.

Moreover, it is respectfully submitted that the tape is self-authenticating/self-identifying for any or all of the reasons stated above. In further support of the forgoing, see also:

*United States* v. *Dhinsa,* 243 F.3d 635, 658 (2nd Cir. 2001), noting:

> "'A telephone conversation is admissible in evidence if the identity of the speaker is satisfactorily established.' *United States v. Albergo*, 539 F.2d 860, 863-64 (2d Cir. 1976)"; and

*O'Neal* v. *Morgan,* 637 F.2d 846, 850 (2nd Cir. 1980) noting:

> ". . . Under Rule 901(b)(6), circumstantial evidence, including self-identification, may be sufficient to identify the person who answers a telephone call. In this Circuit, self-identification of the person called at a place where he reasonably could be expected to be has long been regarded as sufficient. See *United States v. Markis*, 352 F.2d 860, 864 (2d Cir.

1965); *Van Riper v. United States*, 13 F.2d 961, 968 (2d Cir.), *cert. denied sub nom. Ackerson v. United States*, 273 U.S. 702, 47 S. Ct. 102, 71 L. Ed. 848 (1926)."

## Admissibility is a Question of Federal Law, Not State Law

As noted in *Leitman v. McAusland*, 934 F.2d 46, 50 (4th Cir. 1991):

> "**A state evidentiary rule**, such as that cited by appellants, **does not control admissibility of evidence in federal proceedings**. See, e.g., *United States v. Horton*, 601 F.2d 319 (7th Cir.), *cert. denied*, 444 U.S. 937, 100 S. Ct. 287, 62 L. Ed. 2d 197 (1979); *United States v. Keen*, 508 F.2d 986 (9th Cir. 1974), *cert. denied*, 421 U.S. 929, 95 S. Ct. 1655, 44 L. Ed. 2d 86 (1975). In a hearing before a federal agency, federal procedural law would apply. Under federal law, it was sufficient that one party to the conversation, in this case, the government's informant, knew that the conversation was being taped. 18 U.S.C.§ 2511(2)(c)."

The law of the Second Circuit is in agreement with the foregoing. In *Anonymous v. Anonymous*, 558 F.2d 677, 679 n.5, 7 (2nd Cir. 1977), Judge Milton Pollack of the United States District Court for the Southern District of New York, applied 18 U.S.C. § 2511 in a civil case and the Second Circuit stated:

> "5 . . . Such an interpretation would render the extension phone exemption meaningless, since interceptions which have the consent of one of the parties to the conversation are already explicitly exempted from coverage by the Act in 18 U.S.C. § 2511(2)(c) and (d) . . .
>
> . . .
>
> "7.   18 U.S.C. § 2511(2)(d) provides an explicit exemption for interceptions which are consented to by one of the parties to the intercepted conversation:
>> '(d) It shall not be unlawful under this chapter for a person not acting under

28

> color of law to intercept a wire or oral communication . . .where one of the parties to the communication has given prior consent to such interception . . . ."

A comparison of *Leitman* with *Anonymous* indicates that the Second and Fourth Circuits follow the same rule of law with regard to the federal law of interceptions.

Moreover, see *United States v. Sotomayor*, 592 F.2d 1219, 1223 (2nd Cir. 1979), wherein the court noted:

> "We are next confronted with the question whether the admissibility into evidence of the taped wiretaps in a federal prosecution is governed by state or federal law. Manifestly, if federal law is applicable the tapes were clearly admissible. There is an impressive line of authority to the effect that, in the area of search and seizure, it is **federal law which controls the admissibility of evidence in a federal trial, even where the evidence has been obtained by state officers who may have violated state law.**"
> (Numerous citations omitted.) (Bold emphases added.)

## The Tape is Not Privileged

Sever directs attention to this Court's "ENDORSEMENT denying [68-1] motion to Seal documents (signed by Senior Judge Alfred V. Covello ) (Blue,A.) (Entered: 07/03/2003)," attached to Docket Paper #80, entitled: "RULING denying [35-1] motion for Summary Judgment against Feldman on the Issue of Liability ( signed by Senior Judge Alfred V. Covello ) 2 Page(s) (Blue,A.) (Entered: 07/02/2003)."

In the forgoing Endorsement, the Court stated: "...A primary consideration in determining the application of attorney-client privilege to a

29

communication is whether the communication involved or sought legal advice for the client. The conversation at issue does not appear to involve or seek legal advice for Glickman or Delcath Systems, the clients. It arises from and involves Sever's ethical concerns regarding Feldman's action for filing a patent application without naming Sever as inventor. Sever arguably provides "advise" in the conversation, but he directs it towards Feldman with respect to Feldman's actions."

The Court correctly concludes: "...[T]hat the tape and its transcripts ***do not*** fall within the protection of the attorney client privilege."

Thus, the tape is not subject to attorney client privilege.

### The Transcript of the Tape is Admissible

In *United States* v. *Maxwell,* 383 F.2d 437, 442 (2nd Cir. 1967), the Court noted that:

> "At the voir dire, Maxwell objected to the admission of the transcript because the recording was made in violation of his right to counsel. He does not press this point on appeal . . . (citations omitted) What Maxwell does argue is that the accuracy of the transcript cannot be ascertained and that whether the transcript honestly reflects the tenor of the whole conversation cannot be determined...The deletion of the inaudible, irrelevant and repetitive portions of a tape, however, does not render it inadmissible. *United States v. Knohl,* 379 F.2d 427 (2d Cir. June 22, 1967) at 2602."

As noted above: The report of defendants' expert, OWL Investigation, Inc., (to the extent that Sever understands it), finds no apparent fault with that portion of the tape designated as Side A, Conversation #1:11'40" (e.g., that

30

portion of the tape spanning the times between 00'00" and 11'40"). It would seem to follow that alleged defects in other portions of the tape, e.g., portions of the tape upon which Sever does not rely in support of his claims, would not bear on **"whether the transcript honestly reflects the tenor of the whole conversation"** pursuant to *Maxwell* and *Knohl*.

## Conclusion

WHEREFORE, plaintiff, Frank Sever, Jr., respectfully requests that this Honorable Court deny Defendants' Motion in Limine to Exclude Alleged Tape Recording.

Respectfully submitted,

*/s/ Peter P. Mitrano*
Peter Paul Mitrano (admitted *pro hac vice*)
Ct. Fed. Bar No.: 23733
Suite 201
581 Boylston Street
Boston, Massachusetts  02116
(617) 236-5655

Local Connecticut Counsel:

Frank B. Velardi, Jr.
Ct. Fed. Bar No.: 07893
Lasala, Walsh, Wicklow & Velardi
168 Bradley Street
Post Office Box 1302
New Haven, Connecticut  06505-1302
(203) 785-8929
(203) 776-4663 (facsimile)

Attorneys for Plaintiff
Frank Sever, Jr.

Dated: March 1, 2004.

## Certificate of Service

I hereby certify that I caused a copy of the foregoing Plaintiff's Opposition to Defendants' Motion in Limine to Exclude Alleged Tape Recording and Request for Entry of an Order Adopting Defendants' Version of Transcript to be deposited with the United States Postal Service, postage prepaid for first-class mail, on this 1st day of March 2004 addressed to Joseph L. Clasen, Esquire and James M. Ruel, Esquire, Robinson & Cole LLP, Financial Centre, 695 East Main Street, Post Office Box 10305, Stamford, Connecticut 06904-2305.

_____
Peter Paul Mitrano