## The Two Sever Facsimiles

The device described in the first option disclosed in Sever's facsimiles (dated May 22, 1997 and May 30, 1997) which is the invention that is the subject of this lawsuit, is fashioned on a mechanical principle similar to that of a Chinese finger trap.  Simply stated, a length of surgical rubber hose is mounted within a telescoping structure comprising an inner rigid member and an outer rigid member.  One end of said hose is fixed to outer end of the inner rigid member and the other end of the hose is fixed to the outer end of the outer rigid member.  A catheter (or simply stated, a tube) is then passed through the length of surgical rubber hose.  When the rigid members are telescoped away from each other, the hose is stretched, its inner diameter decreased, thus impeding the lateral and/or rotational movement of the catheter.  When the rigid members are telescoped toward each other, the hose is relaxed, its inner diameter increased, thus enabling the lateral and/or rotational movement of the catheter.

Note that Sever has previously described the invention stated in the Tower patent as follows:

> "a [substantially fluid-tight] fluid receiving chamber (which comprises)
> an outer body member; and,
> [an inner body member consisting of:] a thin tubular film of elastic material; and,
> means for introducing a fluid into the fluid receiving chamber."

Simply stated, the Tower patent involves a chamber surrounding a tube wherein fluid is added to the chamber to cause pressure to be placed around

the circumference of the tube and thus impeding the lateral and/or rotational

movement of the catheter.  Sever described his second alternative as follows:

> "*sealed* chamber containing only a
> substantially *non-compressible fluid* (i.e., a
> liquid fluorocarbon), further comprising:
> an outer body member form of a
> flexible, but substantially non-stretchable
> material; and,
> an inner body member formed of a
> flexible and stretchable (?) material ; and,
> means for applying mechanical
> pressure to the outer surface of said outer
> body member a fluid into the fluid
> receiving chamber."

Simply stated, the second alternative stated in Sever's facsimiles is a

chamber that contains fluid surrounding a catheter or tube wherein

mechanical pressure is applied to said chamber.  One way to apply said

"mechanical pressure" is by placing a screw clamp around the chamber and

tightening said screw clamp thereby placing additional pressure the

circumference of the tube and thereby impeding the lateral and/or rotational

movement of the catheter.  Note that the difference between this second

alternative invention and the Tower patent is that whereas the Tower patent

adds fluid to the chamber, this invention applies squeezes the chamber.  All of

the inventions cause an impeding of the lateral and/or rotational movement of

the catheter by applying pressure and/or control around the catheter (or tube).

The various arguments raised by the defendants are confusing and

contradictory because there is no need to combine any of the inventions.  One

of the positions taken by the defendants is that the telescoping feature of the

invention (which is the invention that is the subject of this lawsuit) is combined

21

with the second alternative invention that could be operated with a screw clamp. Simply stated, there is no need to have more that one way to apply pressure around the tube or catheter.

Referring back to Feldman's request stated in Feldman's letter dated May 18, 1997, Sever analyzed the file wrapper of the Tower patent and formulated an opinion that Sever memorialized in at least two facsimiles. In the facsimiles, Sever proposed the two above-stated options to design around and avoid the claims of the Tower patent. As stated above, the first option was inspired by the Chinese finger trap mentioned above (the invention that is the subject of this lawsuit) which has the advantage of providing more control and lateral support of the catheter (or tube). Again, the second alternative was a variation on the Tower patent (which instead of adding fluid to the chamber around the tube) applies a mechanical pressure to the outside of the chamber (such as a screw clamp). Note that any reference to "Mort Glickman's Lateral Movement Controller" or even Glickman, for that matter, is conspicuously absent from Sever's facsimiles and Feldman's letter dated May 18, 1997. The defendants have not challenged the truth or accuracy of the facts disclosed in the Sever facsimiles dated May 22, 1997 and May 30, 1997.

By way of additional background, the concept of means plus function in the patent law refers to the broadest manner in which an element of an apparatus can be described or expressed or claimed. At the respective second pages of both of the facsimiles, Sever discloses:

> "The same functions could be achieved, while at
> the same time, eliminating the cumbersome "means

> for introducing a fluid" structure of Tower, by either of
> *at least* Two (2) design changes.  The first is the
> arrangement which includes the telescoping member,
> on which I have already drafted an application."

