# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT
### Hartford

FILED
2004 MAR -8  P 12: 14
U.S. DISTRICT COURT
HARTFORD, CT.

| | |
|---|---|
| FRANK SEVER, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.   3:02cv722 (AVC) |
| ) | |
| MORTON G. GLICKMAN, et al., ) | Date of this Pleading: March 4, 2004 |
| ) | |
| Defendants. ) | |

**Plaintiff's Local Rule 56(a)(1) Statement of Material Facts as to Which There are no Genuine Issues to be Tried Warranting a Grant of Summary Judgment in Plaintiff's Favor**

   1.   Sever caused a telephone call to be made to Feldman on or about July or August 1997. The pertinent part of the telephone conversation as transcribed under the direction of Feldman as quoted from expert report of Tom Owen of Owl Investigations dated August 13, 2003 includes a section wherein the page marked page number "1" is entitled "Transcript Produced by Transcription Service" and states as follows:

> "PARSLEY ASSOCIATES INC
> 328 Flatbush Avenue, Suite 251
> Brooklyn, NY  11238
> (718) 789-0620"

The next pages marked page "2" through and including the page marked page "7" state the following:

> "ATTORNEY/CLIENT PRIVILEGED

1

## "THE REFERENCES MARKED FELDMAN ARE ALLEGED TO BE STEPHEN FELDMAN

"(recording begins)

"(sound of dialing numbers, phone rings)

"F VOICE:   Mr. Feldman's office.

SEVER:     Yes, is ah Steve there?

F VOICE:   Who's calling?

SEVER:     Frank Sever?

F VOICE:   One moment.

   (pause)

FELDMAN:   Hi, big Frank.

SEVER:     How you doing Steve?

FELDMAN:   Okay, I know you've been hiding from me because, ah I was thinking it was bad breath.

SEVER:     Yeah.

FELDMAN:   Is that true?

SEVER:     No, Steve, its something a little bit more than that.

FELDMAN:   What?

SEVER:     And that's -- that's these ah, these, Delcath ah, ah catheter patents. And ah, . I'm,/I'm a little gun shy about this, Steve. Because I think of at the very least if, if I did the inventing on these things then -- and your filing -- and your filing a declaration or an oath on these things saying that somebody else has done it, then, then that's unethical at the very

2

                least. And, and, and I don't do unethical things.

FELDMAN: Yeah.

SEVER: And, I'm getting a little god damn gun shy about this.

FELDMAN: Well, which one are you talking about?

SEVER: I'm talking about the, ah, the last one in particular that you asked for the drawings on, which, which – ah, which I thought died on the vine? The one ah, the telescoping ah, ah, frame or the telescoping tube catheter. Do you know that -- do you know which one I'm talking about?

FELDMAN: Yeah, you wrote that -- you charged me for that, Frank.

SEVER: Well, ah, ah, ah -- yeah but but ah Steve, (laugh) you don't understand. What we're -- what we're doing here -- you know, we had this discussion I guess about two or three months ago or a couple of months ago when the, when the situation first arose. I said I don't feel comfortable, ah, ah, ah being the inventor on these things. And do you remember? You remember --

FELDMAN: Sure.

SEVER: -- when I said well, maybe all, all -- you know, you said well they're not interested in it. And I said well, maybe I should file on it. And you went ah -- you said well, no you'll get me in trouble. See, here's what the situation is in a nutshell, Steve. When you file -- when you file a patent application you have to disclose who the inventors are, and, and, if if you don't, you're tampering with some pretty, pretty heavy stuff. You know you can't be -- you

3

know, it's like filing a false affidavit or a false oath.

FELDMAN: Well, would you feel more comfortable if we don't file that one?

SEVER: Yes. Absolutely. That, that scares the shit out of me, Steve, because I don't want to get involved in anything unethical.

FELDMAN: Well, --

SEVER: And that's basically the bottom line.

FELDMAN: Okay. Well, why didn't you mention this to me a long long time ago?

SEVER: Well, --

FELDMAN: Because if you had I would have said let's forget about that one and ended it at that.

SEVER: Okay.

FELDMAN: You see, you put me in a little bit of a bind here.

SEVER: Yeah, but the point, the point being, Steve is that I thought that it did die on the vine, and now you're, you're resurrecting it.

FELDMAN: No, no, no. It never died on the vine. See look, --

SEVER: Yeah.

FELDMAN: Let me -- I've been in this game a little longer than you. You've been at the patent office.

SEVER: Yes. Yes, you have.

