UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FRANK SEVER, JR., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO.: 3:02CV722 (AVC) |
| | : | |
| v. | : | |
| | : | |
| MORTON G. GLICKMAN, DELCATH SYSTEMS, INC., and STEPHEN E. FELDMAN, | : | |
| | : | |
| Defendants. | : | MARCH 26, 2004 |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Defendant Dr. Morton G. Glickman ("Dr. Glickman") submits this memorandum of law in opposition to the motion for summary judgment of Plaintiff Frank Sever, Jr. ("Sever") dated March 4, 2004.  Sever seeks summary judgment, on liability only, against Dr. Glickman.  Sever has admitted in deposition that he has no medical training.  Yet, he asserts there is no issue of material fact whether he or a Professor of Medicine at Yale University created an invention for introducing chemotherapy drugs into the human body.  Sever waited until just before trial to bring this latest motion, even though his prior motion for summary judgment against defendant Stephen E. Feldman ("Feldman"), predicated on the same evidence, was denied in July 2003.  Consistent with this Court's prior ruling, the present motion must be denied as there are genuine issues of material fact precluding a grant of summary judgment.

**ORAL ARGUMENT REQUESTED**

STAM1-754469-2

## STATEMENT OF FACTS

In April 1993, Dr. Glickman, then Associate Dean of Yale University Medical School, attended a meeting at Delcath Systems Inc. ("Delcath").  *See* ¶¶ 1, 3, Declaration of Dr. Glickman dated May 2003 (the "Glickman Declaration") previously submitted to this Court (copy attached as Exhibit A).  Dr. Glickman had worked with Delcath for a number of years on the development of medical devices for the treatment of cancer.  During the April 1993 meeting, Dr. Glickman suggested a design to make the catheter introducer used in treatment of cancer patients more compact.  *Id*., at ¶5.  Dr. Glickman drew sketches of the initial concept.  *Id*., at Attachment A.  Dr. Glickman continued to improve the idea and on September 7, 1993 prepared a further, more detailed, sketch.  Exhibit B.  His design is known as a lateral movement controller.

In 1994, Delcath authorized Mr. Feldman, its regular patent attorney, to conduct a patent search on the lateral movement controller invention.  ¶ 6, Declaration of Stephen E. Feldman dated April 9, 2003 (the "Feldman Declaration") previously submitted to this Court (copy attached as Exhibit C).  Later during 1996, Delcath requested Mr. Feldman pursue obtaining a patent on the lateral movement controller.  *Id*.  Mr. Feldman contacted another patent attorney, Salvatore Mitri to prepare an initial draft of the patent application.  *Id*.  Mr. Mitri had done similar work for Mr. Feldman before.  *Id*.  Mr. Feldman sent Mr. Mitri information concerning the patent search, disclosure and Dr. Glickman's drawings.  *Id*.  Due to the press of other business, however, Mr. Mitri did not complete the draft application.  *Id*., at ¶ 8.

In early 1997, Plaintiff Sever, a patent attorney who had also done work for Mr. Feldman previously, inquired about receiving more work. *Id*. Mr. Feldman decided to transfer the work of preparing the draft application for the lateral movement controller from Mr. Mitri to Mr. Sever. *Id*. Mr. Feldman retained Mr. Sever as an attorney on behalf of Delcath. Mr. Feldman contacted Mr. Mitri and had Mr. Mitri return the materials previously supplied. *Id*.

In March 1997, Mr. Sever prepared and forwarded the draft patent application for the catheter lateral movement controller to Mr. Feldman. *Id*., at ¶ 9. Mr. Feldman in turn sent the draft to Dr. Glickman for review and comment, and sent a copy of the draft to Delcath. *Id*.; *see also* Exhibits D and E.

In April 1997, Mr. Feldman requested from the United States Patent and Trademark Office the file wrapper for the patent held by one of Delcath's suppliers involving catheters (the "Supplier Patent"). Feldman Declaration, ¶ 10. On May 18, 1997, Mr. Feldman sent the file wrapper to Mr. Sever asking him to analyze whether the Supplier Patent could be designed around and avoided, a common and proper practice recognized by patent attorneys and favored by patent law. *See* Exhibit F. On May 22, 1997, Mr. Sever sent a facsimile to Mr. Feldman identifying two ways the Supplier Patent could be designed around. Exhibit G. The first was by the lateral movement controller, for which Mr. Sever noted in the May 22 letter he had previously prepared the draft application. *Id*. The second way was a modification of the controller concept that incorporated the use of an incompressible fluid and was referred to as the telescoping frame. *Id*.

