# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT
### Hartford

| | |
|---|---|
| FRANK SEVER, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.   3:02cv722(AVC) |
| ) | |
| MORTON G. GLICKMAN, et al., ) | Date of this Pleading: April 5, 2004 |
| ) | |
| Defendants. ) | |

### Plaintiff's Reply to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Amend

Plaintiff, Frank Sever, Jr. (hereinafter sometimes referred to as "Sever"), by and through his undersigned attorneys, states Plaintiff's Reply to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Amend[1] as follows:

The most enlightening matter raised in defendants' opposition starts on page 2 wherein the defendants complain that the amending complaint is unjustly prejudicial. In the amended complaint, Sever corrected a previously mistake of referring to an application for the second option when Sever meant that Sever prepared an application for the first option as stated in Sever's two facsimiles of May 1997. The importance of this matter is that the defendants have falsely manufactured their defense on the basis that Sever prepared an application for the second option stated in Sever's two facsimiles of May 1997.

---

[1]   Pursuant to the Rules of the United States District Court for the District of Connecticut, plaintiff respectfully requests oral argument.

1

The defendants have never produced this phantom application for the second option stated in Sever's two facsimiles of May 1997. Throughout this litigation, Sever has been confused by statements made by the defendants in reference to an alleged phantom application for said second option. For example, see page 4 of Defendants' Submissions to Joint Trial Memorandum wherein the defendants mistakenly describe the second option as the telescoping frame concept and stated in part that:

> "Mr. Sever subsequently prepared a draft application for the telescoping frame concept, which he asked Mr. Feldman to forward to Delcath. After review, in July 1997, Delcath informed Mr. Feldman they were not interested in the telescoping frame concept and Mr. Feldman so informed Mr. Sever. . . ."

It is most important to note that the defendants have not yet provided Sever said "draft application for the telescoping frame concept". This is the application that Sever has designated as the phantom application. Also see Exhibit I to defendants' opposition to the motion for summary judgment related to defendant Glickman wherein there is a letter from defendant Feldman to defendant Delcath dated June 6, 1997 stating:

> "Re:  Telescoping Frame
>        (incompressible fluid)
>
> "Dear Jonathan [Delcath],
>
> "As we discussed, I have enclosed an application for a slight variation of Mort Glickman's Lateral Movement Controller with an incompressible fluid between the walls."
>
> "Please give me your comments."

Also note that paragraph numbered 24 of defendant Glickman's affidavit dated May 2003 (attached as Exhibit A to defendants' opposition to the motion for summary judgment related to defendant Glickman) states:

> "24.  Sometime in July, 1997, I received a patent application disclosing an introducer which was the same as mine

2

> but included an incompressible fluid such as fluorocarbon between the two walls of my catheter introducer. I didn't particularly think the invention would work, but I understand Delcath had some interest in it. It was referred to as a telescoping incompressible catheter, or a telescoping frame. (The word frame was used because the fluid between the walls made it bulky, and somewhat frame like)."

Also note that paragraphs numbered 12, 14 and 15 of defendant Feldman's affidavit dated April 10, 2003 (attached as Exhibit C to defendants' opposition to the motion for summary judgment related to defendant Glickman) states:

> "12. The second way of avoiding the claims of the Supplier Patent suggested by Sever in his May 22nd letter, involved adding an incompressible fluid between the walls of Dr. Glickman's controller devices (the 'incompressible telescoping fluid catheter').
>
> . . .
>
> "14. Sever than prepared a draft patent application to cover the incompressible fluid telescoping catheter concept and forwarded it to me. Sever believed he was an inventor. At his constant urging, I forwarded the draft patent application for the incompressible fluid telescoping catheter concept to Delcath in June, 1997.
>
> "15. Sever later contacted me to follow up on the incompressible fluid telescoping catheter concept. At that point Sever did not want Delcath to pursue the device. I contacted Delcath, and was told that in any case Delcath was no longer interested in that particular concept. I informed Sever that Delcath was no longer interested in the incompressible fluid telescoping catheter concept."

Hence, the absence of the production by the defendants of the so-called "the 'incompressible telescoping fluid catheter'" patent application supports that defendants' defense is fabricated related to a patent application being prepared for the second option (as Sever mistakenly stated in the original complaint). While Sever apologizes for making a mistake in referring to the second option instead of the first option (as clearly stated in the two Sever facsimiles), the defendants

3

have clearly fabricated a defense based upon Sever's mistake. This is of great concern to Sever. While admittedly, the defendants may have been prejudiced by Sever's mistake in referring to an application for the second option when Sever meant that Sever prepared an application for the first option, said type of prejudice is not the type of prejudice that precludes Sever from being granted leave to file an amended complaint.

In reply to defendants' statements on page 3 of the defendants' opposition that "almost two years" have passed, Sever states that discovery in this case has and continues to take an inordinate amount of time. Note that not until February 5, 2004[2], did the defendants produce a copy of a letter dated May 18, 1997, wherein Feldman stated to Sever that:

"May 18, 1997

"Mr. Frank Sever
2220 North Columbus Street
Arlington, Virginia  22207

                        Re:    U.S. Patent 5,161,773
                                (tower)

"Dear Frank,

"I have enclosed the file wrapper for the above patent.

