# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT
### Hartford

| | |
|---|---|
| FRANK SEVER, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.   3:02cv722 (AVC) |
| | ) |
| MORTON G. GLICKMAN, et al., | ) Date of this Pleading: April 8, 2004 |
| | ) |
| Defendants. | ) |

**Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment Against Morton G. Glickman on the Issue of Liability, and in the Alternative, Plaintiff's Request Under Rule 56(d) for a Ruling that the Material Facts Stated Herein are Deemed Established Upon the Trial**

Plaintiff, Frank Sever, Jr. (hereinafter sometimes referred to as "Sever"), by and through his undersigned attorneys, states Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment Against Morton G. Glickman on the Issue of Liability, and in the Alternative, Plaintiff's Request Under Rule 56(d) for a Ruling that the Material Facts Stated Herein are Deemed Established Upon the Trial[1] as follows:

Sever takes strong objection to the truth of defendants' allegations at top of page 4 of their opposition that:

> "Sometime after this facsimile, and a similar one dated May 30, 1997 (see Exhibit H) were sent, Mr. Sever prepared a second draft application, this time for the telescoping frame concept, which he asked Mr. Feldman to forward to Delcath. Feldman Declaration, ¶ 14; Exhibit I."

---

[1] Pursuant to the Rules of the United States District Court for the District of Connecticut, plaintiff respectfully requests oral argument.

1

Sever unequivocally denies that Sever prepared any such application and has his doubts that it exists or that defendants can produce it or a plausible facsimile. Sever has no such application in his possession. In the Feldman letter of June 6, 1997 to Jonathan Foltz, Feldman purports to describe the invention and writes: "I have enclosed an application for a slight variation of Mort Glickman's Lateral Movement Controller with an incompressible fluid between the walls." Said application is what Sever has referred to throughout the entire record as the "phantom application". Sever cites the following as at least some of the circumstances underpinning this designation:

(1)   although, defendants claim that the phantom application is in their possession (e.g., in the letter Feldman purports to send the phantom application to Foltz);

(2)   although production of the phantom application, if in-fact it existed, or if in-fact where plausible, would seem to support their contention of Glickman's inventorship;

(3)   the defendants have nonetheless failed to produce it despite the forgoing.

In sum, defendants have based their entire position on a bogus application! Sever challenges defendants to produce a plausible application drawn to "a slight variation of Mort Glickman's Lateral Movement Controller with an incompressible fluid between the walls". By now it is clear that defendants cannot! Sever has come to regard the above indicated circumstances as badges of fraud. The record is replete with these of defendants' badges of fraud. See e.g., *Matter Gafco v. H. D. S. Mercantile Corp.*, 263 N.Y.S.2d 109, 47 Misc. 2d 661 (1965); *In re Kaiser*, 722 F.2d 1574 (2nd Cir. 1983); *Cook v. Bieluch*, 32 Conn. App. 537, 629 A.2d 1175, *Temple v. Jones, Son & Co.*, 179 Va. 286, 19 S.E.2d 57 (1942).

As Sever has previously advised this Court, please note that in the amended complaint, Sever corrected a previously mistake of referring to an application for the second option when Sever meant that Sever prepared an application for the first option as stated in Sever's two facsimiles of May 1997. The importance of this matter is that the defendants have falsely manufactured their defense on the basis that Sever prepared an application for the second option stated in Sever's two facsimiles of May 1997. For example, see page 4 of Defendants' Submissions to Joint Trial Memorandum wherein the defendants mistakenly describe the second option as the telescoping frame concept and stated in part that:

> "Mr. Sever subsequently prepared a draft application for the telescoping frame concept, which he asked Mr. Feldman to forward to Delcath. After review, in July 1997, Delcath informed Mr. Feldman they were not interested in the telescoping frame concept and Mr. Feldman so informed Mr. Sever . . . ."

Also see Exhibit I to defendants' opposition to the motion for summary judgment related to defendant Glickman wherein there is a letter from defendant Feldman to defendant Delcath dated June 6, 1997 stating:

> "Re:  Telescoping Frame
> (incompressible fluid)
>
> "Dear Jonathan [Delcath],
>
> "As we discussed, I have enclosed an application for a slight variation of Mort Glickman's Lateral Movement Controller with an incompressible fluid between the walls."
>
> "Please give me your comments."

Also note that paragraph numbered 24 of defendant Glickman's affidavit dated May 2003 (attached as Exhibit A to defendants' opposition to the motion for summary judgment related to defendant Glickman) states:

> "24.  Sometime in July, 1997, I received a patent application disclosing an introducer which was the same as mine, but included an incompressible fluid such as fluorocarbon between the two walls of my catheter introducer. I didn't particularly think the invention would work, but I understand Delcath had some interest in it. It was referred to as a telescoping incompressible catheter, or a telescoping frame. (The word frame was used, because the fluid between the walls made it bulky, and somewhat frame like)."

