# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT
### Hartford

FILED
2004 MAY 20 10: 53
U.S. DISTRICT COURT
HARTFORD, CT.

| | | |
|---|---|---|
| FRANK SEVER, JR., | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 3:02cv722 (AVC) |
| MORTON G. GLICKMAN, *et al.*, | ) | Date of this Pleading: May 19, 2004 |
| Defendants. | ) | |

**Plaintiff's Opposition to Defendants' Motion to Revoke *Pro Hac Vice* Admission**

Plaintiff, Frank Sever, Jr. (hereinafter sometimes referred to as "Sever"), by and through his undersigned attorneys, states Plaintiff's Opposition to Defendants' Motion to Revoke *Pro Hac Vice* Admission[1] as follows:

Based upon recent statements made by counsel for defendants related to the following information and further based upon recent events including but not limited to defendants' Motion to Revoke *Pro Hac Vice* Admission related to Peter Paul Mitrano (hereinafter sometimes referred to as "Mitrano"), plaintiff through Mitrano as a protective measure and out of an abundance of caution

---

[1] Pursuant to the Rules of the United States District Court for the District of Connecticut, plaintiff respectfully requests oral argument.

previously made the statement to this Court that when Peter Paul Mitrano was appearing without counsel in a personal domestic matter in the State of New Hampshire, the district court in Lebanon, New Hampshire entered an order dated January 11, 2001 that held Peter Paul Mitrano in contempt of court as follows:

> ". . . the Court finds Petitioner in contempt for removing the children from New Hampshire without seeking permission from the Court."

Peter Paul Mitrano notes that there were no court orders prohibiting Peter Paul Mitrano from removing said children from the State of New Hampshire.

Said district court in Lebanon, New Hampshire issued another order dated March 21, 2001 that states in part that:

> "The Court finds Mr. Mitrano in contempt for failing to enter a stipulation for a guardian . . . ."

Peter Paul Mitrano notes that Peter Paul Mitrano entered into said stipulation but stated that the same was under protest and the court then found Peter Paul Mitrano in contempt.

Said district court in Lebanon, New Hampshire issued another order dated December 10, 2002 that held Peter Paul Mitrano in contempt of court as follows:

> "The Petitioner is found in contempt for failure to pay any amount to the Respondent with respect to the support of the three minor children since the hearing of September 27, 2002."

Peter Paul Mitrano notes that Peter Paul Mitrano's position is that said court orders are void for lack of jurisdiction.

There is another matter that the defendants have threatened to base their said motion to disqualify upon which is required to be kept confidential at this time pursuant to Section 17 of Rule 11 of the District of Columbia Bar Rules.

Said district court in Lebanon, New Hampshire is an inferior court of limited jurisdiction without any authority to discipline an attorney. In *Mullen v. Canfield*, 105 F.2d 47, 48 (D.C. Cir. 1939), the court stated in part that:

> ". . . But the general rule seems to be that an inferior court of limited jurisdiction, without power to admit, cannot suspend or expel. Control over the privilege of practice before an inferior court is usually lodged elsewhere. A justice of the peace in California has no power to suspend an attorney from practice in his court. Baird v. Justice's Court of Riverside Tp., 11 Cal.App. 439, 105 P. 259. A Municipal Court in New York, **though it may adjudge an attorney in contempt for misconduct in its presence, 'cannot be supposed to have any power to discipline attorneys** for general misconduct or for violation of the canons of ethics.' Bloomingdale Bros., Inc., v. Hudson, 147 Misc. 759, 264 N.Y.S. 639, 641. The Criminal Court of St. Louis being, like the Police Court here, a court of inferior and limited jurisdiction, without power to license attorneys, has no power to disbar them from practice before it . . . ." (Citation omitted.) (Bold emphasis added.)

In *Ex parte Robinson*, 86 U.S. 505, 511-513 (1873), the Supreme Court stated in part that:

> "Whatever contempt was committed by the petitioner consisted in the tone and manner in which his language to the court was uttered. On this hearing we are bound to take the statements in that respect of the judge embodied in his order as true, for the question before us is not whether the court erred, but whether it had any jurisdiction to disbar the petitioner for the alleged contempt.

