not going to read the pleadings Mitrano submitted with his petition and did not read said pleadings prior to denying Mitrano's petition. Note that contrary to the above statement that "Defendant's counsel was not notified by plaintiff that he was seeking relief from Judge Valentine's order in the Circuit Court", plaintiff did in fact in person verbally advise respondent's counsel, Christopher W. Schinstock, Esquire, immediately prior thereto that Mitrano was going to present said petition to the Circuit Court in Fairfax, Virginia.

Another case discussing this issue is *Clarke* v. *Clarke*, 126 N.H. 753, 755, 758, 496 A.2d 361, 363, 365 (1985), wherein the court stated:

> "Critical to our analysis of the issue of jurisdiction presented here is the recognition that this case involves modification of an existing custody order and not formulation of an initial decree. (Citations omitted.)
>
> ". . . Unless there has been a final order by an out-of-state court declining jurisdiction to modify its custody decree, the courts of New Hampshire will not assume jurisdiction to modify such a decree . . . ."

In addition to the trial court in the State of New Hampshire not following the above-quoted language from its own Supreme Court of New Hampshire, said trial court also ignored the language in *Howard* v. *Howard*, 124 N.H. 267, 273-274, 469 A.2d 1318, 1322 (1983) that temporary changes after a permanent change are not to granted absent exceptional cases. Said trial court also ignored its RSA 458-A:21 that required said trial court to obtain the court file of the original custody dispute in the Commonwealth of Virginia. The Supreme Court of Vermont committed error as a matter of law in interpreting 28 U.S.C.,

20

§ 1738A as to when subject matter jurisdiction was to be determined.  See the

reliance on *Rocissono* v. *Spkes*, 170 Vt. 309, 313, 749 A.2d 592, 596 (2000).

Moreover, the State of New Hampshire was not a "home State" on the

dates that the mother filed the petitions to modify the custody order from the

Commonwealth of Virginia because the children had been living in the State of

Vermont part of the time with the mother prior to the filing of the petitions.  In

*Neger* v. *Neger*, 93 N.J. 15, 32-33, 459 A.2d 628, 637-638 (1983), the court

stated:

> "As noted previously, the plaintiff and defendant
> had arranged for alternating physical custody of Carly
> .  .  .  . This record does not satisfy the statutory six-
> consecutive-month requirement.  Carly had not lived
> with her father in California for six consecutive
> months 'within six months before commencement of
> the proceeding' involving custody in the California
> court .  .  . A contention that Carly's absence from New
> Jersey was temporary and therefore should not be
> counted as part of a six-month period assumes that
> residing with her father was only a visit.  **However,
> the arrangement here was not truly characteristic
> of a visit, but consisted of fixed substantial periods
> of time in a regular alternating manner unrelated
> to holidays or vacations.  It is possible, of course,
> that there may be no home state**.  *See, e.g., In re the
> Marriage of Hubbard,* 315 N.W.2d 75 (Iowa 1982) (after
> Iowa divorce in 1976 in which mother was awarded
> custody of three children, mother and children moved
> so frequently before custody modification instituted in
> Iowa in 1979, that there was no 'home state')."  (Bold
> emphasis added.)

Also see *Johnson* v. *Johnson*, 26 Va. App. 135, 149, 493 S.E.2d 668, 675

(1997), wherein the court stated:

> "In    the    instant    case,    during    the    time
> immediately preceding both the divorce decree and the

> consent decree of December 1993, the child spent
> short periods alternatively with each parent, resulting
> in an equal division of her time between Virginia and
> New York. **At that time, the child had no single
> home state under the UCCJA definition . . . .**"
> (Bold emphasis added.)

In *St. Andrie* v. *St. Andrie*, 473 So.2d 140, 144 (La. 1985), the court also found

that the child had no home state when the child lived in two different states

pursuant to the agreement of the parents, the court explained the situation

and stated:

> "Analyzing the situation before the court under
> the 'home state' standard, during the six-month period
> prior to the institution of the custody proceeding . . .
> the child was in fact shuttled back and forth between
> Georgia and Louisiana every few months. Therefore, **it
> is clear that the child has no 'home state'**." (Bold
> emphasis added.)

*Also see* 45 Hastings L.J. 1329, 1344 (July 1994) wherein it is noted that "A

child in a joint custody situation might have two established homes."

The court ruled in *State Ex Rel. Conforti* v. *Wilson*, 203 W.Va. 21, 25, 506

S.E.2d 58, 62 (1998) that "[n]aturally, **as a federal jurisdictional statute**, the

PKPA preempts the UCCJA by virtue of the Supremacy Clause. (Citation

omitted)" (Bold emphasis added.) *Also see Shute* v. *Shute*, 158 Vt. 242, 247,

607 A.2d 890, 893 (1992), wherein the court ruled that the PKPA preempts the

UCCJA and/or the state statutes whenever there is a conflict between the same

as to which state has subject matter jurisdiction concerning child custody;

*Matter of Adoption of Child by T.W.C.*, 636 A.2d 1083, 1088 (N.J. 1994) ("The

jurisdictional requirements of the PKPA, of course, preempt those of the UCCJA if the acts are in conflict").

