# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT
# Hartford

FRANK SEVER, JR.,                )
                                 )
        Plaintiff,           )
                                 )
v.                               )   Civil Action No.   3:02cv722 (AVC)
                                 )
MORTON G. GLICKMAN, et al.,      ) Date of this Pleading: September 16, 2002
                                 )
        Defendants.          )

## Plaintiff's Objections and Answers to Defendants' First Set of Interrogatories

Plaintiff, Frank Sever, Jr., by and through his undersigned attorneys, states Plaintiff's Objections and Answers to Defendants' First Set of Interrogatories as follows:

The information supplied in these objections, responses and/or answers is not based solely on the knowledge of the answering party, but includes the knowledge of the party, agents, representatives and attorneys, unless privileged. The word usage in the sentence structure may be that of the attorney assisting in the preparation of these objections and/or answers, and thus does not necessarily purport to be the precise language of the answering party. These objections and/or answers are made subject to the absolute privilege and right of the answering party to amend.

1

## General Objections

Plaintiff objects to defendants' interrogatories being continuing to the extent the same is not required by the Federal Rules of Civil Procedure.

Plaintiff further objects to defendants' statement that the answers to the interrogatories shall be served at the offices of Joseph L. Clasen, Esq., Robinson & Cole LLP, 695 East Main Street, Stamford, Connecticut 06901.

Plaintiff further objects to paragraphs numbered A, B, C and J of the Instructions to defendants' interrogatories as being unduly burdensome and overly broad.

## Objections and Answers to Interrogatories

Interrogatory No. 1:

1.  State the basis for Plaintiff's decision not to appeal the interference decision of the Patent and Trademark Office in the manner required by the statute.

Objection:

The interrogatory is objected to on the grounds of the attorney work product doctrine and on the grounds that it requests information beyond that stated in Rule 26(b)(3) of the Federal Rules of Civil Procedure which states:

> "(3) *Trial Preparation: Materials.* Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other

> party's representative (including that other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

Interrogatory No. 2:

2. Identify each person having personal knowledge of the facts in this case including but not limited to each person who will corroborate or contradict Plaintiff's allegation that the invention was made by Plaintiff.

Answer:

Defendant Feldman has personal knowledge of the facts that the invention was made by Frank Sever, Jr. and indicates that I made the invention on the tape. By the time that the facts giving rise to the instant cause of action occurred, I had known defendant Feldman for a sufficient time to know that defendant Feldman was (1) corrupt; and, (2) probably predictable. I anticipated that there was a chance that defendant Feldman would claim my invention in the name of his client defendant Glickman. I think that defendant Feldman will either contradict my version of the facts or stand on the Fifth amendment and not incriminate himself any further.

At that time, about mid-to-late August 1997, I shared these suspicions with Gregory A. Heller, Esquire, a friend that I had known through working at the United States Patent and Trademark Office. Therefore, Gregory A. Heller, Esquire has personal knowledge of the facts that the invention was made by Frank Sever, Jr. I think that Gregory A. Heller, Esquire will corroborate my version of the facts. I was not careful enough about exactly documenting the exact dates of the individual events.

Thomas P. Pavelko, Esquire suggested that I file the interference. I am not sure when I told him the facts. I think he may have known the same from about mid-to-late August 1997. I would think that Thomas P. Pavelko, Esquire would corroborate my version of the fact or claim failure to remember.

I related the invention at about mid-to-late August, 1997 to my wife, Deborah Sever. Therefore, Deborah Sever has personal knowledge that the invention was made by Frank Sever, Jr. She will corroborate my version of the facts.

I have personal knowledge of the facts that the invention was made by Frank Sever, Jr.

Interrogatory No. 3:

3. Describe, in detail, the nature of and the computation of Plaintiff's damages.

Answer:

4

The instant invention was made to replace the device of United States Patent 5,161,773 to Tower. In their article "At a Glance," published by Redington, Inc., defendant Delcath made the following disclosures. Defendant Delcath based its business model upon the following assumptions. FDA approval of Phase III trials is expected at the end of year 2002. Based solely upon the treatment of terminal liver cancer patients (presumably the system is equally applicable to the treatment of other forms of cancer), defendant Delcath expects to treat 2000 patients in the first two years (years 2003 and 2004) and 5400 patients in the third year after FDA approval (year 2005). Thus, the expected total for the first Three (3) years of operation is 9400 patients treated. United States Patent 5,897,533 to defendant Glickman was filed on September 2, 1997. The end of its term expires (1997 + 20) on September 2017. After 2005, twelve (12) years of the patent's term will remain. Conservatively assuming that the number of patients treated after year 2005 levels out at about 5400 per year, then the number of patients treated for that period will be 64,800 patients (5400 x 12). Thus, the total of number during the entire term of the patent would be 74,200 (64,800 + 9400).

