# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT
## Hartford

| | |
|---|---|
| FRANK SEVER, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.  3:02cv722 (AVC) |
| ) | |
| MORTON G. GLICKMAN, *et al.*, ) | Date of this Pleading: July 8, 2004 |
| ) | |
| Defendants. ) | |

**Plaintiff's Memorandum in Support of Plaintiff's Motion in Limine to Exclude Expert Testimony as to Matters of Law**

Plaintiff, Frank Sever, Jr. (hereinafter sometimes referred to as "Sever"), by and through his undersigned attorneys, states Plaintiff's Memorandum in Support of Plaintiff's Motion in Limine to Exclude Expert Testimony as to Matters of Law[1] as follows:

In Defendants' Revised Submissions to Joint Trial Memorandum (Paper No. 111 on the docket summary of the instant case), defendants have listed the following person as expert witnesses:

> "Peter Berger
> Lenesohn, Lerner, Berger & Langsam
> 757 Third Avenue, 25th Floor
> New York, New York 10017

---

[1] Pursuant to the Rules of the United States District Court for the District of Connecticut, plaintiff respectfully requests oral argument.

1

Will testify about the role and duties of a patent attorney, the patent search process and the patent application process.

James Trowbridge
Quinnipiac University School of Law
275 Mt. Carmel Avenue
Hamden, Connecticut 06518
Will testify about the ethical duties of an attorney with regard to his client, the ethical limits on an attorney's conduct in dealing with other attorneys, the standard of care for attorneys and their fiduciary duties, including handling of work product and confidential information.

Eugene C. Rzucidlo
Greenberg Traurig LLP
885 Third Avenue
New York, New York
Will testify about interference proceedings before the U.S. Patent Office and the Board of Patent Appeals and Interferences."

Sever respectfully contends that these "expert" witnesses are proffered by the defendants for improper purpose[s]: "to usurp the function of the [trial] judge" and "to instruct the jury as to the applicable principles of law". Accordingly, Sever hereby objects to the above-listed alleged "experts" testifying at the trial in this action. See generally *Marx & Co.* v. *Diners' Club Inc.*, 550 F.2d 505 (2nd Cir. 1977). See also Rule 702 of the Federal Rules of Evidence, entitled: "Testimony by Experts" which states:

> "**RULE 702.   TESTIMONY BY EXPERTS**
> "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the

2

witness has applied the principles and methods reliably to the facts of the case."

Sever requests this Court's attention to the notes to Rule 702 of the Federal Rules of Evidence which states in part that:

> "While much expert testimony now presented is illuminating and useful, much is not. Virtually all is expensive, if not to the proponent then to adversaries. Particularly in civil litigation with high financial stakes, large expenditures for marginally useful expert testimony has become commonplace. **Procurement of expert testimony is occasionally used as a trial technique to wear down adversaries.** In short, while testimony from experts may be desirable if not crucial in many cases, excesses cannot be doubted and should be curtailed." (Bold emphasis added.)

It is basic patent law that a patent application must be filed in the name of the inventor. No amount of expert testimony is going to change this basic principle of law. See *Kaempe* v. *Myers*, 367 F.3d 958, 960 (D.C. Cir. 2004) wherein the court stated in part that:

> "A patent application must be filed with the PTO in the name of the inventor or joint inventors of the subject invention. *See* 35 U.S.C. §§ 111(a)(1), 116 (2000)."

In *Wende* v. *Horine*, 191 F. 620, 622 (Ill. 1911), the court stated in part that:

> ". . . [R]equire an application by the inventor— and this regardless of whether the inventor has parted with title to the invention or not, and notwithstanding he may even have taken steps to have the patent issue to his assignee when granted . . . The applicant is the person who files the application; the only person authorized under the circumstances here presented to file the application is the inventor. The statute makes no provision under the circumstances of this case for the substitution of the name of the assignee as applicant."

3

Also see *Toner* v. *Sobelman*, 86 F.Supp. 369, 380 (Penn. 1949) ("In addition to his common law rights, an inventor has the inchoate privilege . . . to file an application for a patent of his invention.  Hendrie v. Sayles, 98 U.S. 546 . . . Gayler v. Wilder, 10 How. 477, 13 L.Ed. 504.").

