# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT
### Hartford

|  |  |
|---|---|
| FRANK SEVER, JR., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 3:02cv722 (AVC) |
| MORTON G. GLICKMAN, *et al.*, | ) Date of this Pleading: July 29, 2004 |
| Defendants. | ) |

**Memorandum in Support of Plaintiff's Motion for Reconsideration of this Court's Ruling from the Bench on July 16, 2004 to Grant Defendants' Motion in Limine to Exclude Evidence and/or Plaintiff's Opposition to Defendants' Motion in Limine to Exclude Alleged Tape Recording**

Plaintiff, Frank Sever, Jr. (hereinafter sometimes referred to as "Sever"), by and through his undersigned attorneys, states his Memorandum in Support of Plaintiff's Motion for Reconsideration of this Court's Ruling from the Bench on July 16, 2004 to Grant Defendants' Motion in Limine to Exclude Evidence and/or Plaintiff's Opposition to Defendants' Motion in Limine to Exclude Alleged Tape Recording[1] as follows:

At the hearing on July 16, 2004, it was agreed by all of the three experts that at least the first eleven minutes of the subject tape was an original recording of recorded matter that was continuous and unaltered.

---

[1] Pursuant to the Local Rules of the United States District Court for the District of Connecticut, plaintiff respectfully requests oral argument.

Sever therefore contends that based upon the undisputed fact that at least the first eleven minutes of the tape was an original recording of recorded matter that was continuous and unaltered, this Court should have denied defendants' motion. It is important to note that Sever's purpose concerning the subject tape was to be able to admit the conversation that is included in the first eight minutes of the tape. See Plaintiff's Exhibit No. 2 of said hearing.

As Sever previously stated to this Court on page 30 of Plaintiff's Opposition to Defendants' Motion in Limine to Exclude Alleged Tape Recording and Request for Entry of an Order Adopting Defendants' Version of Transcript (Document No. 104), in *United States v. Maxwell*, 383 F.2d 437, 442 (2nd Cir. 1967), the court noted that:

> "At the voir dire, Maxwell objected to the admission of the transcript because the recording was made in violation of his right to counsel. He does not press this point on appeal . . . (citations omitted) What Maxwell does argue is that the accuracy of the transcript cannot be ascertained and that whether the transcript honestly reflects the tenor of the whole conversation cannot be determined...**The deletion of the inaudible, irrelevant and repetitive portions of a tape, however, does not render it inadmissible.** *United States v. Knohl*, 379 F.2d 427 (2d Cir. June 22, 1967) at 2602." (Bold emphasis added.)

In an attempt to explain the clear error of law that this Court committed by excluding the first eight minutes of the subject tape, Sever relies upon the numerous holdings of the United States Court of Appeals for the Second Circuit cited herein.

Sever notes that in *Ricketts v. City of Hartford*, 74 F.3d 1397, 1410-1411 (2nd Cir. 1996), the court stated in part that:

> "This case differs somewhat from *Sliker* in that the district court in *Sliker admitted* the tape, whereas in this case the court *excluded* the tape . . . **While Sliker did not entirely remove a judge's ability to exclude a tape on authentication grounds, the judge's discretion to do so is limited to a determination whether 'sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.'** . . . (Citations omitted.) (Italicized emphasis in quoted text.) (Bold emphasis added.)
>
> ". . . So long as a jury is entitled to reach a contrary conclusion, it must be given the opportunity to do so . . . ."

Thus, in accordance with the decision of *Ricketts v. City of Hartford, supra*, this Court should have denied defendants' motion. There was no question that the first eight minutes of the subject tape was actually what it was purported to be. In *United States v. Sliker*, 751 F.2d 477, 499 (2nd Cir. 1984), cert. denied 470 U.S. 1058 (1985), which was extensively quote verbatim in *Ricketts v. City of Hartford, supra*, the court explained authentication and stated in part that:

> "In order for a piece of evidence to be of probative value, there must be proof that it is what its proponent says it is. The requirement of authentication is thus a condition precedent to admitting evidence. However, whether a given piece of evidence is authentic is itself a question of fact . . .
>
>   .   .   .
>
> "F.R.E. 104 retains the principles thus developed at common law. Subsection (a) provides that
>
>> [p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be

3

determined by the court, subject to the provisions of subdivision (b).