The function of controlling the lateral and rotational movement of a catheter in the first option is accomplished solely by the means of an arrangement that includes a telescoping member.[3]  As noted also in the respective second page both facsimiles, the second option Sever proposed was:

> ".  .  .The same functions could be achieved,
> while at the same time, eliminating the cumbersome
> "means for introducing a fluid" structure of Tower, by
> either of *at least* Two (2) design changes.  The first is
> the arrangement which includes the telescoping
> member, on which I have already drafted an
> application.  The second design proposal can be best
> illustrated by the following claim language:

> > a *sealed* chamber containing only a
> > substantially *non-compressible fluid* (i.e., a
> > liquid fluorocarbon), further comprising:
> >     an outer body member form of a
> > flexible, but substantially non-stretchable
> > material; and,
> > an inner body member formed of a flexible
> > and stretchable (?) material ; and,
> >     **means for applying mechanical**
> > **pressure** to the outer surface of said outer
> > body member a fluid into the fluid
> > receiving chamber.  (Bold emphasis
> > added.)

> "In the latter design, by merely applying
> pressure to the out surface of the outer body member,
> the same pressure would be transmitted through the

---

[3]    Significantly there is no mention of an incompressible fluid in regard to *the first option* in either of Sever's facsimiles.  The only reference to incompressible fluid is made solely in regard to the second option proposed in the facsimiles.  Thus, although the respective means are designed to perform the same function, they are separate and distinct from each other and constitute separate and distinct inventions.

> non-compressible fluid within the sealed chamber so as to compress the inner body member against the surface of the catheter sufficient to provide a blood tight seal and substantially restraining its movement relative to the sealed chamber."

Similar to the case of the first option (telescope), there is no reference in the second option (screw clamp) to the telescoping structure of the first option. Thus, although the respective means (telescope and screw clamp) are designed to perform the same function (squeeze the catheter or tube), they are separate and distinct from each other and constitute separate and distinct inventions. Stated otherwise, if the two separate means (telescope and screw clamp) were combined in the same invention, each would perform the same function (squeeze the catheter or tube). Each such means (telescope and screw clamp) would be redundant with respect to the other, adding additional structure to the invention without adding any addition function (squeeze the catheter or tube). Such a modification would not make sense from an inventor's prospective. Accordingly, the various allegations raised by the defendants are (when boiled down to their essence) nonsensical.

Thus, the analysis of the two inventions described in Sever's two facsimiles dated May 22, 1997 and May 30, 1997 clearly shows that the defendants have attempted to confuse matters through their arguments related to a combination a telescoping and non-compressible fluid invention. As previously stated, the defendants have failed to date to provide in discovery any patent applications that combine the features of the telescope and mechanical aspects in one invention.

## The Tape

The tape and transcript of the tape speak for themselves and are conclusive on the issue of liability.  See *Osborn* v. *United States*, 385 U.S. 323, 327 (1966), noting:

> "The proof against Chapoteau, both from his own tape-recorded admissions and from the testimony of others, conclusively established his involvement in the conspiracy."

The law in the Commonwealth of Virginia controls the legality of the interception of the taped conversation.   In a dissenting opinion in *Perry* v. *State*, 357 Md. 37, 741 A.2d 1162, 1196 (1999), Judge Cathell of the Maryland Court of Appeals summarized the majority trend of the legality of the law of telephone interceptions in his dissent stating in part that:

> "The majority trend among our sister states is 'the law that controls the legality of an interception is the law of the place wherein the interception takes place.' (Footnote omitted.)  *United States v. Gerena,* 667 F. Supp. 911, 913 (D. Conn. 1987) *(quoting United States v. Bennett,* 538 F. Supp. 1045, 1047 (D.P.R. 1982))  . . . ."

In New York, it is lawful to record a telephone conversation if one is a party to the conversation or has received the consent of a party to the communication. See *People* v. *Lasher*, 447 N.E.2d 70, 71 (N.Y. 1983).

## The Tape is Admissible

Federal law applies as to the issue of whether the tape is admissible into evidence.   See Title 18 of the United States Code, Section 2511(2)(d); *Anonymous* v. *Anonymous*, 558 F.2d 677, 679 n.5, 7 (2nd Cir. 1977); *Leitman*

v. *McAusland,* 934 F.2d 46, 50 (4th Cir. 1991); and, *United States* v. *Sotomayor,* 592 F.2d 1219, 1223 (2nd Cir. 1979).  The transcript of the tape conclusively establishes the words of the conversation between plaintiff Sever and defendant Feldman and is admissible into evidence.