FELDMAN: And -- hold on a second. (away from phone) *Who is that? Is that Tom Conrad? Yeah, tell him to come on in.*

4

SEVER: Ah, do you understand what my problem is?

FELDMAN: Frank. [indiscernible] --

SEVER: I don't want to act unethically at all.

FELDMAN: Frank, let me just tell you what the bottom line is.

SEVER: Okay.

FELDMAN: Over the years -- now, I'm going to tell you something between the two of us, --

SEVER: Alright.

FELDMAN: -- and I know it's the same with every. every patent attorney [indiscernible] really, you know, lays it on you correctly. And I know I'm not being recorded and I know it's not going any further --

SEVER: No..

FELDMAN: -- than this conversation, but every patent attorney in practice has invented either entire patent applications [indiscernible]

SEVER: And I, and I know what you're saying, Steve, I know exactly what you're saying. But, but there --

FELDMAN: And I'll tell you one quick thing.

SEVER: Yeah.

FELDMAN: With one of my clients. I no longer represent him, but that was simply because they weren't paying my bills, --

SEVER: Yeah.

FELDMAN: -- they have two basic patents; they're mine.

5

SEVER: Well, yeah, but the point is, the point is if you file on that god damn oath -- you know, the chances of of this ever coming to court are one in a billion, right. But god damn, you know --

FELDMAN: Yeah, but what I did with those patents, I convinced the client that he was the inventor. Now, if you don't want me to file on that one with *your name*[1]--(italicize emphasis added)

SEVER: I would prefer that you didn't.

FELDMAN: [indiscernible]

SEVER: I would prefer you didn't, because I just feel uncomfortable about it.

FELDMAN: But, you understand that --

SEVER: You see, and I was, I was a little gun shy about that slidable balloon. You know, that -- you know, that's going over the line, Steve, and, I don't do things that are unethical. Have you ever had a bar complaint filed against you?

FELDMAN: Yeah.

SEVER: I had one filed by my ex-wife, and they're very unpleasant things. You know, you're -- you know you're guilty before, ah, you know.

FELDMAN: No, the woman who filed one against me was crazy and they saw through it.

SEVER: Um.

FELDMAN: And they dismissed it out of hand.

SEVER: Well, that's, that's what's been bothering me, ah, you know, these – this couple of weeks.

---

[1] Instead of hearing "your name", Sever hears the tape to read:

"FELDMAN: Yeah, but what I did with those patents, I convinced the client that he was the inventor. Now, if you don't want me to file on that one with *the thing*."

7

FELDMAN: Frank, let me, let me just tell you --

SEVER: Yeah.

FELDMAN: -- if that was the reason you weren't doing work for me and that was the reason you weren't returning my calls --

SEVER: Well, that is. That is, because --

FELDMAN: Well, why didn't you tell me that?

SEVER: Well, I'm telling you now, Steve, because --

FELDMAN: Yeah, but we're big boys. You see, you can't let me run with the ball and do things and then get into trouble. You got to say it to me at the start –

SEVER: Well, yeah, but you see, that -- I thought this was settled, particularly with that, with that telescoping one, that, that this was settled right off the bat, that, they're not interested. And you didn't pay me for that one, as a matter of fact. (laughs)

FELDMAN: I didn't?

SEVER: I thought that one died on the vine. You know that's my understanding of it. But, you know, be that as it may, you know, I don't want to do this any more, ah, you know, I don't want to do any more inventing, you know, cause I, -- you know, I just don't feel comfortable with that.

FELDMAN: Well did, did I do it at the start or did you do it?

SEVER: Do what?

FELDMAN: Did the inventing. You called me up and you say hey, I have a great idea. (laughs)

SEVER: Yeah, well, I said, I said well, there's -- you know, ah, ah, you sent me a letter –

8

> FELDMAN: Yeah.
>
> SEVER: -- saying, you know, get around this patent, and I (laughs)
>
> FELDMAN: You didn't understand what I wanted.
>
> SEVER: And I didn't understand what you wanted, you know. And I'm saying, you know, you can't, you can't just merely amend around this patent. You gotta, you know, you gotta make a difference in kind.
>
> FELDMAN: Okay, let me just tell you, --
>
> SEVER: Right.
>
> FELDMAN: -- I will work that out.
>
> SEVER: Okay, well, that's all, that's all I wanted to hear from you.
>
> FELDMAN: But why don't you do this, in the future, if you have any problems --
>
> SEVER: Okay. Okay.
>
> FELDMAN: -- pick up the phone –
>
> SEVER: I will call. I will communicate with you.
>
> FELDMAN: I'm a big boy
>
> SEVER: Okay. Super. Super.
>
> FELDMAN: You can tell me. Um, now, on this patent, fluoride solution ampule for treating dental implants, -
>
> SEVER: Right."