Sometime after this facsimile, and a similar one dated May 30, 1997 (*see* Exhibit H) were sent, Mr. Sever prepared a second draft application, this time for the telescoping frame concept, which he asked Mr. Feldman to forward to Delcath.  Feldman Declaration, ¶ 14; Exhibit I.  After review, in July 1997, Delcath informed Mr. Feldman they were not interested in the telescoping frame concept (Exhibit J) and Mr. Feldman so informed Mr. Sever.  Mr. Feldman told Mr. Sever that the application for a patent for Dr. Glickman's lateral movement controller would be submitted to the United States Patent and Trademark Office.  Feldman Declaration, ¶ 16.

Meanwhile, Dr. Glickman had continued his review of the draft application for the lateral movement controller.  Glickman Declaration, ¶¶ 22-23.  In July 1997, Mr. Feldman forwarded the final application to Dr. Glickman for signature.  (Copy of cover letter attached as Exhibit K.)  The signed application was received by the United States Patent and Trademark Office on September 2, 1997.  Patent No. 5,897,533 was issued to Delcath as Dr. Glickman's assignee for the catheter flow and lateral movement controller in April 1999, the culmination of Dr. Glickman's invention that began with the original concepts in April 1993.

On June 28, 1999, Mr. Sever, utilizing the work product he had previously prepared for his client, Delcath, submitted a patent application in his own name for the lateral movement controller, falsely claiming he had invented it.  As a result of Mr. Sever's filing, an interference proceeding was held before the United States Board of Patent Appeals and Interferences, the federal agency charged by law with determining the priority of claimed inventions.  The Board determined that Dr. Glickman, not Mr. Sever, was the inventor of the catheter flow and lateral movement controller.  Exhibit L.

On December 18, 2002, Sever filed a motion for summary judgment in this case against defendant Feldman. This Court denied the motion finding there were genuine issues of material fact. *See* Ruling On The Plaintiff's Motion for Summary Judgment, dated July 1, 2003. (Copy attached for ease of reference as Exhibit M).

## ARGUMENT

To grant summary judgment this Court must find both "[1] there is no genuine issue as to any material fact and [2] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56. *Fitzgerald v. Henderson*, 251 F.3d 345, 360 (2d Cir. 2001) *cert. den.* 536 U.S. 922 (2002). In deciding a motion for summary judgment, all ambiguities must be resolved, and all rational factual inferences must be drawn, in favor of the nonmoving party. *Howley v. Town of Stratford*, 217 F.3d 141, 150-151 (2d Cir. 2000). "If there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Id.*, at 151. The moving party has the burden of proof. *Donahue v. Windsor Locks Board Of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir. 1987). The Second Circuit in *Donahue* cautioned that summary judgment is to be used "with the precision of a scalpel" and that "courts must take care not to abort a genuine factual dispute prematurely and thus deprive a litigant of his day in court." *Id.*, at 55. "[O]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper," *M.H. v. Bristol Bd. of Ed.*, 2002 U.S. Dist. LEXIS 3580, at *11 (D. Conn. January 9, 2002) (Covello, J.) quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d. Cir. 1991) *cert. den.* 502 U.S. 849 (1991).

5

## I.

**PLAINTIFF HAS FAILED TO SHOW THERE ARE NO ISSUES OF MATERIAL FACT**

Sever's principal argument in this motion is that Feldman was Dr. Glickman's agent and, therefore, Dr. Glickman is liable for Feldman's alleged fraudulent acts. The problem with this argument is that it is built on sand. This Court has already ruled that "a genuine issue of material fact exists" as to whether the evidence establishes the elements of fraud with regard to the alleged agent Feldman. *See* Ruling On The Plaintiff's Motion For Summary Judgment, dated July 1, 2003 (Exhibit M). Therefore, a material issue of fact must exist based on the same evidence with regard to the alleged principal, Dr. Glickman. Further, the Glickman Declaration and the other documentary evidence confirm the existence of factual issues.

A. **The Same Evidence Was Not Conclusive As To Feldman**

Sever, as he has repeatedly in this case, relies principally on the tape recording of alleged conversation between himself and Feldman as the basis of his motion. This tape recording cannot be the basis of summary judgment.