"Kindly call me about preparing an opinion for Delcath on designing around and avoiding the claims of the patent.

                                   Very truly yours,

---

[2] This is a correction to the statement that the undersigned counsel, Peter Paul Mitrano, made in the motion for summary judgment related to defendant Glickman. See page 11 of Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment Against Morton G. Glickman on the Issue of Liability, and in the Alternative, Plaintiff's Request Under Rule 56(d) for a Ruling that the Material Facts Stated Herein are Deemed Established Upon the Trial dated March 4, 2004 wherein the undersigned counsel, Peter Paul Mitrano, mistakenly stated:

    "Note that the above-quoted letter dated May 18, 1977 was not produced in discovery until November 24, 2003 from defendants' counsel even though said letter dated May 18, 1977 was requested by Sever in discovery in July 2002."

Said statement should read "February 5, 2004" instead of "November 24, 2003". The undersigned counsel, Peter Paul Mitrano, apologizes for his mistake.

/s/
Stephen E. Feldman

"SEF:ics
Enclosure"

Said letter is an extremely important document in that said letter supports Sever's statements contained in the two Sever facsimiles dated May 22, 1997 and May 30, 1997, respectively. Said above-quoted letter by implication is very damaging to defendants' defense because it does not contain any reference to any alleged invention of the defendant Glickman nor is it likely that any alleged invention of the defendant Glickman existed in view of the failure of defendant Feldman to mention any alleged invention of the defendant Glickman in said letter dated May 18, 1997. Moreover, why would defendant Feldman ask plaintiff Sever to design "around and avoiding the claims of the patent" if defendant Feldman was aware of the alleged invention of the defendant Glickman. Said letter dated May 18, 1997 strongly supports some of the additional allegations made in the amended complaint and was withheld by the defendants until it was sent by letter dated February 5, 2004 to plaintiff Sever. The defendants have not provided any explanation for not producing said letter for over eighteen months after said letter was requested in discovery by plaintiff Sever. Accordingly, any delay, as defendants well know, is for the greater part directly due to defendants' delinquencies in responding to plaintiff's discovery requests. Defendants produced a mere portion of the requested discovery after more than one year after the same was due. Indeed, they have yet to produce other documents that were subject to Sever's original discovery requests; most notably, the phantom application referenced in Feldman's letter to Foltz, purporting to be dated June 6, 1997. Of that portion that defendants did produce, various of the documents, appear to have been "manufactured" (most notably of these is the Feldman-Foltz letter purporting to be dated June 6, 1997, conspicuously identifying the phantom invention

5

as: "Mort Glickman's Lateral Movement Controller with an incompressible fluid between the wall".[3] Despite that Sever could have named Delcath as a party to Feldman's fraud under an agency theory, it was only after defendants' latest discovery production did it become absolutely clear that Delcath was a party to Feldman's fraud. The documents belatedly produced, indicate that Feldman's fraud is imputed to all defendants, including Delcath.

In reply to defendants' statements in the middle of page 6 of the defendants' opposition, Sever contends that the case law relied upon defendants in support of their conversion argument is unsound. The better law is: "[C]onversion is limited to those intangible property rights customarily merged in, or identified with, some document", *Adam Ippolito v. Yoko O. Lennon*, 542 N.Y.S.2d 3, 150 A.D.2d 300 (1989); Restatement [Second] of Torts §§ 222 A, 242 [1965]; Prosser and Keeton, Torts, at 91-92 [5th ed 1984]. Granted, the disputed invention is intangible property; however, it has merged into a deed of letters patent (e.g., a document), and thus a claim for conversion will lie. Therefore, the New York District Court authority upon which defendants rely, must yield to a higher Second Circuit Court of Appeals authority, e.g., *Ippolito*. In addition, as stated above, Sever could have originally named Delcath under his original fraud/conspiracy counts e.g., "fraud of the agent imputed to the principal"—Feldman is Delcath's agent and hence Feldman's fraud committed in the scope of his employment by Delcath and for the benefit of Delcath; see *Reynolds v. Snow*, 197 N.Y.S.2d 590, 10 A.D.2d 101 (1960) ("Generally, an agent's knowledge, and even fraud, is imputed to his principal."); *Minneapolis, St. P. & S. Ste. M. R.R. v. St. Paul Mercury-Indemnity Co.*, 268 Minn. 390, 405, 129 N.W.2d 777, 787 (1964), ("[K]nowledge of attorney imputed to client.")). However, although Sever could have named

---

[3] Rather than a mere statement intended to identify the accompanying phantom application, as defendants would have this Court believe, the statement more reasonably suggest that it was produced as false evidence of Glickman's purported inventorship.