Also note that paragraphs numbered 12, 14 and 15 of defendant Feldman's affidavit dated April 10, 2003 (attached as Exhibit C to defendants' opposition to the motion for summary judgment related to defendant Glickman) states:

> "12.  The second way of avoiding the claims of the Supplier Patent suggested by Sever in his May 22nd letter, involved adding an incompressible fluid between the walls of Dr. Glickman's controller devices (the 'incompressible telescoping fluid catheter').
>
> .   .   .

3

> "14. Sever than prepared a draft patent application to cover the incompressible fluid telescoping catheter concept and forwarded it to me. Sever believed he was an inventor. At his constant urging, I forwarded the draft patent application for the incompressible fluid telescoping catheter concept to Delcath in June, 1997.
>
> "15. Sever later contacted me to follow up on the incompressible fluid telescoping catheter concept. At that point Sever did not want Delcath to pursue the device. I contacted Delcath, and was told that in any case Delcath was no longer interested in that particular concept. I informed Sever that Delcath was no longer interested in the incompressible fluid telescoping catheter concept."

Hence, the absence of the production by the defendants of the so-called "the 'incompressible telescoping fluid catheter'" patent application (also known as the "phantom application") supports that defendants' defense is fabricated related to a patent application being prepared for the second option (as Sever mistakenly stated in the original complaint). While Sever apologizes for making a mistake in referring to the second option instead of the first option (as clearly stated in the two Sever facsimiles), the defendants have clearly fabricated a defense based upon Sever's mistake. This is of great concern to Sever.

See *Nix v. Whiteside*, 475 U.S. 157, 185 (1986) ("This Court long ago noted: 'All perjured relevant testimony is at war with justice, since it may produce a judgment not resting on truth. Therefore it cannot be denied that it tends to defeat the sole ultimate objective of a trial.' *In re Michael*, 326 U.S. 224, 227, 66 S.Ct. 78, 79, 90 L.Ed. 30 (1945).") Also see the case of *In re Grievance Committee of U.S. Dist. Court, Dist. of Connecticut*, 847 F.2d 57, 61 (2nd Cir. 1988) wherein the court stated:

> "Disciplinary Rule 7-102(B)(2) provides that, when a 'lawyer ... receives information clearly establishing that ... [a] person other than his client has perpetrated a fraud upon a tribunal[, he] shall promptly reveal the fraud to the tribunal.' Under this rule, an attorney's ethical duty to report a fraud on the court is triggered once he receives 'information clearly establishing' the existence of a fraud on the court."

Furthermore, in response to defendants' allegations at top of page 2 of their opposition, it is interesting to note that defendants' position is: "During the April 1993 meeting, Dr. Glickman suggested a design to make the catheter introducer used in treatment of cancer patients more compact." Defendants claim that Glickman conceived of the subject invention as early as April 1993, yet they did not seek to file

4

a patent application on Glickman's idea until September 2, 1997, the exact time contemporaneous to when Sever contends that he invented the disputed invention.

In reply to defendants' allegations at top of page 3 of their opposition that: "Sever . . . inquired about receiving more work. *Id.* Mr. Feldman decided to transfer the work of preparing the draft application for the lateral movement controller from Mr. Mitri to Mr. Sever"; plaintiff Sever states the tenor of Mr. Mitri's previous declarations would purport that Mr. Mitri was overloaded with work from about late 1996 to about February 1997 (see e.g., May 20, 2003 Mitri declaration: "[paragraph] 7. I began preparing an application in 1996, but because of other work . . ."). A review of the patent office website indicates that from about the time of Mr. Mitri's retirement from Merck & Co., Inc., sometime in 1993[2] (at or about the time Mitri participated in filing a patent application with the United States Patent and Trademark Office ("USPTO"), Mitri has filed only ten patent applications, four of which were design patents[3]. These patents are:

> "5,421,631, filed October 7, 1993, Pail bailer
> 5.562,142, filed February 28, 1995, Big dash shield and seat shields
> D391,478, filed February 6, 1996, Combined bottle and cap
> 5,607,607, filed March 29, 1996, System and assemblage for producing microtexturized substratesand implants
> 5,802,776, filed April 1, 1997, Gutter trap assemblage
> 6,001,441, filed March 20, 1997, Sanitary strip for drinking vessels
> D415,929, filed October 27, 1998, Basketball shaped beverage container
> D420,255, filed October 27, 1998, Soccerball shaped beverage container
> D424,375, filed October 27, 1998; Football shaped beverage container"

In Mr. Mitri's May 20, 2003 declaration, Mr. Mitri states:

> "[paragraph] 5. I received the file for the lateral movement catheter in late 1996...
> [paragraph] 6. I began preparing the application in 1996...sent the file back to [Feldman] in January, 1997...
> [paragraph] 7...in January 1997...asked [Feldman] to send back the file...I tried, but because of other work I could not prepare the application...I spoke to Stephen Feldman, in early February, and told

---

[2] See Mitri Curriculum Vitae attached to his May 20, 2003 Declaration.
[3] A design patent is distinguishable from a utility patent (the type involved in the instant proceeding, in that a design patent is typically up to four (4) pages of drawings and a "claim" or "claims" that merely claim the substance of the drawing[s], e.g., "The ornamental design for a football shaped beverage container, as shown and described." (Mitri's claim for design patent no. D424,375, entitled: "Football shaped beverage container").

5

>him I could not finish the application promptly. Stephen Feldman asked
>me if I would mind forwarding...the application...[to Sever]..."[4]

Interestingly, Mr. Mitri's list of patent filings indicates that Mr. Mitri did not filed any patent applications on his own during the time span indicated in his declaration, e.g., late 1996—January 1997.

In reply to defendants' allegations of page 3 of their opposition that: "Mr. Feldman sent the file wrapper to Mr. Sever asking him to analyze whether the Supplier Patent could be designed around and avoided, a common and proper practice recognized by patent attorneys and favored by patent law;" the contention here indicates that defendants were compelled to rely on a competitor's [Tower's] invention at or before the time they contacted Sever to device ways to designed around and avoided. The contention is inconsistent with their claim that as early as the April 1993 meeting, Glickman had already conceived of an idea that would avoid the Tower patent. Further, these facts beg the question: if Glickman had conceived of an idea that would avoid the Tower patent as early as April 1993, why after all that time, task Sever to devise ways to designed around and avoid the Tower patent? See the letter from Feldman to Sever dated May 18, 1997 that was not produced until February 5, 2004.[5] Sever contends that this is yet another of the many badges of [defendants'] fraud lurking in the record.

In response to defendants' allegations on page 4 of their opposition that: "Mr. Feldman told Mr. Sever that the application for a patent for Dr. Glickman's lateral movement controller would be submitted

---

[4] Working steadily, Sever recalls that it to him no more than one to about one and one half days to complete the entire application for the subject invention.

[5] This is a correction to the statement that the undersigned counsel, Peter Paul Mitrano, made in the motion for summary judgment related to defendant Glickman. See page 11 of Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment Against Morton G. Glickman on the Issue of Liability, and in the Alternative, Plaintiff's Request Under Rule 56(d) for a Ruling that the Material Facts Stated Herein are Deemed Established Upon the Trial dated March 4, 2004 wherein the undersigned counsel, Peter Paul Mitrano, mistakenly stated:

>"Note that the above-quoted letter dated May 18, 1977 was not produced in discovery until November 24, 2003 from defendants' counsel even though said letter dated May 18, 1977 was requested by Sever in discovery in July 2002."

Said statement should read "February 5, 2004" instead of "November 24, 2003". The undersigned counsel, Peter Paul Mitrano, apologizes for his mistake.

to the United States Patent and Trademark Office", this statement is refuted by Feldman in the original tape, as evident from the following excerpts of the Feldman's transcript version:

> "SEVER:    -- when I said well, maybe all, all -- you know, you said well they're not interested in it. And I said well, maybe I should file on it. And you went ah -- you said well, no you'll get me in trouble. See, here's what the situation is in a nutshell, Steve. When you file -- when you file a patent application you have to disclose who the inventors are, and, and, if if you don't, you're tampering with some pretty, pretty heavy stuff. You know you can't be -- you know, it's like filing a false affidavit or a false oath.
>
> FELDMAN:  Well, would you feel more comfortable if we don't file that one?
>
> SEVER:    Yes. Absolutely. That, that scares the shit out of me, Steve, because I don't want to get involved in anything unethical.
>
>           . . .
>
> FELDMAN:  -- I will work that out.
>
> SEVER:    Okay, well, that's all, that's all I wanted to hear from you."

In response to defendants' allegations on page 5 of their opposition that "This Court has already ruled that 'a genuine issue of material fact exists' as to whether the evidence establishes the elements of fraud with regard to the alleged agent Feldman" to be accurate this Court stated in its order that:

> "Upon examination of the alleged conversation between Sever and Feldman, the Court concludes that no statements in it firmly establish the basic elements of fraud." However, **certain statements may implicitly do so.**" (bold emphasis added).

Sever believes that the additional facts included in this motion for summary judgment warrant the granting of this motion. This Court should also note that the refusal of the defendants to produce the phantom application[6] also supports the granting of this motion for summary judgment.