> "The law happily prescribes the punishment which the court can impose for contempts. The seventeenth section of the Judiciary Act of 1789 declares that the court shall have power to punish contempts of their authority in any cause or hearing before them, by fine or imprisonment, at their discretion. The enactment is a limitation upon the manner in which the power shall be exercised, and must be held to be a negation of all other modes of punishment. **The judgment of the court disbarring the petitioner, treated as a punishment for a contempt, was, therefore, unauthorized and void.**
>
> "The power to disbar and attorney proceeds upon very different grounds. This power is possessed by all courts which have authority to admit attorneys to practice. But the power can only be exercised where there has been such conduct on the part of the parties complained of as shows them to be unfit to be members of the profession . . The principle that there must be citation before hearing, and hearing or opportunity of being heard before judgment, is essential to the security of all private rights. Without its observance no one would be safe from oppression wherever power may be lodged." (Bold emphasis added.)

Also note that in the case of *In re Hahn*, 96 A. 589, 595 (N.J. 1916) the court stated: "As far as we know the power to punish for contempt is limited to fine and imprisonment, and does not extend to stripping a man of his means of gaining a living." Also see *In re O'brien's Petition*, 79 Conn. 46, 55, 63 A. 777, 780 (1906) ("To disbar an attorney is to deprive him of what, within the meaning of our constitutions of government, may fairly be regarded as property." (Citation omitted.)); *State* v. *Crosby*, 24 Nev. 115, 50 P. 127, 128 (1897) ("Admitting that the alleged conduct of relator was in contempt of the court-martial, had it the power to suspend or interrupt him in the exercise of his rights as a licensed attorney for such contempt? **We cannot so hold.**"

(Bold emphasis added.)); *Iowa State Bar Association* v. *Kraschel,* 148 N.W.2d 621, 625 (Iowa 1967) ("'A disciplinary proceeding is basically an inquiry into the fitness of a member of the bar, in the light of his conduct, to continue in the practice of the law.'" (Citation omitted.)); and, *In re Simmons,* 395 P.2d 1013. 1016 (Wash. 1964) ("A disciplinary proceeding is basically an inquiry into the fitness of a member of the bar, in the light of his conduct, to continue in the practice of the law. It is a special proceeding, neither civil nor criminal, incident to the inherent power of the court to control its officers. It is *sui generis.*" (Citation omitted.)).

In *Nault's Auto. Sales, Inc.* v. *American Honda Motor Co., Inc., Acura Auto. Div.*, 148 F.R.D. 25, 42 (N.H. 1993), the court stated in part that:

> "Nevertheless, before revoking the pro hac vice status of counsel from Lyon & Lyon, the Court must be persuaded of more. As the Tenth Circuit Court of Appeals has held:
>
> > Attorneys admitted pro hac vice are held to the same professional responsibilities and ethical standards as regular counsel. Once admitted, pro hac vice counsel cannot be disqualified under standards and procedures any different or more stringent than those imposed upon regular members of the district court bar.
>
> *United States v. Collins*, 920 F.2d 619, 626 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2022, 114 L.Ed.2d 108 (1991)."

Hence, Mitrano contends that Mitrano was not required to make a report to this Court that Mitrano was disciplined as a result the above-referenced contempt orders from the lower district court in Lebanon, New Hampshire.

Moreover, Mitrano further states that he has never been disciplined by any State Bar Association and/or State Bar.

*Arguendo*, the orders of the lower district court in Lebanon, New Hampshire were not lawful under Title 28, United States Code, Section 1738A. In other words, plaintiff states that said orders of the lower district court in Lebanon, New Hampshire are void as a matter of law. In *Tebbetts* v. *Tilton*, 31 N.H. 273, 291 (1855), the Supreme Court of the State of New Hampshire recognized the principle that an order is void if said order is not entered in accordance with the applicable statute and stated in part that:

> ". . . Incidentally, it will be seen that the judge of probates's decree of discharge must depend for its validity upon the fact that it can be shown as a matter of fact that all the estate has been expended in the modes prescribed by the statute. If any thing can be shown not to be so expended, the discharge will be void . . . ."