Because the State of New Hampshire was not a "home State" on the dates the petitions were filed by the mother, the interpretation of the following language contained in 28 U.S.C., 1738A(c)(2)(A) is critical:

> "(A)  such State (i) is the home State of the child on the date of the commencement of the proceeding, **or** (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, **and a contestant continues to live in such State**;" (Bold emphasis added.)

Note that in interpreting the language **"and a contestant continues to live in such State"**, a court must also consider the statute as a whole.  Note that the language is different than the words "on the date of the commencement of the proceeding" that are in the beginning of above-quoted language of 28 U.S.C., § 1738A(c)(2)(A).  Also note the difference in words contained in 28 U.S.C., § 1738A(d) that "such State remains the residence of the child or of any contestant".  Thus in interpreting the language **"and a contestant continues to live in such State"**, a court should find that the plain language of said words means that the State of New Hampshire no longer had jurisdiction when all the contestants stopped living in the State of New Hampshire.  In the *Matter of Guardianship of Walling*, 727 P.2d 586, 590 (Okl. 1986), the court discussed the language stated above and stated:

> "Paragraph 1.a also does not apply because the children were not in the state at the time the commencement of the proceeding.    Furthermore,

23

> paragraph 1.b is not applicable **because of the requirement of having a 'person acting as parent' continued to live in the state . . ."** (Bold emphasis added.)

Note that in discussions about the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA) contained in 32 Family Law Quarterly 267, 343 (1998), it is stated with reference to said Uniform Child-Custody Jurisdiction and Enforcement Act that:

> "If State A had jurisdiction under this Section [UCCJEA] at the time a modification proceeding was commenced there, it would not be lost by all parties moving out of the state prior to the conclusion of proceeding . . . ."

In comparison, the language of 28 U.S.C., § 1738A provides that jurisdiction is lost by all parties moving out of the state prior to the conclusion of the proceedings under 28 U.S.C., § 1738A(c)(2)(A)(ii).

Accordingly, any orders issued by the State of New Hampshire after December 20, 2000 would be void for lack of subject matter jurisdiction pursuant to 28 U.S.C., § 1738A. *Also see Badwell* v. *Brooks*, 141 N.H. 508, 512, 686 A.2d 1179, 1182 (1996) ("court's jurisdiction to award custody is purely statutory").

Note also that 28 U.S.C., § 1738A(c)(2)(B) does not apply because the Commonwealth of Virginia had prior jurisdiction under 28 U.S.C., § 1738A(c)(2)(A). Also see 32 Family Law Quarterly 267, 278 (1998), wherein it is stated:

> "In contrast, the PKPA seeks to limit the exercise of **initial custody jurisdiction** to the home state, if there is one. It does this **by prioritizing home state**

24

> **jurisdiction over significant connection jurisdiction**. [Footnote: 28 U.S.C. § 1738A(c)(2)(A) and (B).]" (Bold emphasis added.)

Also note that in the case of *In re Marriage of Leyda*, 398 N.W.2d 815, 819 (Iowa 1987), the court stated:

> ". . . The provisions of this federal legislation indicate a congressional intent that the act be applied in all interstate custody disputes. State courts considering the question have held the federal legislation preempts state law in determining when jurisdiction may be exercised in interstate custody matters. (Citations omitted.) **The federal statute uses language more specific than the UCCJA in limiting modification jurisdiction . . . .**" (Bold emphasis added.)

The interpretation of 28 U.S.C., § 1738A is a question of law. The State of New Hampshire clearly did not have subject matter jurisdiction to modify the custody order from the Commonwealth of Virginia. The language of 28 U.S.C., § 1738A provides clearly that the trial court in the State of Vermont must enforce the custody order from the Commonwealth of Virginia. In *Eichelberger v. Eichelberger*, 2 Va.App. 409, 412, 345 S.E.2d 10, 12 (1986), the court ruled:

> "Once a court has ruled on matters relating to the custody and care of minor children, and visitation rights of the noncustodial parent, the court retains jurisdiction throughout the minority status of the child involved. Andrews v. Geyer, 200 Va. 107, 104 S.E.2d 747, 751 (1958) . . . ."

It is important to note that the mother has wrongfully failed to return the two boys to Mitrano after her scheduled visitation ended on Monday, January 8, 2001. Mitrano has not seen any of his minor children since January 5, 2001.