The device disclosed in United States patent 5,161,773 issued to Allen J. Tower of Numed, Inc., is the same device that the device of the instant invention is intended to replace. Based upon a conversation that plaintiff had with Allen J. Tower of Numed Corp., Mr. Tower advised plaintiff that the device of United States Patent 5,161,773 could sell for up to $1,000.00. Plaintiff was further advise by Mr. Tower that One (1) such device would be required for

5

each kit produced by defendant Delcath. As noted above, four (4) kits are required for every patient. Based upon the treatment of 74,200 patients, a total 296,800 will be sold. Assuming that the device of the instant invention will sell for at least as much as the device of the Tower invention, the total amount of money earned over the term of the invention could be up to $296,800,000.00 (296,800 x 1,000).

In addition, there is also an ultra-conservative value predicated upon the sale of the invention being included in the Delcath system based on the Delcath Business Model, for example, assume that a Delcath system price is approximately $4,000.00 and that the minimum price as a component of said $4,000.00 for the invention is $50.00; assume that 16,000 Delcath systems are sold during the first two years of marketing commencing in 2004 and that an additional 21,000 Delcath systems are sold per year thereafter, assume that the life of the patent of the subject invention will end in 2017, and therefore assume that there could be at least 268,000 Delcath systems sold during the life of the patent; based on the above-stated minimum component price of $50.00 per invention times said 268,000, the total price of the invention as a component of the Delcath systems sold is the total sum of at least $13,400,000.00 (before any present value calculations) over the life of the patent. Assuming that the legitimate costs to manufacturer the invention are 50 percent of the price, the total value of the invention is at least $6,700,000.00 (before any present value calculations).

6

The projected value of the invention based upon the above-stated assumptions (reduced to present value assuming a two percent discount rate after adjusting for inflation) is calculated as follows:

| Year | Discount Factor | | | Payment | | Present Value |
|---|---|---|---|---|---|---|
| 2002 | | | | $0.00 | = | $0.00 |
| 2003 | $(1/(1+0.02))^1$ | = | 0.9803 x | $0.00 | = | $0.00 |
| 2004 | $(1/(1+0.02))^2$ | = | 0.9611 x | $200,000.00 | = | $192,220.00 |
| 2005 | $(1/(1+0.02))^3$ | = | 0.9423 x | $200,000.00 | = | $188,460.00 |
| 2006 | $(1/(1+0.02))^4$ | = | 0.9238 x | $525,000.00 | = | $484,995.00 |
| 2007 | $(1/(1+0.02))^5$ | = | 0.9057 x | $525,000.00 | = | $475,492.50 |
| 2008 | $(1/(1+0.02))^6$ | = | 0.8880 x | $525,000.00 | = | $466,200.00 |
| 2009 | $(1/(1+0.02))^7$ | = | 0.8706 x | $525,000.00 | = | $457,065.00 |
| 2010 | $(1/(1+0.02))^8$ | = | 0.8535 x | $525,000.00 | = | $448,087.50 |
| 2011 | $(1/(1+0.02))^9$ | = | 0.8368 x | $525,000.00 | = | $439,320.00 |
| 2012 | $(1/(1+0.02))^{10}$ | = | 0.8203 x | $525,000.00 | = | $430,657.50 |
| 2013 | $(1/(1+0.02))^{11}$ | = | 0.8043 x | $525,000.00 | = | $422,257.50 |
| 2014 | $(1/(1+0.02))^{12}$ | = | 0.7885 x | $525,000.00 | = | $413,962.50 |
| 2015 | $(1/(1+0.02))^{13}$ | = | 0.7730 x | $525,000.00 | = | $405,825.00 |
| 2016 | $(1/(1+0.02))^{14}$ | = | 0.7579 x | $525,000.00 | = | $397,897.50 |
| 2017 | $(1/(1+0.02))^{15}$ | = | 0.7430 x | $525,000.00 | = | $390,075.00 |

Total present value of invention of at least the sum of   =   $5,612,515.00

Total punitive damages claimed of at least the sum of   =   $5,000,000.00

Grand total damages of at least the sum of   =   $10,612,515.00