As the court explained in *Milton* v. *Kingsley*, 7 App. D.C. 531, 535 (1896), rehearing denied, this case is not about determining priority between two inventors, it is about deciding which of two persons is the true inventor:

> "As appears from the statement of the case, the controversy here does not seem to be between two independent inventors, operating at the same time in the same field of invention without knowledge of each other.  The question at issue is simply which party procured from the other the idea of the invention.  For under the circumstances of the case the reduction to practice might be regarded as the reduction to practice of either contestant, and should undoubtedly inure to the benefit of the one who generated the idea."

Moreover, as the court further explained in its ruling denying the petition for rehearing in *Milton* v. *Kingsley*, 7 App. D.C. 531, 540-541 (1896), rehearing denied, when one person steals the invention of another person, there is no issue of priority:

> ". . . **If one man has appropriated the invention of another and claims it as his own, there can properly be no question of priority of invention or of prior inventor.  There is but one invention and one inventor; and the other is simply a claimant without right.**  Yet it is not to be supposed that the rivals claims of such parties do not constitute a proper subject for interference proceedings in the Patent Office.  The records of the Patent Office are full of such cases; but the statute does not specify them, for the reason that *prima facie* each claimant is to be presumed an inventor, and therefore to be recognized as a contestant on the

> question of priority of invention. Assuredly it does not follow, that, when in interference proceedings a claim *prima facie* entitled to be considered on its merits is found to be wholly baseless, we must still regard the claimant as an inventor and his opponent as the prior inventor. **There is only one inventor in such case; and, in the proper sense, there can be no question whatever of priority** . . . ." (Bold emphasis added.)

Accordingly, pure and simple, all the arguments from the defendants do not change the premise that any issues of priority are irrelevant to the primary issue in this instant action, that is, did the defendants steal the subject invention? The bottom line is that what happen before the United States Patent and Trademark Office is irrelevant in determining whether the defendants stole the subject invention. The reason for this is that, with all due respect to the United States Patent and Trademark Office, the United States Patent and Trademark Office is one of those remaining "ivory towers" where it is just accepted and presumed that the registered patent attorneys practicing before the United States Patent and Trademark Office are honest and trustworthy. Note that when Sever bluntly informed the United States Patent and Trademark Office that one of the parties to this lawsuit was a liar and a thief, the United States Patent and Trademark Office while admitting that one of the parties to this lawsuit was dishonest, took no action to determine which party to this lawsuit was dishonest.[2]

---

[2] See pages 10 and 11 of the transcript of the proceedings of October 16, 2001 before the United States Patent and Trademark Office Before the Board of Patent Appeals and Interferences in Patent Interference Number 104,722 wherein it was stated in part that:

In *Herbert* v. *Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996), the court noted that trial courts should be more careful and not allow alleged patent law experts to misstate patent law and stated in part that:

> "We take note of the extent to which the incorrect law was announced by a patent law expert witness. We encourage exercise of the trial court's gatekeeper authority when parties proffer, through experts, not only unproven science, *see Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), but markedly incorrect law. Incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories."

> "MR. MITRANO: No, it's fraud if - - that's fraud. If someone committed fraud - -
> "JUDGE TORCZON: But let's - - a million monkeys typing for a million years produce the same thing. Let us assume for the sake of argument that both the schoolboys serendipitously came up with the exact same essay, okay. Then there's no fraud.
> "MR. MITRANO: Yeah, but I contend that on a 26-page document, that's statistically impossible.
> "JUDGE TORCZON: Fine. Then let us assume for the sake of argument that Sever cannot establish that Glickman copied. In fact, for all we know, Glickman's the wrong party here. Then how would there be any case for fraud against Glickman?
> "MR. MITRANO: Well, okay. Let's take what you said. One of the parties, it's clear, I think, committed fraud here.
> "JUDGE TORCZON: And it's a coin toss. So how - -
> "MR. MITRANO: I don't think it's a coin toss."

Most enlightening, rather than address the issue of which party to this lawsuit committed fraud related to the subject invention, the United States Patent and Trademark Office basically attacked the messengers by criticizing Sever and his counsel for identifying defendant Glickman as a liar and thief. See the decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences in Patent Interference Number 104,722 of November 2001.

Also note that in *Patent Litigation; Procedure & Tactics*, Horwitz, Horwitz, Volume 2, § 7.01, Experts, it is stated in part that:

> ". . . There is considerable room for doubt as to the admissibility of opinion testimony concerning the file wrapper, for it can be questioned whether its contents are subject to amplification or explanation by extrinsic evidence. Certainly no one is competent to opine as to the attitude or state of mind of the patent examiner as reflected by his communications, or the attitude or state of mind of the applicant as reflected by his arguments. In other respects, the issues involved in Patent Office proceedings would appear to be essentially legal in nature, as to which expert testimony would invade the province of the court . . . ."