Subdivision (b) provides:

When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

"Thus, subsection (a) governs questions concerning the competency of evidence, i.e., evidence which is relevant but may be subject to exclusion by virtue of some principle of the law of evidence, leaving it for the judge to resolve factual issues in connection with these principles. Cf. *United States v. Eskow*, 422 F.2d 1060, 1069 (2d Cir.1970) ('We have repeatedly emphasized that it is for the court to make the initial determination of a preliminary issue upon which competency of evidence depends.' (citing cases)). Examples include not only those expressly stated in the rule (privileged information and witness competency), but others such as the hearsay rule, based on the policy of excluding inherently unreliable evidence; the exclusionary rule, designed to insure the observance by police of Fourth or Fifth Amendment rights; and many others. 1 Weinstein's Evidence, *supra*, p 104[01] at 104-10; see, e.g., *United States v. Mastropieri*, 685 F.2d 776, 778 (2d Cir.) (judge alone should decide existence of conspiracy for purposes of admitting co-conspirator's statements), cert. denied sub nom. *Pate v. United States*, 459 U.S. 945, 103 S.Ct. 260, 74 L.Ed.2d 203 (1982). Removing factual issues related to determining whether evidence is competent from the jury is based on recognition that the typical juror is intent mainly on reaching a verdict in accord with what he believes to be true in the case he is called upon to decide, and is not concerned with the long term policies of evidence law. McCormick, *supra* § 53 at 135.

Subsection (b) provides different treatment for situations in which the *relevancy* (i.e., probative value)

of evidence, rather than its *competency*, depends upon the existence of a prior fact. *United States v. James*, 590 F.2d 575, 579 (5th Cir.), cert. denied, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979); 1 Weinstein's Evidence, *supra*, paragraphs 104[01] at 104-9, 104[09] at 104-71; McCormick, *supra*, Sec. 53 at 137-38. Judge Weinstein explains why the Federal Rules leave such issues to the jury:

> This exception to the judge's broad power under Rule 104(a) is based on the theory that these questions of conditional relevance are merely matters of probative force, rather than evidentiary policy, and that the jury is competent to receive the evidence-in-chief and still disregard it if they find the non-existence of the preliminary fact.

"1 Weinstein's Evidence, supra, p 104[01] at 104-10.

"The requirement that a given piece of evidence be what its proponent claims does not reflect some special evidentiary policy like hearsay rules or privileges. Wigmore described the need for authentication as 'an inherent logical necessity.' 7 Wigmore Sec. 2129, supra, at 703 (emphasis omitted). Authentication is perhaps the purest example of a rule respecting relevance: evidence admitted as something can have no probative value unless that is what it really is. Cf. Notes of Advisory Committee to Rule 901(a). Thus, the Notes of the Advisory Committee accompanying Rule 901 state that questions concerning authentication are governed by the procedures in Rule 104(b). See also *O'Neal v. Morgan*, 637 F.2d 846, 850-51 (2d Cir.1980), cert. denied sub nom. *Esty v. O'Neal*, 451 U.S. 972, 101 S.Ct. 2050, 68 L.Ed.2d 351 (1981); *In re Japanese Elec. Prods. Antitrust Litigation*, 723 F.2d 238, 284-85 (3d Cir.1983).

"The judge's preliminary determination does not, however, finally establish the authenticity of the tape. As with other matters under Rule 104(b), only the jury

5

can finally decide that issue. The judge's admission of the evidence under Rule 104(b) is conditional and 'subject to the introduction of evidence sufficient to support a finding of the fulfillment of the condition.' F.R.E. 104(b). We thus reach the question whether there was evidence before the jury sufficient to establish that the voice on the tape was Carbone's. Carbone claims there was not. While the Government does not squarely address the issue in its brief, its basic position must be that hearing the tape after having heard Carbone's voice when he testified provided the jury with sufficient evidence to conclude that the voice on the tape was Carbone's.