## The Tape is Authentic

In the case of *United States* v. *Tropeano,* 252 F.3d 653, 661 (2nd Cir. 2001), the court stated in part that:

> ".   .   . In Barroso's case, the brokers who authenticated the tapes had firsthand knowledge of the conversations and each identified the voices on the tapes.

> ". . . *United States v. Fuentes*, 563 F.2d 527 (2d Cir. 1977).  In *Fuentes*, we upheld the admission of tapes as sufficiently authenticated by evidence of an unbroken chain of custody.  *See id.* at 532.  However, our upholding the authentication of tapes by establishing a chain of custody in the absence of testimony by a contemporaneous witness to the recorded conversations does not imply, as appellant suggests, that such a witness cannot provide equally sufficient authentication without proof of a chain of custody.  Indeed, appellant's position is contrary to the plain language of Rule 901.  See *United States v. Barone,* 913 F.2d 46, 49 (2d Cir. 1990) . . . *see also Pluta,* 176 F.3d at 49 ('The burden of authentication does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports   to   be.     Rather,   the   standard   for authentication, and hence for admissibility, is one of reasonable   likelihood.'   (quoting   *United   States   v. Holmquist,* 36 F.3d 154, 168 (1st Cir. 1994)) . . . ."

Also see *Ricketts* v. *City of Hartford,* 74 F.3d 1397, 1410-1411 (2nd Cir. 1996).

See also *United States* v. *Morrison,* 153 F.3d 34 (2nd Cir. 1998) and *United*

*States* v. *Ruggiero*, 928 F.2d 1289 (2nd Cir. 1991) in regard to the authentication of tape recordings as a condition precedent to admissibility in the Second Circuit.

## Elements of Fraud

For a discussion of the elements of fraud, see *Kline* v. *Taukpoint Realty Corporation*, 302 A.D.2d 433, 754 N.Y.S.2d 899, (2003).  The elements of common-law fraud are a representation of a material fact, falsity, scienter, reliance, and injury.  The substantive elements of a fraud claim under New York law are set forth in *Shea* v. *Hambros PLC*, 244 A.D.2d 39, 46, 673 N.Y.S.2d 369, 373 (1998).  In order to sustain a cause of action for fraudulent inducement, plaintiffs must show:

> "misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."

*Shea*, 244 A.D.2d at 46 (quoting *Lama Holding Co.* v. *Smith Barney*, 88 N.Y.2d 413, 421 (1996)) (other citations omitted))."  Also see *Elite Licensing, Inc.* v. *Thomas Plastics, Inc.*, 250 F.Supp.2d 372, 388-389 (2003), wherein the court stated in part that:

> "'Fraud in the procurement of a patent requires proof of the elements of fraud as developed in the common law: (1) that a false representation of a material fact was made; (2) with the intent to deceive; (3) which induced the deceived party to act in justifiable reliance on the misrepresentation; and (4) which caused injury that would not otherwise have occurred.'  *C.R. Bard, Inc.* v. *M3 Systems, Inc.*, 157

> F.3d 1340, 1364 (Fed.Cir.1998) (citations omitted).
> With respect to patent prosecution, 'fraud requires (1)
> a false representation or deliberate omission of a fact
> material to patentability; (2) made with the intent to
> deceive the patent examiner; (3) on which the
> examiner justifiably relied in granting the patent; and
> (4) but for which misrepresentation or deliberate
> omission the patent would not have been granted.' Id."

Note that unlike the other elements of fraud, damages need only be proven by a preponderance of the evidence. *Kilduff* v. *Adams, Inc.*, 219 Conn. 314, 330, 593 A.2d 478, 487 (1991). In *Salles* v. *Chase Manhattan Bank*, 300 A.D.2d 226, 228-229, 754 N.Y.S.2d 236, 239 (2002), the court stated:

> "The complaint alleges the necessary elements of
> a claim for common-law fraud: defendant's knowing
> misrepresentation of a material fact, made with intent
> to deceive, plaintiff's reasonable reliance, and damages
> (*Caniglia* v. *Chicago Tribune-New York News Syndicate,
> Inc.*, 204 A.D.2d 233, 234, 612 N.Y.S.2d 146)."