The remainder of the conversation dealt with other matters. Note on the left hand margin there is written in pencil "7:40" just before "FELDMAN: I'm a big

boy". Thus, the relevant portion of said telephone conversation ended just after "7:40".

Sever hereby stipulates that the above-quoted portion of the transcript from the expert report of Tom Owen of Owl Investigations dated August 13, 2003 is a correct version of the taped conversation. In other words, Sever hereby accepts said above-quoted portion of the transcript from the expert report of Tom Owen of Owl Investigations dated August 13, 2003 as binding upon Sever for all purposes.

    2.    On or about May 18, 1997, Feldman sent a letter to Sever which stated:

"May 18, 1997

"Mr. Frank Sever
2220 North Columbus Street
Arlington, Virginia  22207

    Re:    U.S. Patent 5,161,773
           (tower)

"Dear Frank,

"I have enclosed the file wrapper for the above patent.

"Kindly call me about preparing an opinion for Delcath on designing around and avoiding the claims of the patent.

    Very truly yours,

    /s/
    Stephen E. Feldman

"SEF:ics
Enclosure"

Note that the above-quoted letter dated May 18, 1977 was not produced in discovery until November 24, 2003 from defendants' counsel even though said letter dated May 18, 1977 was requested by Sever in discovery in July 2002.

3. In a document that defendants' counsel did not produce until August 22, 2003 (over a year after Sever had requested the same and after Sever had filed two motions to compel), it is in stated part that:

> "FAX TRANSMISSION
> FRANK SEVER, JR., PLC . . .
>
> To:     Mr. Steve Feldman, Esq.   Date: 05/22/97
>
> From:     Frank Sever, Jr.
> Subject:  Avoiding U.S. Patent 5,161,773, to Tower
>
> COMMENTS:
>
> Dear Steve:
>
> Pursuant to your request, please accept the following as my analysis of the Tower Patent (U.S. Patent 5,161,773).
>
> "CHANGES IN BASIC DESIGN
>
> "The Tower invention is directed to Two (2) basic functions: (1) selectively forming a blood tight seal between the introducer sheath and the outer surface of the catheter; and, (2) selectively restricting the parallel movement of the catheter with respect to the fluid receiving chamber and introducing sheath. The same functions could be achieved, while at the same time, eliminating the cumbersome 'means for introducing a fluid' structure of Tower, by either of *at least* Two (2) design changes. The first is the

11

arrangement which includes the telescoping member, on which I have already drafted an application. The second design proposal can be best be illustrated by the following claim language:

> *sealed* chamber containing only a substantially *non-compressible fluid* (i.e., a liquid fluorocarbon), further comprising:
> an outer body member form of a flexible, but substantially non-stretchable material; and,
> an inner body member formed of a flexible and stretchable (?) material ; and,
> means for applying mechanical pressure to the outer surface of said outer body member a fluid into the fluid receiving chamber.

"In the latter design, by merely applying pressure to the out surface of the outer body member, the same pressure would be transmitted through the non-compressible fluid within the sealed chamber so as to compress the inner body member against the surface of the catheter sufficient to provide a blood tight seal and substantially restraining its movement relative to the sealed chamber.

"Although I could probably think of other design changes, the two which I have so far offered would seem to be the best."

4.  In a document that defendants' counsel did not produce until August 22, 2003 (over a year after Sever had requested the same and after Sever had filed two motions to compel), it is in stated part that:

> "FAX TRANSMISSION
> FRANK SEVER, JR., PLC . . .
>
> To:       Mr. Steve Feldman, Esq.   Date: 05/30/97
>
> . . .
>
> From:    Frank Sever, Jr.

Subject:   Opinion in attempting to avoid U.S. Patent 5,161,773, to Tower

COMMENTS:

Dear Steve:

Pursuant to your second request, please accept the following as my analysis of the *prior art* which was applied against the Tower Patent (U.S. Patent 5,161,773) . . . ."