First, the recording is not admissible evidence because it is not authentic, due to having been altered. *See* Summary of Expert Report of Tom Owen dated August 13, 2003, previously submitted to this Court (copy attached for ease of reference as Exhibit N). A motion for summary judgment can only be based on admissible evidence. *Amoreranos v. AMTRAK*, 303 F.3d 256, 271 (2d Cir. 2002). Second, the tape recording is privileged under the attorney-client privilege. *See* Memorandum of Law In Support of Defendants' Motion In Limine To Exclude Alleged Tape Recording, dated February 9, 2004.

6

Third, the tape recording does not contain the statements which Sever claims are false and on which he allegedly relied. Sever relies on four statements he claims were false:

(1) That certain parties were not interested in the invention;

(2) That Defendant Glickman was the inventor;

(3) That Feldman would not file a patent application; and

(4) That Feldman would work out the problems associated with the invention.

However, when questioned as to each one of these statements at his deposition, Sever was forced to admit that the tape recording did <u>not</u> include any such statements.

At his deposition, Sever's attention was called to each statement and, for each, he was asked where the alleged false statement appeared in the recording. Sever's responses preclude a grant of summary judgment in this case. Sever testified:

> Q. What I'm going to do is identify certain things in your Declaration and ask you then to go to the transcript and show us where they are?
>
> A. Okay.
>
> Q. The first thing you say in paragraph 3-I, is "The defendant, Feldman, falsely represented that certain parties were not interested in the subject invention." Do you see that? Do you see what I'm reading?
>
> A. Yes.
>
> Q. Okay. Now go to Defendant's 1, if you could, which is the [purportedly] true copy of the tape recording and transcript and identify where in this transcript Mr. Feldman falsely represented that certain parties were not interested in the subject invention.
>
> A. I guess it doesn't appear.
>
> Q. Take your time. I don't want to rush you?

7

    A.    Well, it doesn't seem to appear.

Sever Deposition of December 30, 2003 ("Sever Dep"), previously submitted to this Court, p. 67, line 15 - p. 68, line 4.

    Q.    My question is where, if anywhere, in the transcript we've marked as Defendant's 1 does Feldman falsely represent the defendant Glickman was the inventor of the subject invention?

    A.    It doesn't say that in the transcript.

Sever Dep. p. 69, lines 18-12.

    Q.    Third one here is defendant Feldman -- is in 3-I of Defendant's 1 -- falsely represented that he, bracket, defendant Feldman, represented he would not file a patent application for the subject invention. Where in the transcript Mr. Feldman say that?

    A.    Well, it's implied by, "I think I'll take care of that."

    Q.    Does he specifically make that false representation in the transcript?

    A.    Not specific . . . .

    Q.    Let's go back on the record. Let's start fresh again. Where in the transcript is this implication that you've identified? First start off by telling us the page what you're taking about.

    A.    At page five.

    Q.    Hold on, let me get with you.

    A.    Where it says, "Okay, let me --" "Feldman, okay, let me tell -- just tell you I will work around or work that out." And then Sever replies, "Well, okay, that's all I wanted to hear from you." And why -- and then also the statement why don't -- "Feldman, why don't you do this in the future if you have any problems," and then "Sever, okay, okay."

    Q.    That's it, right?

    A.    Yes.

8

> Q. So what you just quoted us off of page five is what you say by implication is defendant Feldman falsely representing that he would not file a patent application of the subject invention?
>
> A. Right.

Sever Dep. p. 70, line 10 - p. 72, line 2.

> Q. Where in the transcript does Mr. Feldman falsely represent that he would work out the problems associated with the subject invention?
>
> A. Well, I guess it's the same statement. "Let me tell you," at page five, okay, Feldman, okay, "Let me just tell you I will work that out." And then I say, "Well, okay, that's all I wanted to hear from you."
>
> Q. Anywhere else in the transcript that Mr. Feldman falsely represented that he would work out the problems associated with the subject invention?
>
> A. I can't -- let me review it again.
> (Pause in the proceedings.)
>
> A. I think that's probably the only place.

Sever Dep. p. 72, lines 3-15. Thus, when given the opportunity, Sever was unable to show that the recording contained any of the four alleged false statements.