Delcath under the fraud-conspiracy counts for the reasons cited above, Sever felt it more prudent to wait for production of defendants' discovery until naming Delcath under the fraud/conspiracy counts. Sever had no way of knowing that the defendants would drag-out the discovery process for well over one year and beyond. However, although there is still discovery owing, defendants have belatedly produced enough that Sever is now confident that Delcath was a willing participant to fraud and conspiracy.

In reply to defendants' statements on page 7 of the defendants' opposition related to judicial admissions, Sever states that the scales of justice require that Sever be allowed to correct a mistake. As stated above, Sever admits Sever made a mistake in stating that Sever prepared a patent application for the second option when Sever meant that Sever prepared a patent application for the first option as stated in Sever's two facsimiles of May 1997. A review of the two facsimiles from Sever to defendant Feldman of May 22, 1997 and May 30, 1997 (see Exhibits G and H to defendants' opposition to the motion for summary judgment related to defendant Glickman), show that Sever prepared the patent application for the first option and not the second option. While Sever accepts the responsibility for his mistake in stating that Sever prepared a patent application for the second option when Sever meant that Sever prepared a patent application for the first option as stated in Sever's two facsimiles of May 1997, justice requires the defendants to accept their responsibility for falsely stating under oath that there was a patent application for the second option. Also see *White v. Arco/Polymers, Inc.*, 720 F.2d 1391, 1396 n. 5 (5th Cir. 1983) (which was cited in *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2nd Cir. 1985)) wherein it is stated in part that:

> "Admissions made in superseded pleadings are as a general rule considered to lose their binding force, and to have value only as evidentiary admissions. 3 Moore's Federal Practice

> Procedure p 15.08[7] at 15-128 (1982), citing *Borel v. United States Casualty Co.*, 233 F.2d 385, case II (5th Cir.1956). . . ."

Accordingly, Sever should be allowed to amend the complaint to correct a mistake in stating that Sever prepared a patent application for the second option when Sever meant that Sever prepared a patent application for the first option. More importantly, the defendants should be held accountable for falsely manufacturing evidence in this matter.

It is obvious that Sever's made said mistake when the complaint is compared to the two facsimiles from Sever to defendant Feldman of May 22, 1997 and May 30, 1997. Throughout the record, Sever has consistently maintained that Sever drafted a single application—to wit—the invention described in the body of paragraph 17 of his original complaint. It is precisely upon Sever's said mistake that the defendants have woven their entire web of deceit. However, in the process of weaving this web they managed only to trap themselves. In a letter from defendant Feldman to Foltz of the purported date of June 6, 1997, Feldman purported to "enclose an application" for "a slight variation" of "Mort Glickman's" Lateral Movement Controller with "an incompressible fluid between the walls". Sever contends that this application, e.g., the "phantom application" does not exist[4], and is merely a manufacture of defendants to reconcile their contention of Glickman's fraudulent inventorship with the instant facts. It is Sever's contention that such a design would not make sense from an inventor's prospective. Although, the defendants claim that the phantom application is in their possession (e.g., in the letter Feldman purports to send the phantom application to Foltz); and, although the phantom application has been subject to Sever's broad discovery requests since the start of discovery more than one year ago; and, although production of the phantom application, if in fact it existed, would seem to support their contention of Glickman's inventorship; defendants have failed to

---

[4] Or at least any plausible version of an invention drawn to "a slight variation of Mort Glickman's Lateral Movement Controller with an incompressible fluid between the walls."

produce it! In sum, defendants have based their entire position on a bogus application! Sever challenges the defendants to produce a plausible application drawn to "a slight variation of Mort Glickman's Lateral Movement Controller with an incompressible fluid between the walls." By now it is clear that the defendants cannot!

In summary, plaintiff Sever states that justice requires that plaintiff Sever be allowed to file Sever's First Amended Complaint.

## Conclusion

WHEREFORE, plaintiff, Frank Sever, Jr., respectfully requests that this Honorable Court grant Plaintiff's Motion for Leave of Court to Amend the Complaint.

Respectfully submitted,

_____
Peter Paul Mitrano (admitted *pro hac vice*)
Ct. Fed. Bar No.: 23733
Suite 201
581 Boylston Street
Boston, Massachusetts 02116
(617) 236-5655

Local Connecticut Counsel:

_____
Frank B. Velardi, Jr.
Ct. Fed. Bar No.: 07893
Lasala, Walsh, Wicklow & Velardi
168 Bradley Street
Post Office Box 1302
New Haven, Connecticut 06505-1302
(203) 785-8929
(203) 776-4663 (facsimile)

Attorneys for Plaintiff
Frank Sever, Jr.

Dated: April 5, 2004.

Certificate of Service

I hereby certify that I caused a copy of the foregoing Plaintiff's Reply to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Amend to be deposited with the United States Postal Service, postage prepaid for first-class mail, on this 5th day of April 2004 addressed to Joseph L. Clasen, Esquire and James M. Ruel, Esquire, Robinson & Cole LLP, Financial Centre, 695 East Main Street, Post Office Box 10305, Stamford, Connecticut 06904-2305.

_____
Peter Paul Mitrano