---

[6]    In weaving their web of deceit, defendants have placed themselves in a curious, and an impossible situation—the more discovery they are compelled to produce—the more ensnared they become.

7

In response to defendants' allegations on page 6 of their opposition that "First, the recording is not admissible evidence because it is not authentic, due to having been altered. See Summary of Expert Report of Tom Owen dated August 13, 2003, previously submitted to this Court", the Owen report is nothing more than what it is—an opinion. Moreover, it is an opinion based upon an "Expert" whose methodologies have been openly disputed before the Second Circuit Court of Appeals. See *United States v. Morrison*, 153 F.3d 34 (2nd Cir. 1998) ("Bruce Koenig, an expert in forensic analysis of tape recordings... disputing Owen's methodology). Otherwise, Sever offers up the expert opinion report of Dave Mariasy of TEAM AUDIO, an forensic tape expert whose methodologies have not been openly disputed before the Second Circuit Court of Appeals. *Arguendo*, the defendants may not pick and choose statements from their report of the tape without allowing plaintiff Sever to more fully disclose the contents of said report. For example, see *United States v. Tarantino*, 846 F.2d 1384, 1411 (D.C. Cir. 1988) ("The opposing party may not pick and choose among prior statements to create an appearance of conflict and then object when this appearance is rebutted by means of a fuller version of the same prior statements.")

In response to defendants' allegations on page 6 of their opposition that "Second, the tape recording is privileged under the attorney-client privilege. See Memorandum of Law In Support of Defendants' Motion In Limine To Exclude Alleged Tape Recording, dated February 9, 2004", defendants' arguments here are refuted by this Court's Order of July 2, 2003, which states in pertinent part: "In the instant case, the Court concludes that the tape and it transcripts do not fall with in the protection of the attorney-client privilege".

In response to defendants' allegations on page 6 of their opposition that "At his deposition, Sever's attention was called to each statement and, for each, he was asked where the alleged false statement appeared in the recording. Sever's responses preclude a grant of summary judgment in this case", the tape speaks for itself.

In response to defendants' allegations on page 12 of their opposition that "Dr. Glickman's Declaration directly contradicts Sever's claim. Dr. Glickman states he first conceived of the invention in

8

1993 - four years before Sever ever saw the Supplier Patent;" it is implausible that defendants, being bound to their supplier [Tower, of Numed, Inc.] of a device, would sit on Glickman's alleged idea for about four years; only to seek out Sever to tell them that Glickman's alleged idea avoids the Tower patent. Sever regards this contention as yet another badge of fraud.

In reply to comments at top of page 1, re: "Sever…has admitted in deposition that he has no medical training;" Sever regards these of defendants' remarks as irrelevant. Moreover, defendants' implications here are inconsistent with the intent implied in Feldman's letter to Sever, dated May 18, 1997 wherein Feldman tasks Sever to "…preparing an opinion on designing around and avoiding the claims of the [Tower] patent." Thus, Feldman evidently regards Sever as competent to draft, and indeed invent, medical device applications.

## Conclusion

WHEREFORE, plaintiff, Frank Sever, Jr., respectfully requests that this Honorable Court grant Plaintiff's Motion for Summary Judgment Against Morton G. Glickman on the Issue of Liability, and in the Alternative, Plaintiff's Request Under Rule 56(d) for a Ruling that the Material Facts Stated Herein are Deemed Established Upon the Trial.

Respectfully submitted,

*/s/ Peter P. Mitrano*

Peter Paul Mitrano (admitted *pro hac vice*)
Ct. Fed. Bar No.: 23733
Suite 201
581 Boylston Street
Boston, Massachusetts 02116
(617) 236-5655

Local Connecticut Counsel:

Frank B. Velardi, Jr.
Ct. Fed. Bar No.: 07893
Lasala, Walsh, Wicklow & Velardi
168 Bradley Street

                                      Post Office Box 1302
                                      New Haven, Connecticut 06505-1302
                                      (203) 785-8929
                                      (203) 776-4663 (facsimile)

                                      Attorneys for Plaintiff
                                      Frank Sever, Jr.

Dated: April 8, 2004.

Certificate of Service

I hereby certify that I caused a copy of the foregoing Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment Against Morton G. Glickman on the Issue of Liability, and in the Alternative, Plaintiff's Request Under Rule 56(d) for a Ruling that the Material Facts Stated Herein are Deemed Established Upon the Trial to be deposited with the United States Postal Service, postage prepaid for first-class mail, on this 8th day of April 2004 addressed to Joseph L. Clasen, Esquire and James M. Ruel, Esquire, Robinson & Cole LLP, Financial Centre, 695 East Main Street, Post Office Box 10305, Stamford, Connecticut 06904-2305.

_____
Peter Paul Mitrano