If this Court accepts the premise that said orders of the lower district court in Lebanon, New Hampshire are void as a matter of law, then any orders of contempt are not valid orders.

In order to reach a decision as to whether said orders of the lower district court in Lebanon, New Hampshire are void as a matter of law, plaintiff believes that this Court should study the legal reasoning stated in *Kempe's Lessee* v. *Kennedy*, 9 U.S. 173, 185 (1809), wherein the Supreme Court stated in part that:

> "All courts from which an appeal lies are inferior courts in relation to the appellate court before which their judgment may be carried; **but they are not therefore inferior courts in the technical sense of**

> **those words. They apply to courts of a special and limited jurisdiction, which are erected on such principles that their judgments, taken alone, are entirely disregarded, and the proceedings must show their jurisdiction . . . .**" (Bold emphasis added.)

In *McCormick* v. *Sullivant*, 23 U.S. 192, 199-200 (1825), the Supreme Court stated in part that:

> "But this reason proceeds upon an incorrect view of the character and jurisdiction of the inferior Courts of the United States. They are all of limited jurisdiction; **but they are not, on that account, inferior Courts, in the technical sense of those words, whose judgments, taken alone, are to be disregarded**. If the jurisdiction be not alleged in the proceedings, their judgments and decrees are erroneous, and may, upon a writ of error, or appeal, be reversed for that cause. **But they are not absolute nullities.** This opinion was strongly intimated, if not decided, by this Court, in the case of *Kempe's Lessee* v. *Kennedy*, (5 Cranch's Rep. 185.) and was, afterwards, confirmed by the decision made in the case of *Skillern's executors* v. *May's executors*, (6 Cranch's Rep. 267.) That suit came before this Court upon a writ of error, where the decree of the Court below was reversed, and the cause remanded for further proceedings to be had therein. After this, it was discovered by that Court, that the jurisdiction was not stated in the proceedings, and the question was made, whether that Court could dismiss the suit for that reason? This point, on which the Judges were divided, was certified to the Supreme Court, where it was decided, that the merits of the cause having been finally decided in this Court, and its mandate only requiring the execution of its decree, the Court below was bound to carry that decree into execution, notwithstanding the jurisdiction of that Court was not alleged in the pleadings. **Now, it is very clear, that, if the decree had been considered as a nullity, on the ground that jurisdiction was not stated in the proceedings, this Court could not have required it to be executed by the inferior Court.**" (Bold emphasis added.)

Thus, the Supreme Court has ruled that "**courts of a special and limited jurisdiction**" "**must show their jurisdiction**" or "**their judgments, taken alone, are entirely disregarded**". In other words, if a court (such as the instant New Hampshire state court) is of special and limited jurisdiction, its judgment is a nullity if the said court does not have jurisdiction.

Title 28, United States Code, Section 1738A(e) specifically prohibited the ex parte actions alleged to have been taken by the judges in the State of New Hampshire and states:

> "(e) Before a child custody or visitation determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child."

The judges in the State of New Hampshire knew or should have had knowledge of the above-quoted federal law. Said judges knew or should have had knowledge that they were bound to follow the above-quoted federal law. See *Coleman Bros. Corp.* v. *City of Franklin*, 58 F.Supp. 551, 554 (N.H. 1945) wherein the court stated:

> "The want of jurisdiction in any tribunal renders its proceedings void and when the want of jurisdiction is shown by the record and proceedings themselves, it may be taken advantage of at any time."

In *Rankin* v. *Howard*, 633 F.2d 844, 849 (9th Cir. 1980) *certiorari denied Zellar* v. *Rankin*, 451 U.S. 939 (1981), the court stated in part that:

> "But when a judge knows that he lacks jurisdiction, or acts in the face of clearly valid statutes or case law expressly depriving him of jurisdiction,

> judicial immunity is lost. See *Bradley v. Fisher*, 80 U.S. (13 Wall.) at 351 ('when the want of jurisdiction is known to the judge, no excuse is permissible'); *Turner v. Raynes*, 611 F.2d 92, 95 (5th Cir. 1980) (Stump is consistent with the view that 'a clearly inordinate exercise of unconferred jurisdiction by a judge-one so crass as to establish that he embarked on it either knowingly or recklessly-subjects him to personal liability'). (Footnote omitted.)
>
> "If, as alleged, Judge Zeller knew the jurisdictional allegations to be fraudulent, **or if valid Kansas statutes expressly foreclosed personal jurisdiction over a proposed ward in ex parte proceedings for temporary guardianship, then the judge acted in the clear and complete absence of personal jurisdiction.** If his acts were part of a conspiracy, he is properly held responsible for the consequences." (Bold emphasis added.)