As the court stated in *Johnson* v. *Johnson*, 26 Va. App. 135, 146, 149, 493

S.E.2d 668, 673, 674 (1997):

> "A party must obey an existing custody order until a modification order supersedes it. '[T]he custody decree is conclusive as to all issues of law and fact decided and as to the custody determination made unless and until that determination is modified pursuant to law.' Code § 20-135.
>
> ". . . Here mother violated a custody agreement by wrongfully retaining her child after her period of physical custody concluded.  In both cases, **the violating parent gained a 'tactical advantage by his conduct.'**" (Citation omitted.)  (Bold emphasis added.)

*Arguendo*, even if New Hampshire had jurisdiction under 28 U.S.C., § 1738A

(which Mitrano steadfastly denies), the ex parte New Hampshire order dated

January 3, 2001 that dealt with Mitrano's two sons would be void because no

notice whatsoever was given as required under 28 U.S.C., § 1738A.  28 U.S.C.,

§ 1738A(e) states:

> "(e)  Before a child custody or visitation determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child."

In addition, as of January 3, 2003, the State of New Hampshire had not had

any contact with the Commonwealth of Virginia prior to the entry of any orders

that the State of New Hampshire had entered.  See *Ex Parte Raywood*, 549

So.2d 103, 104 (Ala. 1989) wherein the court stated: "we find that the

Louisiana ex parte order was not made consistently with the PKPA and is not

entitled to full faith and credit by the courts of Alabama"; also *see Joel M.* v.

*Karen M.*, 507 N.Y.S.2d 369, 371 (1986) wherein the court stated:

> "The sole issue presented in this enforcement
> proceeding is whether or not the Superior Court of the
> State of New Hampshire in making the ex parte
> temporary order of custody was exercising jurisdiction
> substantially in conformity with the PKPA and UCCJA.
> Because neither the respondent-mother nor the
> respondent-maternal grandmother who has physical
> custody of the children were afforded any notice
> whatsoever—much less an opportunity to be heard,
> this Court holds and determines that the New
> Hampshire ex parte order dated October 2, 1986 is not
> entitled to full faith and credit under the PKPA or the
> UCCJA. (See *Sherry Ann F.* v. *Bennet S.*, 131 Misc.2d
> 854, 502 N.Y.S.2d 383 (Fam.Ct., Scho.Co., 1986))."

Accordingly, because it is clear that the ex parte New Hampshire order dated

January 3, 2001 is not entitled to full faith and credit under 28 U.S.C., §

1738A (even if New Hampshire had jurisdiction under 28 U.S.C., § 1738A

which Mitrano steadfastly denies), the mother wrongfully failed to return the

two boys after her scheduled visitation to Mitrano on Monday, January 8,

2001.

Because the ex parte New Hampshire order dated January 3, 2001 is not

entitled to full faith and credit under 28 U.S.C., § 1738A, the trial court in the

Commonwealth of Virginia erred in ruling that said New Hampshire order dated

January 3, 2001 should be followed.

Note that in *Mebert* v. *Mebert*, 444 N.Y.S.2d 834, 837 (1981), the court

emphasized that the jurisdictional requirements must be met:

> "It is true that even though the Supreme Court
> had both the personal jurisdiction necessary to enter a
> decree of divorce, it may have lacked the subject

27

matter jurisdiction necessary to make a custody determination. (Citation omitted.)

". . . From its plain meaning of the statute (Citations omitted) **this court must conclude that under the federal law the best interest of the child can not be looked at in a custody matter unless the jurisdictional prerequisites set forth in the federal statute are met**, including the requirement that the child 'immediately preceding the time involved' must have lived in this state with one of its parents for at least six consecutive months.    (Citation omitted.) (Bold emphasis added.)

In another case involving the interference of a parent's right to custody, the court in *D & D Fuller CATV Const., Inc.* v. *Pace*, 780 P.2d 520, 523, 524-525 (Colo. 1989) stated in part that:

"As previously stated, respondent's complaint alleges that petitioners '[i]ntended to assist, and actually assisted the abduction of Jerritt Pace by Leamon C. Pace, Jr., and intended to prevent, and actually prevented, the return of Jerritt to his mother and home in Jefferson County, Colorado.' Because this court has not previously done so, we must now decide whether it is a tortious act in Colorado to cause a minor child to leave a parent who is legally entitled to custody of the child when the parent does not consent, or to prevent a child's return to such parent. **We conclude that such conduct constitutes a tortious act.**" (Bold emphasis added.)