Furthermore, in *Hygh* v. *Jacobs,* 961 F.2d 359, 363 (2nd Cir. 1992), the court explained that expert testimony that expresses a legal conclusion should be excluded and stated in part that:

> "This circuit is in accord with other circuits in **requiring exclusion of expert testimony that expresses a legal Conclusion**. *See United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988); *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985); *Strong v. E.I. DuPont de Nemours Co.*, 667 F.2d 682, 685-86 (8th Cir. 1981); *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 510-12 (2d Cir.), *cert. denied*, 434 U.S. 861, 54 L. Ed. 2d 134 , 98 S. Ct. 188 (1977). As several courts have already done, *see Torres*, 758 F.2d at 150; *Strong*, 667 F.2d at 686, we invoke the advisory committee note's illuminating distinction between admissible and excludable versions of an expert's opinion testimony:
> Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in manner of the oath-helpers of an earlier day. They also stand ready to

7

exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, 'Did T have capacity to make a will?' would be excluded, while the question, 'Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?' would be allowed.

Fed. R. Evid. 704 advisory committee's note (emphasis added); *see also Scop*, 846 F.2d at 142 (opinion that defendant acted as a 'steerer' would be legitimate under Rule 704, but testimony that defendant 'possessed narcotics . . . with the intent to sell' would not).

Even if a jury were not misled into adopting outright a legal Conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard--explicit or implicit-- to the jury. *See Andrews v. Metro N. Commuter R.R.*, 882 F.2d 705, 709 (2d Cir. 1989); *FAA v. Landy*, 705 F.2d 624, 632 (2d Cir.), *cert. denied*, 464 U.S. 895, 104 S. Ct. 243, 78 L. Ed. 2d 233 (1983). Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the Judge in the function of instructing the jury. As we stated in *Marx*:

The basis of expert capacity, according to Wigmore (§ 555), may 'be summed up in the term 'experience.' But experience is hardly a qualification for construing a document for its legal effect when there is a knowledgeable gentleman in a robe whose exclusive province it is to instruct the jury on the law. The danger is that the jury may think that the "expert" in the particular branch of the law knows more than the Judge--surely an inadmissible inference in our system of law. *Marx*, 550 F.2d at 512; *see also Specht v. Jensen*, 853 F.2d 805, 808-09 (10th Cir. 1988) (in banc), *cert. denied*, 488 U.S. 1008, 102 L. Ed. 2d 783 , 109 S. Ct. 792 (1989).

While we recognize that 'the trial Judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous,' *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 8 L. Ed. 2d 313 , 82 S. Ct. 1119 (1962), we nonetheless conclude that Cox's testimony regarding the ultimate legal

> Conclusion entrusted to the jury crossed the line and should have been excluded. Furthermore, Jacobs made timely objection to this testimony. See Fed. R. Evid. 103(a)(1). We conclude, however, that the error was harmless, see Fed. R. Civ. P. 61; Fed. R. Evid. 103(a), and therefore does not call for reversal."

See also *Mayview Corp.* v. *Rodstein*, 184 USPQ 466, 468 (Calif. 1974) ("However, the presentation of evidence that the '134 was really a significant improvement over prior art was almost totally lacking. Rodstein's only live witness at trial was Warren Jessup, an engineer and patent lawyer. He conducted no scientific comparisons of balance or vibration level among various sanders. In fact, he did not even test the Cobra or Viking. Instead his opinion rested on the subjective sensitivity of his hands while operating the Rodac sander."); *Cts Corporation* v. *Piher International Corporation*, 184 USPQ 399, 402 (Ill. 1974) ("First, the conclusion of defendants' witness, a patent lawyer, that '027 was obvious in light of the prior art is entitled to no weight. Disqualified at the trial, the witness lacked qualifications as an expert on electronics components, his technical education being limited to one or two basic mathematics and drafting courses . . . the Court of Appeals for the Seventh Circuit noted its reluctance to rely on '* * * the sole testimony in this regard * * * provided by a patent lawyer who admittedly was not an expert * * *.' National Dairy Products Corporation v. Borden Company, 394 F.2d 887"); *Keystone Plastics, Inc.* v. *C & P Plastics, Inc.*, 173 USPQ 395, 397 n.1 (Fla 1972) ("Footnote 1. Mr. Gross, a patent attorney, is admittedly not an expert in (Tr. 1783), nor has he had any direct experience in (Tr. 1787) the subject matter of this suit, e.g., the art of plastic extrusion or extrusion of polypropylene or the