"F.R.E. 901(a) requires "evidence sufficient to support a finding that the matter in question is what its proponent claims," but does not definitively establish the nature or quantum of proof that is required. Cf. F.R.E. 901(a), (b), Notes of Advisory Committee . . . ."

Moreover, in *United States v. Jamil*, 707 F.2d 638, 644 (2nd Cir. 1983), the court stated in part that:

". . . In the absence of a significant showing of unfair prejudice, evidence with substantial probative value should not be excluded. *Dwyer*, 539 F.2d at 928. As we stated above, the probative value of the proffered evidence is likely to be considerable since a jury might well find that it contains direct admissions by Jamil of his knowledge regarding his acts or omissions which are alleged to constitute violations of law. This being so, **the tape should not be excluded unless the danger of unfair prejudice substantially outweighs its probative value.**" (Bold emphasis added.)

When this Court erroneously excluded the first eight minutes of the subject tape, this Court denied Sever the opportunity for Sever to present important evidence to the jury at the trial in this matter. The prejudice to Sever in not allowing Sever to present the first eight minutes of the subject tape cannot be

overstated. Said tape was a critical piece of evidence. It would have had a monumental impact upon the jury and would have assisted the jury in deciding whether the jury should have believed Sever's version of the facts or the defendants' version of the facts. It is most important to note that one of the critical issues at the trial was whether the jury should have believed Sever's version of the facts or the defendants' version of the facts.

Furthermore, Sever understood the purpose of the hearing on July 16, 2004 was for this Court to hear testimony of the experts related to the tape out of the present of the jury. Note that this matter related to the tape was originally scheduled to be heard at 9:15 A.M. on July 19, 2004 just before the commencement of the trial that was scheduled to commence at 10:00 A.M. on July 19, 2004. Thereafter, this Court changed the time for the hearing related to the tape to 3:00 P.M. on July 16, 2004. In addition, it was error for this Court to grant defendants' motion to exclude the subject tape prior to the defendants actually filing a motion for the same. Note that in *United States v. Ruggiero*, 928 F.2d 1289, 1303-1304 (2nd Cir. 1991), cert. denied 502 U.S. 938 (1991), the court stated in part that:

> "Rule 901(a) requires the proponent of any evidence to submit 'evidence sufficient to support a finding that the matter in question is what its proponent claims.' This requirement is satisfied 'if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.' 5 J. Weinstein & M. Berger, Weinstein's Evidence p 901(a)[01], at 901-17 (1990). Recognizing, however, that **'recorded evidence is likely to have a strong impression upon a jury** and is susceptible to alteration, we have adopted a general standard, namely, that the government 'produce clear and

convincing evidence of authenticity and accuracy' as a foundation for the admission of such recordings.' *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir.) (quoting *United States v. Knohl*, 379 F.2d 427, 440 (2d Cir.), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967)), cert. denied, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977). Finally, we review rulings as to authentication for abuse of the district court's 'broad discretion.' See *United States v. Mendel*, 746 F.2d 155, 167 (2d Cir.1984), cert. denied, 469 U.S. 1213, 105 S.Ct. 1184, 84 L.Ed.2d 331 (1985); *United States v. Craig*, 573 F.2d 455, 478-79 (7th Cir.1977), cert. denied, 439 U.S. 820, 99 S.Ct. 82, 58 L.Ed.2d 110 (1978)." ("Bold emphasis added.)

In reference to the transcript of the subject portion of the tape, in *United States v. Ulerio*, 859 F.2d 1144, 1145 (2nd Cir. 1988), the court stated in part that:

> "The defendants concede the accuracy of the content of the translated text of the transcripts admitted at trial. It was therefore not an abuse of discretion to admit the transcripts into evidence and to allow the jury to retain the transcripts during their deliberations. See *United States v. Marin*, 513 F.2d 974, 977 (2d Cir.1975) (allowing Spanish-to-English transcript translations into jury room not error); *United States v. Koska*, 443 F.2d 1167, 1169 (2d Cir.) (per curiam) (allowing jurors to use transcripts not error), cert. denied, 404 U.S. 852, 92 S.Ct. 92, 30 L.Ed.2d 92 (1971). The only question before us concerns the notations on the transcripts purporting to identify the speakers."