To prove common law fraud, nine elements must be established: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the information should be acted upon by the hearer and in a manner reasonably contemplated, (6) the hearer's ignorance of the information's falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury. *Burkons* v. *Ticor Title Ins. Co. of Cal.*, 165 Ariz. 299, 308, 798 P.2d 1308, 1317 (App. 1989).

Also see *Maturo* v. *Gerard*, 196 Conn. 584, 587, 494 A.2d 1199, 1201 (1985), wherein the court stated:

> "The essential elements of an action in fraud, as

> we repeatedly held are: (1) that a false representation
> was made as a statement of fact; (2) it was untrue and
> known to be untrue by the party making it; (3) that it
> was made to induce the other party to act on it; and
> (4) that the latter did so act on it to his injury. *Paiva v.*
> *Vanech Heights Construction Co.*, 159 Conn. 512, 515,
> 271 A.2d 69 (1970) . . . ." (Other citations omitted.)

See also *Roger* v. *Roger*, 203 N.Y.S.2d 576, 578 (1960), noting that: "A case of

fraud, however, though not precisely definable, is still based upon

misrepresentation, scienter, reliance and change of position, and each of these

elements must be shown". Also see *Century 21* v. *F.W. Woolworth Co.*, 181

A.D.2d 620, 625, 582 N.Y.S.2d 101, 104 (1992), noting that: "The essential

elements of an action for fraudulent inducement are the representation of a

material existing fact, falsity, scienter, deception and injury." Also see *Carpet*

*Seaming Tape Licensing Corp.* v. *Best Seam Inc.*, 616 F.2d 1133, 1139 n.4 (9th

Cir. 1980), noting that: "The court in *Norton v. Curtiss*, 433 F.2d 779, 795-96,

57 CCPA 1384 (1970), noted: 'The state of mind of the one making the

representations is probably the most important of the elements to be

considered in determining the existence of 'fraud'." Also see *Rohm and Haas*

*Co.* v. *Crystal Chemical Co.*, 722 F.2d 1556, 1571 (Fed. Cir. 1983), noting that:

"The intent element * * * may be proven by a showing of acts the natural

consequences of which are presumably intended by the actor.' *Kansas Jack,*

*Inc. v. Kuhn*, 719 F.2d 1144 at 1151 (Fed.Cir.1983)." In *New York City Transit*

*Authority* v. *Eisen*, 76 A.D.2d 78, 85, 715 N.Y.S.2d 232, 237 (2000) the court

stated in part that:

> ". . . An actionable fraud claim requires proof

that defendant made a misrepresentation of fact which was false and known to be false. It also requires a showing that the misrepresentation was made with the intent to induce another party's reliance upon it."

Also see *Shultis* v. *Reichel-Shultis*, 768 N.Y.S.2d 38, 39 (2003) wherein the court stated in part that:

". . . As with any fraud claim though, the proponent must establish '(1) misrepresentation of a material fact, (2) scienter, (3) justifiable reliance, and (4) injury or damages' (*Rosario-Suarz v. Wormuth Bros. Foundry*, 233 AD2d 575, 578 [1996]; *see Sherman v. Eisenberg*, 267 AD2d 29, 31, 699 N.Y.S.2d 371 [1999], *lv. dismissed* 94 N.Y.2d 899, 707 N.Y.S.2d 144, 728 N.E.2d 340 [2000])."

In *Kaufman* v. *Cohen*, 307 A.D.2d 113, 119, 760 N.Y.S.2d 157, 165 (2003), the court stated in part that:

". . . To state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury (*see Monaco v. New York Univ. Med. Ctr.*, 213 A.D.2d 167, 169, *lv. denied* 86 NY2d 882; *Callas v. Eisenberg*, 192 A.D.2d 349, 350 [1993])."

## The Elements of Fraud are Inferred From Feldman Transcript

Feldman made an affirmative misrepresentation to Sever during their taped telephone conversation. See Feldman transcript:

SEVER: **-- when I said well, maybe all, all -- you know, you said well they're not interested in it. And I said well, maybe I should file on it. And you went ah -- you said well, no you'll get me in trouble.** See, here's what the situation is in a nutshell, Steve. When you file -- when you file a patent application you

30

have to disclose who the inventors are, and, if, if you don't, you're tampering with some pretty, pretty heavy stuff. You know you can't be -- you know, it's like filing a false affidavit or a false oath.

SEVER: **Yes. Absolutely.** That, that scares the shit out of me, Steve, because I don't want to get involved in anything unethical...