"As I further indicated in my prior FAX, the Tower invention is directed to Two (2) basic functions: (1) selectively forming a blood tight seal between the introducer sheath and the outer surface of the catheter; and, (2) selectively restricting the parallel movement of the catheter with respect to the fluid receiving chamber and introducing sheath. The same functions could be achieved, while at the same time, eliminating the cumbersome 'means for introducing a fluid' structure of Tower, by either of *at least* Two (2) design changes. The first is the arrangement which includes the telescoping member, on which I have already drafted an application. The second design proposal can be best be illustrated by the following claim language:

> *sealed* chamber containing only a substantially *non-compressible fluid* (i.e., a liquid fluorocarbon), further comprising:
> an outer body member form of a flexible, but substantially non-stretchable material; and,
> an inner body member formed of a flexible and stretchable (?) material ; and,
> means for applying mechanical pressure to the outer surface of said outer body member a fluid into the fluid receiving chamber.

"In the latter design, by merely applying pressure to the out surface of the outer body member, the same pressure would be transmitted through the non-compressible fluid within the sealed chamber so as to

13

compress the inner body member against the surface of the catheter sufficient to provide a blood tight seal and substantially restraining its movement relative to the sealed chamber.

"Although I could probably think of other design changes, the two which I have so far offered would seem to be the best."

5.   In a document that defendants' counsel did not produce until July 28, 2003 (over a year after Sever had requested the same and after Sever had filed two motions to compel), it is stated:

"FAX TRANSMISSION
FRANK SEVER, JR., PLC . . .

To: Mr. Steve Feldman, Esq.   Date: July 15, 1997. . .

Subject:   Figs. 1-6 of Catheter Flow And Lateral Movement Controller

COMMENTS:

Steve:

Please find attached the drawings you requested.
Respectfully,
Frank"

6.   On August 29, 1997, Feldman signed a "Patent Application Transmittal Letter" that was submitted to the United States Patent and Trademark Office together with an enclosed "Declaration and Power of Attorney for Patent Application" signed by Glickman on August 7, 1997 in which Glickman lied by stating that Glickman was the inventor of the subject invention together with a "Verified Statement (Declaration) Claiming Small Entity Status (37 CFR 1.9(f) and 1.27 (c)) – Small Business Concern" signed by

14

Delcath on July 21, 1997. Note also that the documents referred to in this paragraph were also documents that defendants' counsel did not produce until July 28, 2003 (over a year after Sever had requested the same and after Sever had filed two motions to compel).

7. On March 31, 2000, Feldman requested patent counsel in the Republic of Germany to proceed to obtain patents for the subject invention in the Countries and/or Republics of Austria, Belgium, Switzerland, Germany, Denmark, Spain, France, United Kingdom, Greece, Ireland, Italy, Luxembourg, Monaco, Netherlands, Portugal, Sweden and Finland. Note also that the document referred to in this paragraph was also a document that defendants' counsel did not produce until July 28, 2003 (over a year after Sever had requested the same and after Sever had filed two motions to compel).

8. The telephone records (page 9) provided by Feldman list a telephone call that was made from a telephone number (212) 532-3064 [New York, New York] to a telephone number (703) 525-7499 [Arlington, Virginia] on July 21, 1997 at 7:47 P.M. that had a duration of 17.2 minutes. There is another record on page 13 of said telephone records made to (703) 525-7486 [Arlington, Virginia] from New York, New York on the 22nd day of a month; however, the other information about said telephone call is not readable. All other telephone calls on both sheets of telephone records have been unilaterally redacted without the permission of Sever. Note also that the document referred to in this paragraph was also a document that defendants'

counsel did not produce until July 28, 2003 (over a year after Sever had requested the same and after Sever had filed two motions to compel).

                                  Respectfully submitted,

---

Peter Paul Mitrano (admitted *pro hac vice*)
Ct. Fed. Bar No.: 23733
Suite 201
581 Boylston Street
Boston, Massachusetts 02116
(617) 236-5655

Local Connecticut Counsel:

---

Frank B. Velardi, Jr.
Ct. Fed. Bar No.: 07893
Lasala, Walsh, Wicklow & Velardi
168 Bradley Street
Post Office Box 1302
New Haven, Connecticut 06505-1302
(203) 785-8929
(203) 776-4663 (facsimile)

Attorneys for Plaintiff
Frank Sever, Jr.

Dated: March 4, 2004.

## Certificate of Service

I hereby certify that I caused a copy of the foregoing Plaintiff's Local Rule 56(a)(1) Statement of Material Facts as to Which There are no Genuine Issues to be Tried Warranting a Grant of Summary Judgment in Plaintiff's Favor to be deposited with the United States Postal Service, postage prepaid for first-class mail, on this 4th day of March 2004 addressed to Joseph L. Clasen, Esquire and James M. Ruel, Esquire, Robinson & Cole LLP, Financial Centre, 695 East Main Street, Post Office Box 10305, Stamford, Connecticut 06904-2305.

_____
Peter Paul Mitrano