This Court in its July 1, 2003 Ruling On The Plaintiff's Motion For Summary Judgment (Exhibit M), at p. 2, noted, "[u]pon examination of the alleged conversation between Sever and Feldman, the court concludes that no statements in it firmly establish the basic elements of fraud." As this Court recognized, even if certain statements might imply some of the elements of fraud, that is insufficient for summary judgment. *Id*. Further, this Court in its Ruling did not refer to the deposition testimony of Sever, where he admits that two statements do not appear, even by implication. Thus, Sever has not met his burden to prove by admissible evidence that there are no issues of material fact.

9

### B.     Other Documents Referenced By Sever Do Not Support His Claims

Sever calls attention to certain other documents in his Memorandum In Support Of Plaintiff's Motion For Summary Judgment, dated March 4, 2004. The first is a letter, dated May 18, 1997, forwarding the Patent Office file wrapper on the Supplier Patent (*see* Exhibit F). Sever accepts the authenticity of this document and relies upon it. However, this letter adds nothing to the elements of fraud. Instead, it is completely consistent with Dr. Glickman's position that Sever was retained to examine and advise as to the Supplier Patent, after Sever had drafted the patent application for the lateral movement controller. Sever's contention, that making the request to analyze the Supplier Patent somehow negates the fact that another application for Dr. Glickman's invention had already been prepared, is pure speculation and has no support in the evidence.

In fact, the next document Sever relies on destroys that argument. Sever sent a facsimile to Feldman on May 22, 1997 (Exhibit G). Contrary to Sever's assertion, this document was not produced for the first time in August 2003.[1] It was produced and marked as an exhibit at Sever's deposition. In fact, Sever's attorney originally sent a copy of this facsimile to Feldman prior to the commencement of this lawsuit. The copy used at the deposition came from that letter.

The facsimile of May 22nd states clearly that Sever had identified two design changes which would avoid the Supplier Patent. The "first is the arrangement which includes the

---

[1]  Sever frequently notes the date that documents were produced, as though some delay in production affected this motion. What is notable is that the documents he relies upon were all produced in July or August 2003 (with the exception of a single letter produced in November), demonstrating that there was no excuse for waiting over six months, until just before trial, to file the present motion.

10

telescoping catheter, on which <u>I have already drafted an application</u>." (emphasis added).[2] This statement confirms Dr. Glickman's and Feldman's statements that Sever prepared the draft application for the invention <u>before</u> receiving the Supplier Patent. There is no way this document supports Sever's allegations in the Complaint (¶¶ 18-21) that only after he communicated the two options to Feldman, and after Feldman's indicated the client had no interest, did Sever reduce an option to an application for the first time.

Sever spends considerable time in his Memorandum In Support (pp. 20-24) discussing how the options to avoid the Supplier Patent might work and attacking Defendants' explanations. Not only is this discussion hypothetical, supported by no evidence or even expert opinion, but also it does nothing to indicate the lack of material issues of fact. If anything, it merely creates additional factual issues.

Sever also refers to other documents, for example, a facsimile from himself to Feldman of July 15, 1997, a request for foreign patent and certain telephone records, but does not even attempt to tie them to any fraudulent conduct by Dr. Glickman.[3] Nothing in these documents dispels the existence of issues of material fact.[4]

---

[2] Almost identical language appears in the May 30, 1997 facsimile (Exhibit H).

[3] Sever also refers to Dr. Glickman's Patent Application claiming Dr. Glickman 'lied by stating that Glickman was the inventor." Plaintiff's Memorandum In Support, p. 15. However, this statement was not made to Sever, nor does Sever contend he relied upon it. If this is an attempt to claim a fraud on the Patent Office, Sever has consistently stated that such a claim is not part of this lawsuit to avoid *res judicata*. In any event, the Glickman Declaration and the Board of Patent Appeals and Interferences ruling support Dr. Glickman on this point.

[4] While Sever in his Motion seeks summary judgment against Dr. Glickman on liability, Sever does not address either of the other two causes of action against Dr. Glickman. Further, while Sever argues that Dr. Glickman is liable on an agency basis, Sever offers no factual evidence on that critical point in his argument.

### C. Evidence Presented By Dr. Glickman Confirms There Are Material Issues Of Fact

Underlying Sever's entire claim of fraud is his assertion that "Sever was the true and sole inventor of the subject invention." Plaintiff's Memorandum In Support, p. 32. Sever recognizes that for him to be able to file a patent application (which he claims he forbore in reliance on false statements), he had to be the inventor.