Also see "NH Supreme Court Promises Due Process for Non-Offending Parents – Almost" by Paula Werme, September 30, 2000 (Concord, NH), wherein it is stated:

> ". . . [I]f the judge doesn't have any jurisdiction over the non-offending parent, and he knows it, and he continues to deny the parent the custody of the child, there is a strong possibility he will be now liable for denying them their civil rights under 42 U.S.C. §1983 . . . ."

In addition, the judges in the State of New Hampshire were judges of limited and inferior authority. At the very least, two of said judges are part time district court judges who also conduct a private practice of law on days when they do not act as judges. In *State* v. *Flynn*, 110 N.H. 451, 453, 272 A.2d 591, 593 (1970), the court stated in part that: "District courts, like municipal courts, are courts of special and limited jurisdiction which are not vested with as broad inherent powers as courts of superior and general jurisdiction.

(Citations omitted.)". Also see *Patterson* v. *Patterson*, 306 F.3d 1156, 1159 (1st Cir.) ("In New Hampshire, '[t]he probate court is not a court of general jurisdiction'") and *State* v. *Moquin*, 105 N.H. 9, 13, 191 A.2d 541, 544-545 (1963) where the dissent noted in part that:

> "Unlike the district courts of Massachusetts which are courts of 'general and superior jurisdiction' (citation omitted) . . . the municipal courts of New Hampshire have limited jurisdiction . . . ."

By way of background, note that the existing district courts in the State of New Hampshire were established in 1963. See 1963, Chapter 331, pages 696, 709 where it is stated in part that:

> "331:1 District Courts Established. Amend RSA by inserting after chapter 502 the following new chapter:
>
> . . .
>
> "502-A:34 District Courts; Functions of Municipal Courts Vested Therein. The district courts, except as otherwise provided therein, shall have the jurisdiction, powers and duties conferred upon municipal courts by the Revised Statutes Annotated, and amendments thereto.
>
> "502-A:35 Municipal Court Abolished; Exception. All municipal courts not continued as provided for in this section are hereby abolished . . . ."

Note that 1957, Chapter 244, page 292 states in part that:

> "592-A:6 Municipal Courts. Municipal courts have the powers of a justice of the peace and quorum throughout the state and have jurisdiction as provided in RSA 502:18."

Also note that the municipal courts were established in 1915. See 1915, Chapter 30, page 32, "AN ACT ESTABLISHING MUNICIPAL COURTS AND

ABOLISHING EXISTING POLICE COURTS". Also see 1913, Chapter 169, page 715, "AN ACT ESTABLISHING POLICE COURTS FOR CERTAIN DISTRICTS IN THE STATE OF NEW HAMPSHIRE AND ABOLISHING EXISTING POLICE COURTS".

Note that in *Randall* v. *Brigham*, 74 U.S. 523, 535-536 (1868), the Supreme Court stated in part that:

> ". . . In reference to judges of limited and inferior authority, it has been held that they are protected only when they act within their jurisdiction . . . ."

In *Bradley* v. *Fisher*, 80 U.S. 335, 351 (1871), the Supreme Court stated in part that:

> ". . . [T]hat with reference to judges of limited and inferior authority it had been held that they were protected only when they acted within their jurisdiction . . . ."

Said judges in the State of New Hampshire were judges of limited and inferior authority. In *Forrester* v. *White*, 484 U.S 219, 228 (1988), the Supreme Court noted that:

> ". . . As the *Bradley* Court noted: 'Against the consequences of [judges'] erroneous or irregular action, from whatever motives proceeding, the law has provided for private parties numerous remedies, and to those remedies they must, in such cases, resort.' Ibid . . . ."