"Having determined that the allegations in the complaint amount to an allegation of tortuous conduct, we next examine whether the tort occurred in Colorado . . . Here, the mother is a Colorado resident. Jerritt also resided in Colorado, and would still reside here if he had not been abducted from this state and prevented from returning.  The mother is entitled to legal custody of her son pursuant to a Colorado court order.  Thus, the injury resulting from petitioners' action manifests itself in Colorado.  We have held that, for purposes of the long-arm statute, tortuous conduct

in a foreign state which causes injury in Colorado may
be deemed to be an act committed in Colorado so as to
satisfy the long-arm statute.    (Citations omitted.)
Accordingly, these allegations constitute a prima facie
showing of a tortuous act within the state for purposes
of long-arm jurisdiction."

.        .        .

"The United States Supreme has addressed the
issue of what contacts are necessary to satisfy due
process in the context of an intentional tort .    .    .
(Citation omitted.)    [T]he Court approved an 'effects'
test and held that where a defendant's intentional, and
allegedly tortuous, actions, taken outside the forum,
are expressly directed at causing a harmful effect
within the forum state, a sufficient nexus exists
between the defendant and the state so as to satisfy
due process. (Citations omitted.) .  .  .  ."

In the instant action the defendants are utilizing information made
public by and through Mitrano's tragic child custody battle to attempt to
disqualify him in the instant litigation.  Note that Mitrano steadfastly maintains
that said orders of the lower district court in Lebanon, New Hampshire are void
as a matter of law.  The Second Circuit has stated in *Bobal* v. *Rensselaer
Polytechnic Institute*, 916 F.2d 759, 764-765 (2nd Cir. 1990) that:

"Finally, Bobal's contention that appellee's
counsel must be disqualified lacks merit.  A failure to
disqualify counsel will be overturned only upon a
showing that the district court abused its discretion.
Hull v. Celanese Corp., 513 F.2d 568, 571 (2d
Cir.1975).  As we have previously explained,

[D]isqualification has been ordered
only in essentially two kinds of cases:  (1)
where an attorney's conflict of interests in
violation of Canons 5 and 9 of the Code ...
undermines the court's confidence in the
vigor of the attorney's representation of his
client, ... or more commonly (2) where the
attorney is at least potentially in a position

29

> to use privileged information concerning the other side through prior representation....
>
> *Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979) (citations and footnotes omitted)."

In *Glueck* v. *Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2nd Cir. 1981), the court

stated in part that:

> "Recognizing the serious impact of attorney disqualification on the client's right to select counsel of his choice, we have indicated that such relief should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint. *Armstrong v. McAlpin*, 625 F.2d 433, 444-46 (2d Cir. 1980) (en banc), vacated on other grounds and remanded, --- U.S. ----, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981); *Board of Education v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)."

In *Evans* v. *Artek Systems Corp.*, 715 F.2d 788, 791-792 (2nd Cir. 1983), the

court stated in part that:

> "The objective of the disqualification rule is to 'preserve the integrity of the adversary process,' *Board of Education of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979). However, while we have not hesitated to disqualify counsel when the circumstances warranted it, we have also noted that 'there is a particularly trenchant reason for requiring a high standard of proof on the part of one who seeks to disqualify his former counsel, for in disqualification matters we must be solicitous of a client's right freely to choose his counsel--a right which of course must be balanced against the need to maintain the highest standards of the profession.' *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 739 (2d Cir.1978). We have also noted that disqualification motions 'are often interposed for tactical reasons,' and that 'even when made in the best of faith, such motions inevitably cause delay.' *Board of Education v. Nyquist*,

*supra,* 590 F.2d at 1246 (2d Cir.1979); see *Allegaert v. Perot,* 565 F.2d 246, 251 (2d Cir.1977)."

WHEREFORE, plaintiff, Frank Sever, Jr., respectfully requests that this Honorable Court deny defendants' Motion to Revoke *Pro Hac Vice* Admission.

Respectfully submitted,

Peter Paul Mitrano (admitted *pro hac vice*)
Ct. Fed. Bar No.: 23733
Suite 201
581 Boylston Street
Boston, Massachusetts  02116
(617) 236-5655


Local Connecticut Counsel:


Frank B. Velardi, Jr.
Ct. Fed. Bar No.: 07893
Lasala, Walsh, Wicklow & Velardi
168 Bradley Street
Post Office Box 1302
New Haven, Connecticut  06505-1302
(203) 785-8929
(203) 776-4663 (facsimile)

Attorneys for Plaintiff
Frank Sever, Jr.

Dated: May 19, 2004.

## Certificate of Service

I hereby certify that I caused a copy of the foregoing Plaintiff's Opposition to Defendants' Motion to Revoke *Pro Hac Vice* Admission to be deposited with the United States Postal Service, postage prepaid for first-class mail, on this 19th day of May 2004 addressed to Joseph L. Clasen, Esquire and James M. Ruel, Esquire, Robinson & Cole LLP, Financial Centre, 695 East Main Street, Post Office Box 10305, Stamford, Connecticut 06904-2305.

Peter Paul Mitrano