9

manufacture of bristles. He was offered as a witness by Plaintiff (a) for the purpose of 'reading patents', which were admitted into evidence and 'interpreting these patents for the Court as an expert' (Tr. 1789-1789A) and (b) for the purpose of giving 'an expert opinion on * * * how the Patent Office classifies its art in the normal course of searching' (Tr. 1791-2), although he admittedly has not worked for the Patent Office (Tr. 1792). Therefore, the Court excluded his testimony due to his being unqualified as an expert in the relevant field (Tr. 1790, 1794), the Court preferring to read the patents itself and to hear and rely upon the arguments of the parties' respective patent counsel, rather than to receive these in the form of testimony of a patent attorney (Tr. 1793-4).");

In *Specht* v. *Jensen*, 853 F.2d 805, 807 (10th Cir. 1988), the court restated in part that:

> "'A witness cannot be allowed to give an opinion on a question of law . . . . In order to justify having courts resolve disputes between litigants, it must be posited as an a priori assumption that there is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge . . . . To allow anyone other than the judge to state the law would violate the basic concept. Reducing the proposition to a more practical level, it would be a waste of time if witnesses or counsel should duplicate the judge's statement of the law, and it would intolerably confound the jury to have it stated differently.'"

10

Also see *Fried. Krupp Artien-Gesellschaft* v. *Midvale Steel Co.*, 191 F.588, 596 (3rd Cir. 1911) ("we may here remark that it is only where a court requires the explanation of technical terms or the language of any particular art to enable it to understand a specification that the evidence of those expert in the art is pertinent."); *Kumho Tire Co., Ltd.* v. *Carmichael*, 526 U.S. 137, 157 (1999) ("[A]s we pointed out in *Joiner,* 'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'"); *In re Air Disaster at Lockerbie Scotland on December 21*, 37 F.3d 804, 826-827 (2nd Cir. 1994); *Bank of China, New York Branch* v. *NBM LLC*, 359 F.3d 171, 182-183 (2004); *United States* v. *Duncan*, 42 F.3d 97 (2nd Cir. 1994); *United States* v. *Articles of Banned Hazardous Substances Consisting of an Undetermined Number of Cans of Rainbow Foam Paint*, 34 F.3d 91 (2nd Cir. 1994); *Nieves-Villanueva* v. *Soto-Rivera*, 133 F.3d 92, 102 (1st Cir. 1997); and *Andrews* v. *Metro North Commuter Railroad Co.*, 882 F.2d 705 (2nd Cir. 1989).

WHEREFORE, plaintiff, Frank Sever, Jr., respectfully requests that this Honorable Court grant Plaintiff's Motion in Limine to Exclude Expert Testimony as to Matters of Law.

    Respectfully submitted,

_____
Peter Paul Mitrano (admitted *pro hac vice*)
Ct. Fed. Bar No.: 23733
Suite 201
581 Boylston Street
Boston, Massachusetts  02116

        (617) 236-5655

        Local Connecticut Counsel:

        _____

        Frank B. Velardi, Jr.
        Ct. Fed. Bar No.: 07893
        Lasala, Walsh, Wicklow & Velardi
        168 Bradley Street
        Post Office Box 1302
        New Haven, Connecticut  06505-1302
        (203) 785-8929
        (203) 776-4663 (facsimile)

        Attorneys for Plaintiff
        Frank Sever, Jr.

Dated: July 8, 2004.

<u>Certificate of Service</u>

I hereby certify that I caused a copy of the foregoing Plaintiff's Memorandum in Support of Plaintiff's Motion in Limine to Exclude Expert Testimony as to Matters of Law to be deposited with the United States Postal Service, postage prepaid for first-class mail, on this 8th day of July 2004 addressed to Joseph L. Clasen, Esquire and James M. Ruel, Esquire, Robinson & Cole LLP, Financial Centre, 695 East Main Street, Post Office Box 10305, Stamford, Connecticut  06904-2305.

_____
Peter Paul Mitrano