Note that in the instant case, Sever accepted for all purposes the defendants' version of the transcription of the subject portion of the tape. Accordingly, there was no dispute as to the accuracy of the transcription of the subject tape. Moreover, based upon the defendants' version of the transcription of the subject portion of the tape, the approximately first eleven minutes are one entire telephone conversation between Sever and defendant Feldman. Note

that the transcript provided by the defendants states in part at the conclusion of the first conversation on pages 11 and 12 of said transcript that:

| | |
|---|---|
| "FELDMAN: | (away from the phone) Tell him to hold on. |
| SEVER: | Okay. |
| FELDMAN: | No, I'll, I will call you back in a little while I have to take this call. |
| SEVER: | Okay. |
| FELDMAN: | (away from the phone) *Who's on line one?* |
| SEVER: | Okay. Okay, you want me to do an amendment for you on control of cell growth? Yeah, that's, that's, that's right. I wanted to talk to you about that one. |
| FELDMAN: | Let me – |
| SEVER: | That rings a bell. |
| FELDMAN: | [indiscernible] let me call you back. I'll call you. |
| SEVER: | Okay. Alright, I'll talk – [broken word] |

(**hang up**)" (Bold emphasis added.)

It is Sever's position that the above-quoted text is the end of the first conversation between Sever and defendant Feldman on the subject tape. Accordingly, Sever contends as a matter of law that there was no legitimate and rational reason excluding said entire and complete taped ation. Any arguments concerning other conversations were questions of fact for the jury to decide.

Another case addressing the issue of tape recordings is *United States* v. *Arango-Correa,* 851 F.2d 54, 58-59 (2nd Cir. 1988) wherein the court stated in part that:

> **"Our decisions in this area reveal a clear preference for the admission of recordings notwithstanding some ambiguity or inaudibility, as long as the recordings are probative.** See *Bryant,* 480 F.2d at 790; see also *United States v. Chiarizio,* 525 F.2d 289, 293-94 (2d Cir.1975); *United States v. Carson,* 464 F.2d 424, 436-37 (2d Cir.), cert. denied, 409 U.S. 949, 93 S.Ct. 268, 34 L.Ed.2d 219 (1972); *United States v. Warren,* 453 F.2d 738, 743 (2d Cir.), cert. denied, 406 U.S. 944, 92 S.Ct. 2040, 32 L.Ed.2d 331 (1972); *United States v. Weiser,* 428 F.2d 932, 937 (2d Cir.1969), cert. denied, 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed.2d 119 (1971); *Maxwell,* 383 F.2d at 442.
>
> "In determining the admissibility of the tape recording, the district court correctly focused on the probative nature of the tapes, and not merely their audibility. The jury was entitled to draw reasonable inferences from defendants' whispering to each other during the two and one-half hours spent in the garage. Moreover, relying on its own reading of transcripts of the recording, the district court concluded that the transcript, even with the inaudible portions marked in, was sufficiently clear that the jury could 'come to some conclusion as to what was going on down there, namely a very thorough, at least, examination of rolls of paper.' On the basis of this record we are satisfied that the district court did not err in finding the tapes to be sufficiently probative to be admitted." (Bold emphasis added.)

Also see *United States* v. *Louis,* 814 F.2d 852, 856 (2nd Cir. 1987) ("The tapes were properly authenticated by Lama, who identified the voices of both Louis and Sage. Fed.R.Evid. 901(a). In the absence of any other specific challenge, see *United States v. Fuentes,* 563 F.2d 527, 535 (2d Cir.1977), this evidence of