FELDMAN: Yeah, but what I did with those patents, I convinced the client that he was the inventor. **Now, if you don't want me to file on that one with your name.**

SEVER: **I would prefer that you didn't.**

FELDMAN: [undiscernable]

SEVER: **I would prefer you didn't, because I just feel uncomfortable about it.**

SEVER: Well, that's, **that's what's been bothering me,** ah, you know, these – this couple of weeks.

FELDMAN: Frank, let me, let me just tell you.

SEVER: Yeah.

FELDMAN: -- if that was the reason you weren't doing work for me and that was the reason you weren't returning my calls –

SEVER: Well, well. that is, that is because --

FELDMAN: Well **why didn't you tell me that?**

SEVER: **I'm telling you now,** Steve, because --...

31

SEVER:  **I thought that that one died on the vine. You know that's my understanding of it.** But, you know, be that as it may, you know, **I don't want to do this anymore,** ah, you know, **I don't want to do any more inventing,** you know cause I, -- you know, **I just don't feel comfortable with that.**

FELDMAN: **Okay, let me just tell you, --**

SEVER:  Right.

FELDMAN: **-- I will work that out.**

SEVER:  **Okay, well, that's all, that's all I wanted to hear from you."** (Bold emphasis added.)

Feldman's final statement "I will work that out..." in light of the disclosure "when I said well, maybe all, all -- you know, you said well they're not interested in it. And I said well, maybe I should file on it. And you went ah -- you said well, no you'll get me in trouble..." constitutes an affirmative misrepresentation of material fact by which he intended to deceive Sever in forbearing to file a patent application in his own name. Thereafter, on or about September 2, 1997, Feldman with knowledge that Sever was the true and sole inventor of the subject invention, as Glickman's agent, acting with full authority in the course of that agency nonetheless filed an patent application identifying Glickman as sole inventor. See United States Patent Number 5,897,533.

Thus, after Sever's protestations, Feldman advised Sever that he would not file a patent application on the invention. However, despite knowing and

acknowledging that Sever was the sole and true inventor, Feldman, again as Glickman's agent, acting with full authority in the course of that agency, nonetheless filed a patent application on the invention, that falsely and fraudulently identified Glickman as the inventor of the invention.

## Feldman's Fraud is Imputed to Glickman

In *Tree Plateau Co.* v. *Mount Vernon Mills*, 242 N.Y.S.2d 286, 39 Misc. 2d 1017 (1963), the court stated: "The Restatement of Agency (§ 274) states the general rule that knowledge of an agent is imputed to his principal." Also see *City of West Haven* v. *U. S. Fidelity & Guaranty Co.*, 174 Conn. 392, 395, 389 A.2d 741, 744 (1978), wherein the court stated in part that:

> ".  .  . It is the general rule, settled by an unbroken current of authority, that notice to, or knowledge of, an agent while acting within the scope of his authority and in reference to a matter over which his authority extends, is notice to, or knowledge of, the principal.' 2 Mechem on Agency (2d Ed.) § 1803."

As a general rule a principal is chargeable with the knowledge or notice to the agent received while the agent is acting within the scope of his authority. (3 Am. Jur. 2d, Agency, § 273; 2 N. Y. Jur., Agency, § 259.)"; *Lane* v. *United Electric Light & Water Co.*, 88 Conn. 670, 674, 92 A. 430 (1914); *Reardon* v. *Mutual Life Ins. Co.*, 138 Conn. 510, 516, 86 A.2d 570 (1952); *Reynolds* v. *Snow*, 197 N.Y.S.2d 590; 10 A.D.2d 101, (1960) "Generally, an agent's knowledge, and even fraud, is imputed to his principal (*Henry v. Allen*, 151 N. Y. 1; *Raines* v. *Moran*, 57 N. Y. S. 2d 800, 807, affd. 270 App. Div. 979; Restatement, Agency 2d, §§ 263, 272, 274; 2 Pomeroy, Equity Juris. [5th ed.],