Dr. Glickman's Declaration directly contradicts Sever's claim. Dr. Glickman states he first conceived of the invention in 1993 - <u>four years before Sever ever saw the Supplier Patent</u>. Documentary evidence, including sketches Dr. Glickman prepared at the time, support his claim. These drawings reveal the development of the invention from initial concept to full description in September 1993 (*see* Exhibit B) of the invention that ultimately received the patent in question. Further, in January 1997, months before Sever claims to have first conceived of the concept, Dr. Glickman reviewed and approved a detailed drawing of the "Lateral Movement Glicman Telescoping Catheter." (Glickman Declaration Attachment B). Dr. Glickman's statements that he is the inventor and that no fraud occurred are also confirmed by the Feldman Declaration. In light of all of the evidence, Plaintiff Sever has not, and cannot meet his burden to prove there are no material issues of fact.

### D. There Is No Basis For Applying Fed. R. Civ. P. 56(d)

The purpose of Rule 56(d) is to "withdraw sham issues from the case and to specify those facts that really cannot be controverted." Wright Miller, FEDERAL PRACTICE AND PROCEDURE, § 2737 (1998). Rule 56(d) is reserved for those instances where the parties concede a certain fact (*see e.g., Sekor v. Capwell*, 889 F.Supp. 34, 38 (D. Conn. 1995); *Bonda's Veeroederfabrek*

*Provimi v. Provimi, Inc.,* 425 F.Supp. 1034, 1036 (D. Wis. 1976)), or facts over which there is no dispute. *See Bethlehem Steel v. Tishman Realty*, 72 F.R.D. 33, 40 (S.D.N.Y. 1976). There can be no reasonable claim that the authenticity of the alleged tape recording is uncontroverted such that its content is deemed established. Defendants' expert has concluded that the tape was tampered with before production in discovery. Defendants have objected to the tape's admission and filed a Memorandum Of Law In Support of Motion In Limine, dated February 9, 2004, which discusses at length the reasons why the tape is inadmissible. Sever simply ignores all this and blithely assumes that because he has "no substantial issue with the accuracy truth and authenticity," the tape is uncontroverted. This is simply not so. Therefore, as Defendants' do not concede the validity of the tape, which is subject to considerable dispute, Plaintiff's alternative request for a determination that a transcript be deemed established should be denied.[5]

## CONCLUSION

Plaintiff Sever has failed to meet his burden to show that there are no genuine issues of material fact concerning Dr. Glickman's liability for fraud, or any of the other causes of action. Sever has not really offered any proof other than the tape recording, which this Court has already determined was insufficient as to an alleged participant Feldman. The tape clearly cannot suffice against a non-participant such as Dr. Glickman. Moreover, Dr. Glickman has presented contrary

---

[5] Plaintiff's Memorandum In Support, p. 17, also refers to "other above-stated facts" as being deemed established. Sever does not even identify what these alleged facts are, and never demonstrates that another fact is uncontroverted. Defendants have stipulated to no fact in this case and clearly, Rule 56(d) is not applicable to any.

13

evidence that raises numerous issues of fact. In these circumstances, there is no basis for relief under any provision of Fed. R. Civ. P. 56.

Dated:   Stamford, CT
         March 26, 2004

                              DEFENDANT,
                              MORTON G. GLICKMAN


                              By:____/s/   Thomas J. Donlon_____
                                   Joseph L. Clasen, Esq. (ct04090)
                                   Thomas J. Donlon, Esq. (ct22839)
                                   e-mail:  tdonlon@rc.com
                                   ROBINSON & COLE LLP
                                   Financial Centre
                                   695 East Main Street
                                   Post Office Box 10305
                                   Stamford, CT  06904-2305
                                   Telephone:  (203) 462-7500
                                   Facsimile:  (203) 462-7599

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment was served by first class mail, postage prepaid to counsel of record for the Plaintiff, Frank B. Velardi, Jr., Esq., Lasala, Walsh, Wicklow & Velardi, 168 Bradley Street, New Haven, Connecticut 06511 and to Peter Paul Mitrano, Esq., 581 Boylston Street, Suite 201, Boston, Massachusetts 02116, this 26th day of March, 2004.

      /s/ Thomas J. Donlon
Thomas J. Donlon