In *Ableman* v. *Booth*, 62 U.S. 506, 517, 524 (1858), the Supreme Court stated:

> "The language of the Constitution, by which this power is granted, is too plain to admit of doubt or to need comment. It declares that 'this Constitution, and the laws of the United States which shall be passed in

pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land, and the judges in every State shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.'

. . .

". . . No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued; and an attempt to enforce it beyond these boundaries is nothing less than lawless violence."

In 1995, Chapter 152, pages 229-231, the subject existing family court in Lebanon, New Hampshire was established as a pilot program; however, as noted above, the district courts where the pilot program operated were still only courts of "**courts of a special and limited jurisdiction**" "**must show their jurisdiction**" or "**their judgments, taken alone, are entirely disregarded**". See 1995, Chapter 152, pages 229-231 wherein it is stated in part that:

"CHAPTER 152 (HB 657)

"AN ACT DIRECTING THE SUPREME COURT TO DESIGNATE ROCKINGHAM AND GRAFTON COUNTIES FOR A FAMILY DIVISION PILOT PROGRAM WITHIN THE JUDICIAL BRANCH AND TO ESTABLISH SUCH PROGRAM

"Be it Enacted by the Senate and House of Representatives in General Court convened:

"152:1 Purpose. The purpose of this act is to establish a family division pilot program in Rockingham and Grafton counties and any other designated family division location within the existing New Hampshire judicial branch.

"152:2 Jurisdiction. Notwithstanding any law to the contrary and for the purposes of this act, jurisdiction over the following matters shall be

> exclusively exercised through the family division as procedurally jurisdiction was previously exercised in the superior, district and municipal and probate courts:
>
> I. Petitions and libels of divorce, and petitions of nullity of marriage, alimony, custody of children, support, and to establish paternity.
>
> . . .
>
> IX. The termination of parental rights . . . .
>
> "152:3 Equity Jurisdiction. Notwithstanding any law to the contrary and for the purposes of this act, the family division shall have the powers of a court of equity in cases **where subject matter jurisdiction authority lies with the family division**. Suits in equity where subject matter jurisdiction authority lies with the family division including, but not limited to . . . custody of children . . .
>
> "152:4 . . .
>
> "(d) Matters arising in municipalities located within the Lebanon/Hanover district shall be heard in the Lebanon/Hanover district court . . . ." (Bold emphasis added.)

Again, *arguendo*, any decisions by the courts in the state of New Hampshire are void as a matter of law. By way of background, beginning since at least October 6, 2000, the subject children had lived their mother in the State of Vermont from at least 6:00 P.M. on Friday, October 6, 2000 until school started at approximately 8:00 A.M. on Monday, October 9, 2000 and from 6:00 P.M. on Friday, October 13, 2000 until school started at approximately 8:00 A.M. on Monday, October 16, 2000. Accordingly, when the mother filed a petition to modify a custody order in the State of New Hampshire on October 16, 2000 (and prior thereto), the children were living in both the State of Vermont and the State of New Hampshire.

The custody Order of the Circuit Court of Fairfax County, Virginia states in part that the parties "shall have joint physical and legal custody of their minor children". Thus, while the mother was exercising her joint physical and legal custody of their minor children and living in the State of Vermont, said minor children were living in the State of Vermont. Because the mother was living with the three children of the parties in the State of Vermont in October 2000 prior to the filing by the mother of her Ex Parte Petition to Bring Cause Forward and Modify on October 16, 2000, the State of New Hampshire was not a "home State" as defined by 28 U.S.C., 1738A(b)(4) on October 16, 2000. Accordingly, it is clear that the State of New Hampshire was not a "home State" of the children "on the date of the commencement of the proceeding". Also see 28 U.S.C., § 1738A(c)(2)(A)(i).