10

authentication was sufficient."); *United States v. Rosa*, 17 F.3d 1531, 1548 (2nd Cir. 1994) ("We also reject Lipson's contention that the trial court improperly allowed the jury during deliberations to have tape-recording transcripts."); *Maine v. Moulton*, 474 U.S. 159, 167 (1985) ("but did offer portions of the tapes of the December 26 meeting"); *United States v. Sovie*, 122 F.3d 122, 127 (2nd Cir. 1997) ("The district court correctly held that the allegations of tampering went to the weight of the evidence rather than to its admissibility"); *United States v. Tropeano*, 252 F.3d 653, 661 (2nd Cir. 2001) ("Authentication of course merely renders the tapes admissible, leaving the issue of their ultimate reliability to the jury . . . Any doubts . . . would, however, go to the weight to be given to the tapes by the jury, not to their admissibility."); *United States v. Ben-Shimon*, 249 F.3d 98, 101 (2nd Cir. 2001) ("We have approved the procedure of admitting transcripts as an aid in listening to tape recordings where the transcripts were stipulated to be accurate."); *People v. Torres*, 523 N.Y.S.2d 893, 895 (A.D. 2 Dept. 1988) ("The fact that there was a gap in the tape goes to the weight of the evidence, not its admissibility"); *United States v. Bryant*, 480 F.2d 785, 790 (2nd Cir. 1973) ("We cannot say that the parts of the tape which are clearly audible are without evidentiary value. Nor can we say that the inaudible parts are so substantial as to render the remainder more misleading than probative."); and, *United States v. Weiser*, 428 F.2d 932, 937 (2nd Cir 1969) ("That some portions of the tapes were inaudible does not necessarily render the entire conversation inadmissible").


Other United States Court of Appeals are in agreement with the United States Court of Appeals for the Second Circuit. For example, see *United States v. Robinson*, 956 F.2d 1388, 1395 (7th Cir. 1992) wherein the court stated in part that:

> "The appellants next argue that the district court abused its discretion in determining that the tapes were sufficiently audible and trustworthy to be admissible. '[T]ape recordings which are only partially unintelligible are admissible unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy.' *United States v. Zambrana*, 864 F.2d 494, 498 (7th Cir.1988) (quoting *United States v. Wilson*, 578 F.2d 67, 69 (5th Cir. (1978)). Our review of the tapes indicates that the tapes were generally audible, with inaudible portions. **The inaudibility of a portion of a tape, which is generally audible, is relevant only to its weight, a jury question, not to its admissibility.** *United States v. Vega*, 860 F.2d 779, 790-91 (7th Cir.1988)." (Bold emphasis added.)

In summary, as a matter of law, this Court clearly committed error in granting defendants' motion to exclude the first eight minutes of the conversation contained within the subject tape when the undisputed testimony from all three of the expert conclusively established that the first eleven minutes of the subject tape was an original recording of recorded matter that was continuous and unaltered.

## Conclusion

WHEREFORE, plaintiff, Fr▒▒▒ Jr., respectfully requests that this Honorable Court grant Plaintiff's Motion for Reconsideration of this Court's Ruling from the Bench on July 16, 2004 to Grant Defendants' Motion in Limine

to Exclude Evidence and/or deny Defendants' Motion in Limine to Exclude Alleged Tape Recording.

        Respectfully submitted,

*[signature]*
_____
Peter Paul Mitrano (admitted *pro hac vice*)
Ct. Fed. Bar No.: 23733
Suite 201
581 Boylston Street
Boston, Massachusetts 02116
(617) 236-5655


Local Connecticut Counsel:


_____
Frank B. Velardi, Jr.
Ct. Fed. Bar No.: 07893
Lasala, Walsh, Wicklow & Velardi
168 Bradley Street
Post Office Box 1302
New Haven, Connecticut 06505-1302
(203) 785-8929
(203) 776-4663 (facsimile)

Attorneys for Plaintiff
Frank Sever, Jr.

Dated: July 29, 2004.

## Certificate of Service

I hereby certify that I caused a copy of the foregoing Memorandum in Support of Plaintiff's Motion for Reconsideration of this Court's Ruling from the Bench on July 16, 2004 to Grant Defendants' Motion in Limine to Exclude Evidence and/or Plaintiff's Opposition to Defendants' Motion in Limine to Exclude Alleged Tape Recording to be deposited with the United States Postal Service, postage prepaid for first-class mail, on this 29th day of July 2004 addressed to Joseph L. Clasen, Esquire and James M. Ruel, Esquire, Robinson & Cole LLP, Financial Centre, 695 East Main Street, Post Office Box 10305, Stamford, Connecticut 06904-2305.

_____
Peter Paul Mitrano