§§ 666-667; 3 C. J. S., Agency, § 262 et seq.; 2 N Y Jur. Agency, § 259 et seq.). At least such knowledge is imputed so long as the agent is not acting antagonistically to the interest of his principal (*Henry v. Allen, supra; Connecticut Fire Ins. Co. v. Commercial Nat. Bank*, 87 F. 2d 968; Restatement, Agency 2d, § 282; 3 C. J. S., Agency, § 269; 2 N. Y. Jur., Agency, § 268).''; *Smalls v. Reliable Auto Service*, 612 N.Y.S.2d 674 (1994) "A principal is bound by notice to or knowledge of his or her agent in all matters within the scope of the agency, notwithstanding the fact that such information is never actually communicated to the principal (see, *Farr v. Newman*, 14 N.Y.2d 183, 187, 250 N.Y.S.2d 272, 199 N.E.2d 369; see also, *Center v. Hampton Affiliates*, 66 N.Y.2d 782, 784; *Henry v. Allen*, 151 NY 1, 9, 45 N.E. 355; *Holyoke Mut. Ins. Co. v. B.T.B. Realty Corp., supra*, at 605; see generally, Restatement [Second] of Agency § 272, at 591). *Fulwiler v. Peters*, 20 S.E.2d 500, 179 Va. 769 (1942), "The general rule is that knowledge of the agent is imputed to the principal...*Allen Realty Corp. v. Holbert*, 318 S.E.2d 592, 227 Va. 441 (1984), As a general rule, the knowledge of an agent is imputed to his principal. *Fulwiler v. Peters*, 179 Va. 769, 776, 20 S.E.2d 500, 502 (1942)..."; Yamada v. McLeod, 416 S.E.2d 222, 243 Va. 426 (1992), "...Allen Realty Corp. v. Holbert, 227 Va. 441, 446, 318 S.E.2d 592, 594 (1984) (generally, knowledge of agent imputed to principal); *Minneapolis, St. P. & S. Ste. M. R.R. v. St. Paul Mercury-Indemnity Co.*, 268 Minn. 390, 405, 129 N.W.2d 777, 787 (1964) (knowledge of attorney imputed to client).; *Plummer v. Center Psychiatrists, Ltd.*, 252 Va. 233, 476 S.E.2d 172 (1996), "In *Commercial Business Systems*, we noted that 'in

determining whether an agent's tortious act is imputed to the principal, the doctrine's primary focus is on whether the activity that gave rise to the tortious act was within or without the agent's scope of employment.' Id. at 44, 453 S.E.2d at 265... The test of liability is not the motive of the employee in committing the act complained of, but whether that act was within the scope of the duties of employment and in the execution of the service for which he was engaged."; *Commercial Business Systems Inc.* v. *Bellsouth Services Inc.*, 249 Va. 39, 453 S.E.2d 261 (1995), "In determining whether an agent's tortious act is imputed to the principal, the doctrine's primary focus is on whether the activity that gave rise to the tortious act was within or without the agent's scope of employment. See, e.g., *Tri-State Coach Corp.*, 188 Va. at 305-06, 49 S.E.2d at 366; *Davis v. Merrill*, 133 Va. 69, 77-78, 112 S.E. 628, 631 (1922); *Henry Myers & Co. v. Lewis*, 121 Va. 50, 71, 92 S.E. 988, 994-95 (1917)."; *Veal v. Geraci*, 23 F.3d 722 (2nd Cir. 1994), "In general, when an agent is employed to represent a principal with respect to a given matter and acquires knowledge material to that representation, for purposes of assessing the principal's rights and liabilities vis-a-vis a third person the agent's knowledge is imputed to the principal. See generally Restatement (Second) of Agency §§ 9(3), 268, 272, 275 (1958). Though perhaps most often relevant in assessing a principal's liability, see id. § 9(3) comment h, §§ 268, 272, 275, this rule has general application: *Infant C. v. Boy Scouts of America Inc.*, 239 Va. 572, 391 S.E.2d 322 (1990)"; *National Petrochemical Co. v. Sheaf*, 930 F.2d 240 (2nd Cir. 1991); *Dawn Donut Co. v. Hart's Food Stores Inc.*, 267 F.2d 358 (2nd Cir. 1959), "In order to impute