Mitrano left the State of New Hampshire by the end of day of December 20, 2000. There was no contestant (a "contestant" is defined as "a person, including a parent or grandparent, who claims a right to custody or visitation of a child") living in the State of New Hampshire at the end of day of December 20, 2000. Mitrano's daughter, Christina, had been unlawfully living with her mother in the State of Vermont. Mitrano's sons, Peter and Christopher, were living in the Commonwealth of Virginia with their plaintiff father until the defendant Kelly with the assistance of defendant Philips unlawfully took said boys from the Commonwealth of Virginia to the State of Vermont under defendant Kelly's right of visitation and failed to return said boys according to the custody Order of the Circuit Court of Fairfax County, Virginia. Accordingly,

after December 20, 2000, the State of New Hampshire no longer could even be considered a "home State" to pursuant 28 U.S.C., § 1738A(c)(2)(A)(ii) because no one was left in the State of New Hampshire.

Any orders issued by the State of New Hampshire after December 20, 2000 are clearly void for lack of subject matter jurisdiction. Title 28 U.S.C., § 1738A(c)(2)(A)(ii) requires that **"a contestant continues to live in such State"**. It is clear that no contestant continued to live in the State of New Hampshire after December 20, 2000 until at least the end of January 2001.

By and through violations of 28 U.S.C., § 1738A by the various States and the erroneous interpretations of 28 U.S.C., § 1738A by the various state courts, the mother has denied Mitrano his right to even see his minor children since January 5, 2001. In summary, the mother first violated 28 U.S.C., § 1738A(e) by obtaining an ex parte order on October 16, 2000 that in effect took away petitioner's daughter. This ex parte order was issued in the State of New Hampshire. Thereafter, on December 20, 2000, Mitrano believing that he was not going to obtain any justice in the State of New Hampshire, left the State of New Hampshire and moved into the Commonwealth of Virginia on December 21, 2000. On or prior to October 1, 2000, the mother had left the State of New Hampshire and moved into the State of Vermont. Therefore, at the end of the day of December 20, 2000, no one was left living in the State of New Hampshire. Pursuant to 28 U.S.C., § 1738A(c)(2)(A)(ii), the State of New Hampshire no longer had subject matter jurisdiction after December 20, 2000. Furthermore, on the date of the October 16, 200 order, the children had no

"home State" because the children had been living in both the State of Vermont and the State of New Hampshire. Accordingly, any orders from the State of New Hampshire after December 20, 2000 are void because of lack of subject matter jurisdiction. Thereafter, on January 3, 2001, the mother again violated 28 U.S.C., § 1738A(e) by obtaining another an ex parte order that in effect took away plaintiff's two sons. This ex parte order was also issued in the State of New Hampshire after the State of New Hampshire no longer had subject matter jurisdiction. Thereafter on January 5 and 8, 2001, the courts in the Commonwealth of Virginia refused to rule on the merits of two motions because of an alleged lack of notice, and erroneously stated that the void ex parte order dated January 3, 2001 from the State of New Hampshire, was a "facially valid custody order". The above is explained in more detail hereinafter.

Title 28, U.S.C., § 1738A states in pertinent part that:

> "(a) **The appropriate authorities of every State shall enforce according to its terms**, and shall not modify except as provided in subsections (f), (g), and (h) of this section, any custody determination or visitation determination made consistently with the provisions of this section by a court of another State." (Bold emphasis added.)

There is no dispute by and through the custody order of the Circuit Court of Fairfax County, Virginia, that the Commonwealth of Virginia "made a child custody or visitation determination" consistent "with the provisions of" 28 U.S.C., § 1738A. Section 20-108 of the Code of Virginia provides that the Commonwealth of Virginia shall continue to have jurisdiction over the custody order of the Circuit Court of Fairfax County, Virginia. Mitrano currently is a

resident of the Commonwealth of Virginia. The children's paternal grandparents, who are contestants, have been residents of the Commonwealth of Virginia since 1972. The Commonwealth of Virginia has continuing jurisdiction pursuant to 28 U.S.C., §§ 1738A(c)(2)(E) and 1738A(d). 28 U.S.C., § 1738A(d) states that:

> "(d) The jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant."

In *Thompson* v. *Thompson*, 484 U.S. 174 (1988) the Supreme Court ruled that 28 U.S.C., § 1738A is only a full faith and credit statute and does not create a federal right of action.