35

an agent's knowledge to a principal in a particular transaction, it must be shown that the agent at some time had some duties to perform on behalf of the principal with respect to the transaction, although the agent need not have acquired his knowledge in connection with those duties. Restatement of Agency 2d, § 272 and appendix to § 272 at p. 450."; *Apollo Fuel Oil* v. *United States of America*, 195 F.3d 74 (2nd Cir. 1999), "In general, when an agent is employed to perform certain duties for his principal and acquires knowledge material to those duties, the agent's knowledge is imputed to the principal. See, e.g., Restatement (Second) of Agency §§ 9(3), 268, 272, 275 (1958).; *Escalera* v. *Coombe*, 852 F.2d 45 (2nd Cir. 1988); *Securities and Exchange Commission* v. *McNulty*, 137 F.3d 732 (2d Cir. 1998); "Normally, the conduct of an attorney is imputed to his client, for allowing a party to evade 'the consequences of the acts or omissions of [ ]his freely selected agent' 'would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent.' *Link* v. *Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962)."; *Pennsylvania Casualty Co.* v. *Simopoulos*, 235 Va. 460, 369 S.E.2d 166 (1988); "[I]mputed knowledge" in this context means knowledge charged to the principal because received by the agent in the scope of employment."; *Glaxo Inc.* v. *Novopharm Ltd.*, 52 F.3d 1043 (Fed. Cir. 1995), Restatement (Second) of Agency, § 261 (principal liable for agent's fraud within scope of agency), § 274 (knowledge of agent acquiring property for principal imputed to principal); see also *American Soc. of Mechanical Engineers, Inc.* v. *Hydrolevel Corp.*, 456 U.S. 556 (1982).

Accordingly, Sever contends that Sever is entitled to judgment on the issue of liability against Glickman for fraud, as a matter of law. As this Court is aware, the elements of fraud are "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." See *Barbara Weisman, Trustee* v. *Kaspar*, 233 Conn. 531, 539, 661 A.2d 530 (1995); *Suffield Development Assoc. v. National Loan Investors*, No. SC 16586, Conn.   (July 9, 2002).

In summary, the material facts that are not in genuine dispute that are supported by the tape recording are:

1.   Feldman, as Glickman's agent, acting with full authority in the course of that agency, falsely represented that certain parties were not interested in the subject invention; falsely represented that Glickman was the inventor of the subject invention; falsely represented that he (Feldman) would not file a patent application for the subject invention; falsely represented that he (Feldman) would work out the problems associated with the subject invention.

2.   Glickman knew that Feldman's statements were untrue statements and authorized them.

3. Glickman knew that Feldman made the untrue statements to induce Sever to act upon them, namely, in the very least that Sever not take any action related to the subject invention.

4. Sever did act upon the untrue statements to his injury, namely, in the very least that Sever has lost the right to obtain a patent from the United States Patent and Trademark Office for the subject invention.

5. Gilckman signed his signature to a declaration that that falsely declared that he was the true, correct, and sole inventor of the subject invention.

6. Glickman caused the declaration to be appended to a copy of the patent application of the subject invention along with all other papers providing a document sufficient to enable it to be filed with the United States Patent and Trademark Office.

7. Glickman caused the document to be filed with the United States Patent and Trademark Office.

8. The document subsequently issued as United States Patent 5,897,533.

The Court should grant Sever summary judgment. More disturbing than the above is the fact that Feldman admitted that the facts in this action are a prior

course of conduct for him.  Feldman has admitted that he previously has had

other clients lie about inventions:

"Feldman:   -- they [my clients] have two basic patents;
. . . **they're mine!**

"Feldman:   Yeah, but what I did with those patents, I
convinced the client he was the inventor.
Now if you don't want me to file on that
one with your name."   (Bold emphasis
added.)

## Conclusion

WHEREFORE, plaintiff, Frank Sever, Jr., respectfully requests that this

Honorable Court grant Plaintiff's Motion for Summary Judgment Against

Defendant Glickman on the Issue of Liability and find that Frank Sever, Jr., is

entitled to judgment as a matter of law on his claims against defendant

Glickman and in the alternative, grant plaintiff's request under Rule 56(d) for a

ruling that the material facts stated herein are deemed established upon the

trial.

Respectfully submitted,

Peter Paul Mitrano (admitted *pro hac vice*)
Ct. Fed. Bar No.: 23733
Suite 201
581 Boylston Street
Boston, Massachusetts  02116
(617) 236-5655

Local Connecticut Counsel:

39

Frank B. Velardi, Jr.
Ct. Fed. Bar No.: 07893
Lasala, Walsh, Wicklow & Velardi
168 Bradley Street
Post Office Box 1302
New Haven, Connecticut  06505-1302
(203) 785-8929
(203) 776-4663 (facsimile)

Attorneys for Plaintiff
Frank Sever, Jr.

Dated: March 4, 2004.