Also see *Meade* v. *Meade*, 650 F.Supp. 205, 210 (N.C. 1986), *affirmed* 812 F.2d 1473 (4th Cir. 1987), which was decided prior to *Thompson* v. *Thompson, supra,* wherein the court stated in part that:

> ". . . Thus North Carolina is under a federal duty to enforce the decree according to its terms and acted improperly in modifying Virginia's initial decree."

The Commonwealth of Virginia clearly had jurisdiction pursuant to 28 U.S.C., § 1738A at the time the custody order that is attached to the plaintiff's emergency petition for enforcement was issued. Mitrano therefore contends that the Commonwealth of Virginia had and has continuing jurisdiction based upon Mitrano's residence in the Commonwealth of Virginia and/or the paternal grandparents' residence in the Commonwealth of Virginia. See the discussions

about the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA) contained in 32 Family Law Quarterly 267, 342 (1998), wherein it is stated with reference to said Uniform Child-Custody Jurisdiction and Enforcement Act "that a remaining grandparent . . . should not suffice to confer exclusive, continuing jurisdiction". Contrary to said UCCJEA, 28 U.S.C., § 1738A clearly provides that a remaining grandparent does in fact suffice to confer exclusive, continuing jurisdiction.

On January 8, 2001, Mitrano after giving verbal notice to the attorney for the mother, filed an Emergency Petition for Enforcement of the Custody Order in the Circuit Court in Fairfax, Virginia. The court denied said petition. The trial judges stated in the Trial Judges' Corrected Statement of Facts Filed Pursuant to Rule 5:11 [Rules of Virginia Supreme Court]:

> "TRIAL JUDGES' CORRECTED STATEMENT OF FACTS FILED PURSUANT TO RULE 5:11
> "Come Now, Henry E. Hudson and Jane Marum Roush, Judges of this Circuit Court, and after review of the Petitioner's WRITTEN STATEMENT IN LIEU OF TRANSCRIPT, certifies as follows:
>
> 1. This case was heard on two occasions by separate judges of this Court on the Petitioner's motions for an emergency child custody hearing. In **neither instance did the trial judge conclude that a genuine emergency existed**, justifying an immediate hearing without customary notice to the Defendant.
>
> 2. On January 5, 2001, Petitioner presented a 'Petition for Emergency Order' to Judge Henry E. Hudson sitting in chambers. Telephone contact was made with counsel for the Defendant. Upon learning that the children in question had been in the jurisdiction for less than two weeks and that a **facially valid custody** order issued by a court in New Hampshire was in existence, the court denied the Petitioner's motion. The Petitioner presented no other emergent facts or

   circumstances, other than that the deadline for returning his children to the Defendant under the New Hampshire order was imminent. In essence, the Petitioner's motion was a request for change of custody. **The Court made no decision on the merits of that request.**

3. On January 8, 2001, the Petitioner appeared ex parte before Judge Jane Marum Roush, sitting in chambers, with a similar 'Emergency Petition for Enforcement of the Custody Order.' The petition had been denied earlier that afternoon by Judge Valentine of the Fairfax County Juvenile and Domestic Relations Court. Defendant's counsel was not notified by plaintiff that he was seeking relief from Judge Valentine's order in the Circuit Court. Judge Roush conferred with Judge Valentine and Judge Hudson and denied the Emergency Petition. Judge Roush advised plaintiff that New Hampshire had jurisdiction in this matter. Defendant's counsel was notified by telephone of Judge Roush's ruling. See Calendar Control Form dated January 8, 2001.

4. Aside from Petitioner's motions for emergency relief, no other motion for modification of custody has been filed in this Circuit Court. (Bold emphasis added.)

"The Clerk is requested to send copies of this certification to the Petitioner pro se and to counsel for the Defendant.

"Respectfully submitted this 7th day of March 2001.

__________/s/__________
Henry E. Hudson, Judge

__________/s/__________
Jane Marum Roush, Judge"

The courts in the Commonwealth of Virginia did not decline jurisdiction pursuant to 28 U.S.C., § 1738A(f)(2), the courts in the Commonwealth of Virginia only erroneously stated in dicta that New Hampshire had jurisdiction based upon a "facially valid custody order". Judge Hudson stated that he was